THE HONORABLE THOMAS S. ZILLY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| LVB-OGDEN MARKETING, LLC, | No. 2:18-CV-00243-TSZ |
| Plaintiff, | **FIRST AMENDED AND VERIFIED COMPLAINT** |
| v. | |
| DAVID S. BINGHAM, SHARON BINGHAM, CHRISTOPHER BINGHAM, CHERISH BINGHAM, KELLY BINGHAM, BINGO INVESTMENTS, LLC, CCRB ENTERPRISES, LLC, SKBB ENTERPRISES, LLC, PARK PLACE MOTORS, LTD., HYTECH POWER, INC., HENRY DEAN, in his individual capacity and as Trustee for the SHARON GRAHAM BINGHAM 2007 TRUST, and BGH HOLDINGS, LLC, | |
| Defendants. | |

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

Plaintiff LVB-Ogden Marketing, LLC ("LVB" or "Plaintiff") complains and alleges as follows:

## NATURE OF ACTION

1.      This action arises out of an ongoing and massive fraudulent scheme perpetrated by a wealthy family of defendants and their close friend to evade and defraud creditors like the Plaintiff, LVB—and avoid satisfying a valid, approximately $70 million judgment entered by the District Court for the Northern District of Illinois.

2.      The Binghams are the heirs to a considerable fortune derived from the Fisher Companies.  The defendants include David and Sharon Bingham, their daughter-in-law Kelly Bingham, their adult son Christopher Bingham, and his wife Cherish Bingham (collectively, the "Binghams" or the "Bingham Defendants").

3.      At the height of the real estate boom, and hoping for a quick return, the Binghams gambled their substantial inherited wealth by investing over a hundred million dollars in high-risk loans through a company called Centurion.  Defendants personally guaranteed those loans, and when the economic collapse hit, and the primary borrowers began to default, Defendants became liable to the lenders.  LVB is the current owner of one such guarantee, and holds a $70,944,423.10 judgment with post-judgment interest against Defendants entered by the District Court for the Northern District of Illinois.

4.      In 2009—prior to the entry of that judgment—when it became apparent that their investments had failed, and they faced serious liability, the Binghams turned to a long-time family friend, Defendant Henry Dean, to assist them in an effort to hide their assets from creditors like LVB.  In specific, Defendant Christopher Bingham called Dean while Dean was living in Idaho and told him the family was in trouble and needed his help to come up with "some solutions."  Dean quickly seized on the Sharon Graham Bingham 2007 Trust (the "Trust")—which had originally been set up by Sharon Bingham's mother Frances solely for the

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

benefit of her daughter Sharon—and took over as Trustee.[1]  The Binghams and Dean then embarked on a two-part scheme to defraud LVB, and prevent collection on its valid judgment.

5. As the first part of the scheme, Dean counseled the Bingham Defendants to transfer or mortgage essentially all of their assets to Sharon's Trust (despite the fact that only Sharon is a beneficiary), so that they could fend off creditors by claiming the statutory protections intended for legitimate "spendthrift" trusts.  This was accomplished by a series of sham "security" agreements and other direct transfers.  These security agreements list as collateral homes, yachts, an entire car dealership, and condos in Hawaii—among other assets discussed in detail below.

6. Dean created the appearance (on paper) of a legitimate "spendthrift" trust set up by a mother (Frances) for her daughter (Sharon).  In reality, the entire extended Bingham family could and did receive cash payments (sometimes through shell corporations such as Chris and Cherish Bingham's entity CCRB or Kelly and Scott Bingham's entity SKBB Enterprises, LLC, as detailed below) out of Trust bank accounts from Dean and bookkeeper Cicilia Elali on demand—in violation of his fiduciary duty and the plain terms of the Trust Agreement.  Indeed, transferring or mortgaging all of your earthly possessions to a trust from which you cannot receive any distributions would be reckless without a commitment from Dean that he would violate the terms of that Agreement and secretly funnel cash to you on the side.  That is precisely what happened with the Binghams.

7. Indeed, as detailed below, for years Dean and Elali covertly funneled *millions of dollars* to the Binghams or shell companies that they set up for "estate planning," which allowed the Binghams to continue to live extravagant lifestyles while avoiding paying a cent of the judgment they owe to LVB.  This was and continues to be an egregious breach of his fiduciary duty, in addition to violating the express terms of the Trust Agreement, including § 2(A).

---

[1] As alleged below, the Trust Agreement did not comport with the requirements of a valid spendthrift trust under Washington law to begin with.  *See* ¶¶ 30-32, *infra*.

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

8.      As the second part of the scheme, Dean and counsel for the Binghams made false and misleading statements to LVB for years to avoid detection of this scheme and thwart any attempt to collect.  As outlined below, Dean and counsel represented that the Binghams were penniless, and that the Binghams and the Trust had no assets with which to satisfy the judgment. Dean even went so far as to prepare false and misleading financial statements purporting to show that the Binghams were unable to pay anything but a meager sum toward the judgments. Meanwhile, unbeknownst to LVB, the Binghams and Dean squandered millions of dollars renovating homes, buying yachts, and traveling the world—among other extravagances.

9.      As recompense for his efforts, recently-produced evidence shows that Dean is permitted to draw upon Trust accounts at will, using trust funds to pay his alimony, finance his home, finance his business (Defendant HyTech Power, of which Dean is Executive Chairman), and transfer hundreds of thousands of dollars to his personal accounts.

10.     Unless this Court intervenes, it is clear that the Binghams' and Dean's fraudulent transfer scheme on LVB and other creditors will continue unabated.  Money that should be used to satisfy valid judgments will continue to be hemorrhaged out of the Trust for improper purposes, and the judgment of the District Court in Illinois will continue to go unenforced.  Elali admitted in an April 2017 e-mail that Defendants had "spent the last 10 years working to . . . protect the Trust," and that they "have discussed in many meetings throughout the past years that appearances are important and to keep a low profile."  Elali also described Defendants' scheme as the "cake we've been baking for the past few years" in a November 22, 2017 e-mail.  The action of this Court is needed to topple that cake once and for all.

> **From:** cpark@bingoinvestments.com [mailto:cpark@bingoinvestments.com]
> **Sent:** Wednesday, November 22, 2017 10:49 AM
> **To:** Hobson, Todd <Todd.Hobson@bankofthewest.com>; Gallardo, Soledad <Soledad.Gallardo@bankofthewest.com>
> **Cc:** Bucklin, Michele <Michele.Bucklin@bankofthewest.com>; Henry W Dean <henrywdean@gmail.com>
> **Subject:** Trust Payments to Creditors
>
> Good morning all.
> I was made aware of this by a recipient of a payment generated by the Bank Bill Pay system to a vendor: The Payee is being shown as Henry Dean, not Sharon Bingham. It is very important, in fact, critical that this is corrected.
> Todd, you're well aware of the historical importance of this. We need not add another layer to this "cake" we've been baking for the past few years.
> Please let us know that this can be remedied.
> Thank you.

FIRST AMENDED AND VERIFIED COMPLAINT – 3
No.  2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

**JURISDICTION & VENUE**

11.     This proceeding concerns the enforcement of a federal judgment registered in the Western District of Washington.  This Court has federal ancillary jurisdiction to exercise its inherent power to enforce that judgment. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("In defining [courts' enforcement] power, we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances."); *Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1453 (9th Cir. 1996) (affirming district court's ancillary jurisdiction over non-debtor defendant in plaintiff's post-judgment supplementary proceeding to set aside fraudulent transfers).

12.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a)(1).

**PARTIES**

13.     Plaintiff LVB-Ogden Marketing, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

14.     Defendants David Bingham, Sharon Bingham, Christopher Bingham, Cherish Bingham, and Kelly Bingham are individuals and residents of the State of Washington.

15.     Defendant Henry W. Dean is an individual and resident of the State of Washington.  As discussed in detail below, Dean, Elali and the Binghams work in tandem to funnel money out of the Trust to non-beneficiaries in a manner specifically designed to evade creditors.  Dean is also a recipient of fraudulent transfers in his individual capacity.

16.     Henry Dean is also trustee for the Sharon Graham Bingham 2007 Trust, which is a trust established in the State of Washington.

17.     Defendant Bingo Investments, LLC is a limited liability company organized under the laws of the State of Washington, with its principal place of business in Bellevue,

---

FIRST AMENDED AND VERIFIED COMPLAINT – 4
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1   Washington.  Defendants David Bingham and Chris Bingham are or were members of Bingo

2   Investments, LLC.

3       18.    Park Place Motors, Ltd. ("Park Place") is a corporation organized under the laws

4   of Washington with its principal place of business in Bellevue, Washington.

5       19.    CCRB Enterprises, LLC ("CCRB") is a limited liability company organized

6   under the laws of the State of Washington, with its principal place of business in Bellevue,

7   Washington.

8       20.    SKBB Enterprises, LLC ("SKBB") is a limited liability company organized under

9   the laws of the State of Washington, with its principal place of business in Bellevue,

10  Washington.

11      21.    HyTech Power, Inc. ("HyTech") is a corporation organized under the laws of the

12  State of Washington, with its principal place of business in Redmond, Washington.

13      22.    BGH Holdings, LLC ("BGH") is a limited liability company organized under the

14  laws of the State of Washington, with its principal place of business in Bellevue, Washington.

15                      **FACTUAL ALLEGATIONS**

16  **A.    Before the Mortgage Crisis, Defendants Attempt to Quickly Turn a Profit by
17         Guaranteeing High-Risk Construction Loans.**

18      23.    The Binghams are heirs to the Fisher fortune, which began with a flour mill at the

19  turn of the 20th century and eventually expanded into a diverse collection of privately-held

20  businesses, including a broadcasting and telecommunications empire with hundreds of millions

21  of dollars in annual sales by the 1990s.  This includes Fisher Communications, Safeco Insurance

22  and other companies.

23      24.    In 2006, the Binghams sought a quick and potentially lucrative return by

24  investing over a hundred million dollars of their inheritance in high-risk (and thus potentially

25  high-yield) loans for commercial developments through a company called Centurion Financial

26

---

**FIRST AMENDED AND VERIFIED COMPLAINT** – 5
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1   Group ("Centurion").  When the mortgage crisis hit, many of the primary borrowers defaulted,

2   and the Binghams were left in the position of having guaranteed the loans.

3          25.     One such guarantee is now owned by Plaintiff LVB.  In particular, in September

4   2006, Corus Bank agreed to loan over $123 million to finance the construction of a

5   condominium project in Las Vegas called "Streamline Tower."  When the loan was amended in

6   December 2007, the Binghams guaranteed full payment of all liabilities and obligations under

7   that loan.

8          26.     The primary borrowers defaulted in early 2009, and the Binghams became liable

9   for those guarantees as a result.  Shortly thereafter, Corus assigned its interest in those

10  guarantees to LVB.

11         **B.      LVB Obtains a Judgment Against Defendants for Over $70 Million.**

12         27.     When Defendants refused to honor their guarantees, LVB filed suit in the

13  Northern District of Illinois on July 27, 2009.  The Complaint is attached hereto as Exhibit B.

14         28.     The Court granted summary judgment to LVB on August 25, 2010, finding the

15  Binghams liable, and later entering judgment in the amount of $70,994,432 with post-judgment

16  interest on September 29, 2010.  The Judgment is attached hereto as Exhibit A.  Defendants

17  claimed they were somehow "swindled" by Centurion, but the Court agreed that the Binghams

18  are liable for the debts they knowingly assumed in hopes of a quick return.  The Court's order on

19  summary judgment is attached hereto as Exhibit C.

20         29.     On October 15, 2010, LVB registered its judgment in the District Court for the

21  Western District of Washington.  The registration is attached hereto as Exhibit D.  As discussed

22  in detail below, in the months leading up to and for years after entry of this judgment Defendants

23  successfully thwarted any attempt to collect on the judgment by making false and misleading

24  statements about Defendants' assets, and generating false and misleading documents purporting

25  to show an inability to pay.

26

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

**C.    On The Advice of Henry Dean and With His Help, Defendants Attempt to Hide Assets By Abusing The Sharon Graham Bingham 2007 Trust.**

30.    The Sharon Graham Bingham 2007 Trust was set up in March 2007 nominally as a "spendthrift" Trust with Sharon Graham Bingham as the sole trustee and beneficiary of res provided by her mother, Frances P. Graham as settlor.

31.    By the terms of the Trust Agreement (attached hereto as Exhibit E), there are no limits on Sharon's "right to withdraw, appoint, or disclaim trust property," meaning the Trust is not even by its plain terms a protectable spendthrift trust under Washington law, and is therefore not entitled to protection from creditors.  (Ex. E at 5); *see* RCW 6.32.250.  Nevertheless, the Trust Agreement is clear on how income and principal should be distributed:

> [T]he Trustee shall pay the Beneficiary [Sharon Graham Bingham] all of the income of the trust at least annually, and also may pay the Beneficiary so much of the principal as the Trustee determines from time to time for the Beneficiary's health, support and maintenance. Further, at any time that there is a then serving Trustee of the Trust other than the Beneficiary, the Trustee (other than the Beneficiary) shall have the additional authority to distribute to the Beneficiary so much or all of the principal as the Trustee other than the Beneficiary alone determines from time to time is advisable and in the best interests of the Beneficiary, considering other resources available to the Beneficiary.

(*Id.* at 1.)  As discussed in detail below, this provision has been violated repeatedly in a flood of transactions by which Dean and Elali funnel money to non-beneficiary Defendants or their shell corporations.

32.    Indeed, the Trust Agreement was structured to allow Frances to deposit certain assets into the Trust to provide for her daughter, with an ethical, independent trustee to ensure those assets are properly managed and Sharon is provided for.  But since that time, this nominal purpose has been disregarded.  Instead, the Defendants, including Sharon's husband David, and essentially her entire extended family, have attempted to hide virtually all of their assets in her Trust, and then funnel millions of dollars out of it, to frustrate the efforts of creditors to collect on valid judgments.

---

**FIRST AMENDED AND VERIFIED COMPLAINT** – 7
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

33.     In particular, in April of 2009, as the mortgage markets collapsed and Defendants recognized the liability they were facing, Defendants arranged for their close family friend of 40 years and self-described "consigliere" Henry Dean to be appointed Trustee.  Sharon ultimately executed a resignation and appointment of Henry Dean as Trustee in September of 2010.  ECF 5-24.

34.     In his own sworn testimony in *Graham Bingham Irrevocable Trust v. John Hancock Life Ins. Co.*, Case No. 2:10-cv-1185 (W.D. Wash.),  Dean testified as follows:

> Q.   [David] Bingham told me about a handshake arrangement he had with respect to some compensation for you in connection with some of the work you're doing for him
>
> **A. Correct**
>
> Q. What impact, if any, [does] your work for the trust have on that compensation arrangement?
>
> **A. I think the easiest way to answer that is to tell you what is the relationship. It's a friendship of 40 years . . . It's people who are in desperate trouble . . . Fighting for their lives who called upon me . . . to help them through all of this. David and I have a handshake that what comes out of the other end of this thing, I'm part of the family.  As the family goes, so does Henry Dean. If the family does well because of my work, so will Henry Dean.**

Dean also testified that he "didn't want Shar[on] or David being the trustee of *any trust*, because of any creditor attempting to attack that trust."  ECF 5-18 (emphasis added).  In Dean's words, Defendants were in "desperate trouble," so they brought him in to "come up with some solutions."  This included, as he admitted, advising Defendants how to hide assets "offshore away from creditors."

**FIRST AMENDED AND VERIFIED COMPLAINT** – 8
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

*From:* Henry W Dean
*Date:* 11/26/2010 11:38:19 AM
*To:* 'David Bingham'
*Cc:* 'Bruce Johnston '; 'Chris Bingham'; 'Cicilia at Bingo Address'; 'shari bingham'; 'Rob Abramson'; 'Mary Marino'
*Subject:* RE: Status Report

# REDACTED

I will keep the China boat on the Report as it has consequences that need to be discussed regarding taxes and keeping your investment and profit, if any, offshore away from creditors.

35.     With an amenable Trustee at the helm who could ensure their deposited or mortgaged assets were never truly "irrevocably deposited," Defendants proceeded to transfer or mortgage essentially all of their earthly possessions—including their multi-million dollar homes, business interests, yachts,[2] and luxury cars—to Sharon's Trust apparently to impede creditors. This scheme is described in detail below.

36.     Additionally, Chris Bingham recently testified about the existence of another trust, the Christopher Graham Bingham Family Trust, that the Binghams may use, with the assistance of Richard Matthews, to fraudulently transfer assets, including at the very least a house.  As discussed below, LVB's discovery efforts into these matters are ongoing.

### D.     Defendants and Henry Dean Funnel Millions of Dollars From The Trust to Non-Beneficiaries, Including Personal Shell Companies.

37.     In an attempt to delay and impede creditors from collecting on valid judgments, Dean and Defendants have represented to LVB and other creditors that assets held by the Trust are entitled to protection under Washington law as a bona fide "spendthrift" trust created by a mother to support her daughter.  Documents produced by the Trust this past year, including in

---

[2] As Mr. Dean admits in his declaration, the Binghams' "security agreements" and "settlement agreements" purport to encumber their yacht, the M/V Bingo.  (ECF No 38 at ¶ 24.b.) But Mr. Dean now claims that provision of the "agreement" was never abided by, and title to the yacht never actually transferred to the Trust. (*Id.*)  Curiously, in Mr. Dean's May 11, 2017 verified accounting that he provided to LVB, he listed the M/V Bingo as an asset of the Trust (ECF No. 5-34)—yet another misrepresentation to LVB.

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

late-January 2018 (after being ordered produced by the Court) show that, in reality, the Trust operates as the Bingham family's all-encompassing asset stash into which the entire Bingham family deposits assets and extracts cash on demand with Dean and Elali's assistance. The Trust in no way operates as a legitimate spendthrift Trust.

### 1.   Attempting To Shield Defendants' Possessions In Sharon's Trust

38.   Defendants and Dean recognized that Defendants' real and personal property was incredibly valuable—and subject to seizure under federal law to satisfy the judgments of LVB or other creditors. To avoid this outcome, and defraud creditors and the Court, Defendants and Dean embarked on a years-long effort to transfer or mortgage virtually all of Defendants' earthly possessions to Sharon's Trust through Dean, the Trustee. Cicilia Elali, who writes the checks and apparently manages the bank accounts for the Trust and the Binghams (among potentially other roles), has likewise actively participated in this scheme.

39.   Defendants and Dean accomplished this portion of the scheme by drafting sham "Security Agreements." This included at least the following: a March 30, 2009 agreement with Scott and Kelly Bingham, ECF 5-23; a December 31, 2011 agreement with David and Sharon Bingham, ECF 5-25; a March 15, 2013 agreement with Chris and Cherish Bingham, ECF 5-28; and a March 15, 2013 agreement with Scott and Kelly Bingham, ECF 5-29. Pursuant to these agreements, Sharon, David, Chris, Cherish, Scott and Kelly Bingham pledged as collateral essentially all of their possessions in return for a "loan" from the Trust. The Trustee would then claim the Binghams had defaulted on the loans and had the right to foreclose. *See*, *e.g.*, ECF 5-40. Thereafter, he would claim that he was declining to seize any of the collateral on "humanitarian grounds" (in breach of his fiduciary duty). *Id.* Defendants would continue to have unfettered access to all of their property—while at the same time claiming the Trust was now somehow a bona fide creditor of Defendants.

40.   For example, in 2013, another creditor attempted to satisfy its judgment against the Binghams through seizure of valuable rings in the possession of Sharon and Kelly Bingham.

**FIRST AMENDED AND VERIFIED COMPLAINT** – 10
No. 2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

Defendants and Dean attempted to use these sham "defaults" on the security agreements as a basis to prevent the seizure of the rings.  When the Court saw through this ruse, the Trustee ultimately agreed to pay that creditor over $150,000 to prevent the seizure of the rings—in breach of Dean's fiduciary duty and in violation of the Trust's purported purpose as a spendthrift Trust from a mother (Frances) to support her daughter (Sharon).

41.     In other cases, Dean used these sham security agreements and "defaults" by the Binghams as a pretext for the Trust to acquire as "assets" certain property of the Defendants that they wished to shield from creditors.  This includes, for example, (i) the deed to the home of Defendants Scott and Kelly Bingham, ECF 5-23, 5-30; (ii) the Binghams' yacht (the Bingo M/V), ECF 5-26, 5-25;[3] (iii) David Bingham's share of his luxury car dealership, called Park Place Motors, Ltd. (discussed in detail below), ECF 5-25, 5-26, 5-27; and (iv) certain investments in private companies, ECF 5-25 through 5-30.  Neither the yacht nor home generates any income for the Trust, yet these "assets" have remained on the Trust's books for years—while still in the possession of the Binghams.  None of those assets have been used to satisfy LVB's judgment.

42.     Each of these transfers is documented in detail in Appendix A attached hereto.  With respect to Sharon and David Bingham's property, these are also self-settled transfers as discussed in detail below.  *See* ¶¶ 111-112, *infra*.

43.     The Trust recently produced bank records also showing payments totaling at least $300,000 in connection with what appears to be a sale of a yacht by "the Trust" in 2015.  Again, none of that money was used to satisfy LVB's judgment.

### 2.     Diverting Trust Funds To Shell Company CCRB Enterprises

44.     Dean has also used the Trust to funnel money directly from Trust accounts to the Binghams.  Payment is not always made directly to the individual Defendants.  Instead, in an apparent effort to further obscure the cash flow to Defendants, Elali often writes significant

---

[3] *See* fn. 2, *supra*.

FIRST AMENDED AND VERIFIED COMPLAINT – 11
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

checks from the Trust to shell companies owned by the Defendants, including Defendant CCRB Enterprises, LLC.

45.     CCRB is owned by Defendants Cherish and Chris Bingham, as well as their minor children, Race and Baylie (notably, as discussed further below, when Baylie became an owner she was not even born yet).  When CCRB was created (with the direction and assistance of Richard Matthews), Defendants represented to the State of Washington and LVB that CCRB is an independent, valid entity in writing under penalty of perjury that generates revenue as an "investment banking" business.  But in reality it is nothing more than a shell corporation used by the family to place their cash and assets beyond the reach of creditors.

46.     Under the current ownership structure, Cherish and Chris each hold a 1% membership interest, and their two minor children, Race (age 17) and Baylie (age 10) each hold 49% membership interests.  This appears to be an effort to thwart creditors' efforts to pursue assets from their non-defendant children.  To create that fiction, Chris and Cherish have been preparing corporate documents dated before the time of LVB's judgment that purport to be signed by their daughter—before she was even born.

47.     Specifically, CCRB's license and registration documents reflect that the company was formed September 20, 2007 and that at the time, Cherish and Chris Bingham each owned 50 percent.  Documents prepared by the Defendants, however, represent that at CCRB's formation—which they date October 1, 2007—CCRB was owned 25% by each of Chris, Cherish, Race and Baylie.  But Baylie Bingham had not yet been born on October 1, 2007, nor did she exist when CCRB was actually formed, on September 20, 2007.

48.     Such falsification of documents does not stop there:  CCRB produced a document titled "Ratification of Consent by Managers and Members of CCRB Enterprises" dated September 24, 2007 that is signed by Chris Bingham as the "Guardian" for the (again) not-yet-born "Baylie Bingham."  Mr. Bingham concedes that he signed corporate documents on Baylie's behalf before she was born.  Defendants represent that a year later, on October 1, 2008, the

FIRST AMENDED AND VERIFIED COMPLAINT – 12
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1  remaining 48% interests were transferred to Race (aged 7 at the time) and Baylie (less than 1

2  year old).

3       49.    But generating corporate documents purportedly signed by unborn children, and

4  attempting to hide assets in their children's names, are not nearly the most egregious aspects of

5  CCRB. In 2007, Chris and Cherish registered CCRB as an "investment banking" company, and

6  represented that it expected to generate a gross annual income of $12,000 or less. None of this

7  appears to be true. Mr. Bingham testified at a recent deposition that despite signing these

8  formation documents and making the above representations under penalty of perjury, CCRB was

9  created as an estate tax planning tool, has never been operated as a business, has never had any

10  employees, and has always functioned as his personal bank account. As discussed in detail

11  below, this fraudulent scheme has thwarted LVB's ability to collect the funds unlawfully

12  diverted to CCRB and used to fund Chris Bingham's lavish lifestyle.

13       50.    The Trust—whose distributions are supposed to be made exclusively to Sharon

14  Bingham for her "health, support and maintenance"—wrote checks to CCRB amounting to

15  $495,093 between February and July 2016 alone for the stated purpose of funding the

16  installation of a pool at Chris and Cherish's home in Hunt's Point, Washington. This includes at

17  least the following transfers from the Trust's bank accounts to CCRB accounts by check:

| Date | From | To | Amount | Description |
|------|------|----|--------|-------------|
| 2/12/2016 | SGB 2007 Trust | CCRB | $146,200.00 | Hunts Point - contract fee |
| 3/1/2016 | SGB 2007 Trust | CCRB | $72,115.69 | Hunts Point - Hts Pt Pool |
| 3/7/2016 | SGB 2007 Trust | CCRB | $43,111.69 | Hunts Point - Hts Pt Pool |
| 4/15/2016 | SGB 2007 Trust | CCRB | $53,000.00 | Hunts Point - Hts Pt Pool |
| 4/26/2016 | SGB 2007 Trust | CCRB | $12,000.00 | Hunts Point - Hts Pt Proj. |
| 5/3/2016 | SGB 2007 Trust | CCRB | $42,076.80 | Hunts Point - Hts Pt Pool |
| 5/13/2016 | SGB 2007 Trust | CCRB | $18,966.00 | Hunts Point - Hts Pt Pool |
| 5/24/2016 | SGB 2007 Trust | CCRB | $21,000.00 | Hunts Point - Hts Pt Pool |
| 6/1/2016 | SGB 2007 Trust | CCRB | $66,772.72 | Hunts Point - Hts Pt Pool |
| 6/15/2016 | SGB 2007 Trust | CCRB | $14,850.56 | Hunts Point - Hts Pt Pool |

**FIRST AMENDED AND VERIFIED COMPLAINT – 13**
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

51. The Trust also makes a monthly cash transfer of $15,000 directly to "Chris Bingham/CCRB," again in breach of Dean's fiduciary duty, and again in violation of the Trust Agreement. Over the past four years, these transfers amounted to at least $660,000 (in addition to the transfers made for renovations). None of this money was used to satisfy LVB's judgment:

| Date | From | To | Amount |
|------|------|----|--------|
| 3/4/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 4/4/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 5/4/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 5/29/2014 | SGB 2007 Trust | CCRB | $1,300 |
| 5/30/2014 | SGB 2007 Trust | CCRB | $400 |
| 6/2/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 6/9/2014 | SGB 2007 Trust | CCRB | $5,000 |
| 6/16/2014 | SGB 2007 Trust | CCRB | $1,500 |
| 6/19/2014 | SGB 2007 Trust | CCRB | $1,588 |
| 6/24/2014 | SGB 2007 Trust | CCRB | $1,375 |
| 6/25/2014 | SGB 2007 Trust | CCRB | $1,000 |
| 6/26/2014 | SGB 2007 Trust | CCRB | $1,100 |
| 6/30/2014 | SGB 2007 Trust | CCRB | $4,213 |
| 7/1/2014 | SGB 2007 Trust | CCRB | $13,644 |
| 7/9/2014 | SGB 2007 Trust | CCRB | $3,000 |
| 7/21/2014 | SGB 2007 Trust | CCRB | $2,900 |
| 8/1/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 8/19/2014 | SGB 2007 Trust | CCRB | $153 |
| 9/4/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 9/15/2014 | SGB 2007 Trust | CCRB | $6,650 |
| 9/18/2014 | SGB 2007 Trust | CCRB | $3,000 |
| 10/4/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 11/6/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 12/4/2014 | SGB 2007 Trust | CCRB | $15,000 |
| 1/4/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 2/4/2015 | SGB 2007 Trust | CCRB | $15,000 |

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

| | | | |
|---|---|---|---|
| 2/20/2015 | SGB 2007 Trust | CCRB | $1,000 |
| 3/2/2015 | SGB 2007 Trust | CCRB | $14,000 |
| 4/4/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 5/1/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 6/4/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 7/1/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 8/3/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 9/1/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 10/4/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 11/2/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 12/1/2015 | SGB 2007 Trust | CCRB | $15,000 |
| 1/4/2016 | SGB 2007 Trust | CCRB | $15,000 |
| 2/2/2016 | SGB 2007 Trust | CCRB | $15,000 |
| 2/10/2016 | SGB 2007 Trust | CCRB | $1,500 |
| 3/1/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 4/5/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 5/3/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 6/3/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 7/1/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 8/2/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 9/1/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 10/4/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 11/1/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 12/2/2016 | SGB 2007 Trust | CCRB | $9,500 |
| 1/3/2017 | SGB 2007 Trust | CCRB | $9,500 |
| 2/1/2017 | SGB 2007 Trust | CCRB | $9,500 |
| 3/8/2017 | SGB 2007 Trust | CCRB | $5,500 |
| 4/3/2017 | SGB 2007 Trust | CCRB | $9,500 |
| 5/1/2017 | SGB 2007 Trust | CCRB | $15,000 |
| 6/1/2017 | SGB 2007 Trust | CCRB | $15,000 |
| 7/5/2017 | SGB 2007 Trust | CCRB | $15,000 |
| 7/6/2017 | SGB 2007 Trust | CCRB | $16,650 |
| 7/6/2017 | SGB 2007 Trust | CCRB | $2,000 |

FIRST AMENDED AND VERIFIED COMPLAINT – 15
No. 2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

| 7/28/2017 | SGB 2007 Trust | CCRB | $3,000 |
| 8/1/2017 | SGB 2007 Trust | CCRB | $12,000 |
| 9/1/2017 | SGB 2007 Trust | CCRB | $15,000 |
| 10/3/2017 | SGB 2007 Trust | CCRB | $15,000 |
| 11/1/2017 | SGB 2007 Trust | CCRB | $15,000 |
| 12/1/2017 | SGB 2007 Trust | CCRB | $15,000 |

52.     As above, Chris Bingham was also paid a sham "construction management fee" of $146,200 for purportedly overseeing the renovation of his own home. *See* ECF 5-20 at 201:15-202:3; ECF 5-38 at 2.

53.     According to Mr. Bingham, he draws directly from CCRB's bank accounts to pay his own personal expenses.  Chris Bingham also uses CCRB to hold his assets—including, at the very least, two 2016 Seadoo jet skis and a 2011 wakeboarding boat, which are all registered in Washington for the "Primary Use" of "Pleasure," and used exclusively by Chris Bingham's minor children.

54.     Chris Bingham has admitted that CCRB has no offices, no employees, and conducts no business—and certainly not "investment banking."  ECF 5-20.  He could not recall CCRB holding any meetings, taking any minutes, taking any votes among the members, and was not even certain who "managed" the company (despite the fact that CCRB has represented to the State of Washington that Chris Bingham is the manager).  *Id.*  CCRB has not followed anything resembling corporate formalities, and Mr. Bingham repeatedly admitted not only to drawing from the CCRB account to pay all of his personal expenses, but also that at "CCRB" they "don't do anything formally."  *Id.*

55.     Each of these transfers is documented in detail in Appendix A attached hereto.

### 3.     Diverting Trust Funds To Shell Company SKBB Enterprises

56.     Defendant Kelly Bingham has profited from a nearly identical scheme involving SKBB Enterprises, LLC ("SKBB"), which, according to Cicilia Elali, "was set up at the same time [as CCRB] for the same purpose."  Indeed, SKBB (initially named SFB Investments, LLC)

---

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1    like CCRB was registered in October 2007 as an "investment banking" business, and continued

2    to be held out as such while an active entity.  According to the Washington Secretary of State

3    records, under the initial ownership structure, Scott Bingham was the sole member and manager

4    of SKBB.

5         57.    Just as Chris Bingham did with CCRB, Scott Bingham transferred part of his

6    membership in SKBB to his minor child, as well as a non-existent child.  As reflected in its

7    Washington public filings, sometime between October 2008 and October 2009, SKBB's

8    ownership structure was changed to add three additional members: Kelly Bingham, Scott and

9    Kelly's minor son Beau Bingham, and a non-existent "Baby Bingham."

10   

18        58.    Like CCRB, SKBB was used to funnel money from the Trust to Scott and Kelly

19   Bingham for their personal expenses.  Cicilia Elali transferred money to SKBB at Scott or

20   Kelly's request.  For example, on December 29, 2011, Scott Bingham emailed Cicilia Elali,

21   informing her that he had been going through his bills and needed "$17,000 and then there is my

22   house payment on top of that," and "I would like to have about $3000 on top of that for food and

23   Christmas stuff this month" and money for his wife to get him a birthday gift.  He asked in total

24   for $26,000.  That day, Elali responded that she would transfer the $26,000 "today to SKBB."

25

26

59.     Cicilia Elali also recorded certain transfers to SKBB as "loans," despite having no expectation that they would be paid off anytime soon:

| Message | |
|---|---|
| From: | Cicilia Park [cpark@bingoinvestments.com] |
| Sent: | 5/5/2011 8:27:55 PM |
| To: | sfb [scooter@binghamcapital.com] |
| CC: | Dsb (dsb@parkplaceltd.com) [dsb@parkplaceltd.com]; Shari Bingham (shari@parkplaceltd.com) [shari@parkplaceltd.com] |
| Subject: | Banking |

Hi Scoot.

I just transferred the $4500 for your bills into your SKBB account from your mom's Trust as agreed. FYI, these are being recorded as loans for now. Someday when you're rich again, you can pay it back. 😊😊

60.     SKBB was dissolved by the Secretary of State on February 1, 2011 apparently due to "failure of the entity to file an annual list of officers/license renewal within the time set forth by law." The Binghams nonetheless continued to use the defunct entity's bank accounts to funnel money from the Trust (*e.g.*, transfers discussed above). In fact, between March 2014 and June 2016 alone, the Trust transferred over $150,000 to SKBB:

| Date | Amount | From | To |
|---|---|---|---|
| 3/4/2014 | $8,000 | SGB 2007 Trust | SKBB |
| 4/1/2014 | $8,000 | SGB 2007 Trust | SKBB |
| 5/2/2014 | $5,000 | SGB 2007 Trust | SKBB |
| 5/14/2014 | $3,125 | SGB 2007 Trust | SKBB |
| 6/2/2014 | $5,000 | SGB 2007 Trust | SKBB |
| 7/1/2014 | $5,000 | SGB 2007 Trust | SKBB |
| 9/2/2014 | $5,000 | SGB 2007 Trust | SKBB |
| 10/1/2014 | $5,000 | SGB 2007 Trust | SKBB |
| 11/5/2014 | $5,000 | SGB 2007 Trust | SKBB |
| 12/30/2014 | $500 | SGB 2007 Trust | SKBB |
| 1/6/2015 | $1,000 | SGB 2007 Trust | SKBB |
| 1/12/2015 | $1,500 | SGB 2007 Trust | SKBB |
| 2/2/2015 | $5,000 | SGB 2007 Trust | SKBB |
| 2/5/2015 | $1,000 | SGB 2007 Trust | SKBB |
| 3/2/2015 | $5,000 | SGB 2007 Trust | SKBB |
| 3/5/3015 | $500 | SGB 2007 Trust | SKBB |
| 4/6/2015 | $6,000 | SGB 2007 Trust | SKBB |

FIRST AMENDED AND VERIFIED COMPLAINT – 18
No. 2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

| 5/1/2015 | $5,000 | SGB 2007 Trust | SKBB |
| 7/1/2015 | $5,000 | SGB 2007 Trust | SKBB |
| 8/3/2015 | $5,000 | SGB 2007 Trust | SKBB |
| 8/3/2015 | $1,500 | SGB 2007 Trust | SKBB |
| 9/1/2015 | $5,000 | SGB 2007 Trust | SKBB |
| 9/3/2015 | $500 | SGB 2007 Trust | SKBB |
| 9/21/2015 | $200 | SGB 2007 Trust | SKBB |
| 9/22/2015 | $200 | SGB 2007 Trust | SKBB |
| 10/1/2015 | $5,750 | SGB 2007 Trust | SKBB |
| 10/28/2015 | $400 | SGB 2007 Trust | SKBB |
| 10/29/2015 | $500 | SGB 2007 Trust | SKBB |
| 11/2/2015 | $4,000 | SGB 2007 Trust | SKBB |
| 11/16/2015 | $500 | SGB 2007 Trust | SKBB |
| 11/23/2015 | $500 | SGB 2007 Trust | SKBB |
| 12/2/2015 | $1,166 | SGB 2007 Trust | SKBB |
| 1/4/2016 | $5,750 | SGB 2007 Trust | SKBB |
| 2/1/2016 | $5,750 | SGB 2007 Trust | SKBB |
| 2/4/2015 | $250 | SGB 2007 Trust | SKBB |
| 3/1/2016 | $5,000 | SGB 2007 Trust | SKBB |
| 3/7/2016 | $100 | SGB 2007 Trust | SKBB |
| 3/14/2016 | $4,000 | SGB 2007 Trust | SKBB |
| 3/28/2016 | $2,500 | SGB 2007 Trust | SKBB |
| 3/31/2016 | $1,100 | SGB 2007 Trust | SKBB |
| 4/1/2016 | $10,000 | SGB 2007 Trust | SKBB |
| 5/2/2016 | $10,000 | SGB 2007 Trust | SKBB |
| 5/23/2016 | $250 | SGB 2007 Trust | SKBB |
| 5/24/2016 | $250 | SGB 2007 Trust | SKBB |
| 6/1/2016 | $5,300 | SGB 2007 Trust | SKBB |
| 6/2/2016 | $500 | SGB 2007 Trust | SKBB |

**4.    Diverting Trust Funds to Remodel Frances Bingham's Home**

61.    Bank records that were only produced by the Trust when ordered by the Court also show that the Trust recently "loaned" $1.2 million to remodel a home once owned by judgment debtor Frances Graham and now occupied by Defendants Chris and Cherish Bingham. Indeed, Chris Bingham testified at this deposition that he and his wife, Cherish, have used that money to renovate the exterior, interior, and build an infinity pool in the backyard.  He further testified that instead of paying LVB's judgment, he used the $1.2 million "to update an asset, you know, in the family to make it more desirable" and that the family "ha[s]n't paid [LVB's judgment] because I -- we don't believe in it."

**FIRST AMENDED AND VERIFIED COMPLAINT** – 19
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

62.     The purported note for this million dollar "loan" is dated November 30, 2016, which *post-dates* the disbursement of at least $495,093 from the Trust for the remodel. (*See supra* ¶ 50.)

$1,274,176.07                                          Bellevue, WA 98005
                                                       November 30, 2016

Frances P. Graham ("Borrower"), in consideration of the advances of funds for the remodeling of my residence as set forth on Exhibit A attached hereto, hereby promises to pay to the order of the Sharon Graham Bingham 2007 Trust, 15340 NE 92nd Street, Suite D, Redmond, WA  98052, or at such other address as the holder may hereafter direct, the principal sum of One Million Two Hundred Seventy-Four Thousand One Hundred Seventy-Six and 07/100 ($1,274,176.07) with interest thereon, at the rate of Four Percent (4.0 %) per annum from the date of each advance until paid in full, payable in lawful money of the United States in full within thirty (30) days from the date first set forth above.

This Note has been negotiated, executed and delivered in the State of Washington and shall be governed by and construed in accordance with the laws of the State of Washington.

Signed at Bellevue, WA, this 30th day of November, 2016.

Frances P. Graham (Borrower)

63.     This transfer is also noted in Appendix A attached hereto.

### 5.     Diverting Trust Funds to and from David Bingham's Luxury Car Dealership

64.     David Bingham is neither a settlor nor a beneficiary of the Sharon Graham Bingham 2007 Trust.  Yet a December 31, 2012 document entitled "Assignment Separate from Certificate" (ECF 5-27) purports to show that David Bingham assigned to the Trust 100% of the shares of stock in Park Place Motors, Ltd., a luxury car dealership in Bellevue, Washington that David Bingham co-founded in 1987.  Park Place markets itself as "the Northwest's exclusive official Aston Martin sales and service center, the Northwest's oldest and largest Lotus

FIRST AMENDED AND VERIFIED COMPLAINT – 20
No.  2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

dealership, and the Seattle area's only official SAAB store." This is a fraudulent attempt to shield Defendant David Bingham's business assets from creditors. It is also a self-settled transfer of Sharon Bingham's community property as discussed in detail below. *See* ¶¶ 111-112, *infra*.

65.      Further confirming this point, documents produced by the Trust and Park Place show that the Trust transferred hundreds of thousands of dollars directly from Trust accounts to remodel Park Place Motors. Recently produced documents also show that on March 28, 2017 the Trust "loaned" over $3 million in cash to Park Place Motors. This transfer is noted in Appendix A attached hereto.

66.      None of this money funneled from the Trust to Park Place reflects a legitimate transfer of funds from mother to daughter for the benefit of Sharon Bingham. All of it directly violates the terms of the Trust Agreement. None of it was used to satisfy LVB's judgment.

67.      Unsurprisingly, as with CCRB, David and Sharon Bingham, and potentially other debtors, commingle assets with Park Place. David Bingham recently testified under oath that Park Place pays the bills for his personal credit card. The Trustee has subsequently contended without substantiating the claim that Mr. Bingham somehow reimburses Park Place for all of these payments. That does not change the reality that Park Place is being used to funnel money to Mr. Bingham to evade creditor garnishment.

68.      Other members of the Bingham family apparently receive income from Park Place as well. Chris Bingham recently testified that one or two years ago, Sound Transit purchased real property from Park Place for an undisclosed, but likely substantial, sum, and he received $500,000 of the sales proceeds (through his CCRB account). None of that money (or any of the other proceeds likely received by the other Binghams) was used towards LVB's judgment.

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

### 6.     Diverting Trust Funds to HyTech Power—Of Which Dean is Executive Chairman

69.     As part of his "handshake" agreement with the Binghams, and in breach of his fiduciary duty, Dean and Elali have also diverted over a million dollars from Trust accounts to a company of which Dean is Executive Chairman (as noted below):  Defendant HyTech Power, Inc. ("HyTech").  In addition to the transfers noted below, Dean has represented that the Trust's interest in HyTech was valued at over $1.2 million dollars.  ECF 5-34.

70.     HyTech went into business in approximately 2008 or 2009 (formerly known as DEEC, Inc.), and represents to investors that it is developing clean, efficient and renewable energy solutions.[4]  Defendant Henry Dean currently serves as Executive Chairman of its board. As of February 2017, he owned over 1.5 million shares of the company by his own estimation. HyTech has been seeking millions in capital investments despite holding only one patent (one granted patent and one provisional patent application on file) and—eight years into the company's existence—has yet to advance past "testing"; in technical terms, it is only at the point of having received a testing certification from the California Air Resources Board ("CARB"). Its own website notes that as of 2017 it had only "[r]eceived CARB testing protocol for CARB Verification."  In July of last year, Elali admitted the company was "a long way off of disbursement to shareholders."  Dean claims he expects the company to go public or sell in 2018.

71.     Despite the obvious conflict of interest, Dean and Elali have—just in the past year and half—transferred hundreds of thousands of dollars from Trust accounts directly to Defendant HyTech Power, in some cases noting them in wire records as "loans":[5]

| Date | Amount | From | To |
|------|--------|------|-----|
| 6/23/2016 | $100,000 | SGB 2007 Trust | HyTech Power |
| 7/6/2016 | $50,000 | SGB 2007 Trust | HyTech Power |
| 10/5/2016 | $10,000 | SGB 2007 Trust | HyTech Power |

---

[4] *See* https://www.hytechpower.com

[5] Mr. Dean has since claimed these loans were repaid, but even if that were true, these transactions remain self-dealing by the Trustee, and reflect transfers to a company chaired by a close friend, post-judgment, that have the effect of allowing HyTech to hold debtor assets in a form that they can claim cannot be garnished.

FIRST AMENDED AND VERIFIED COMPLAINT – 22
No.  2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

| 11/25/2016 | $50,000 | SGB 2007 Trust | HyTech Power |
| 12/16/2016 | $50,000 | SGB 2007 Trust | HyTech Power |
| 12/16/2016 | $750.00 | SGB 2007 Trust | HyTech Power |
| 1/18/2017 | $50,000 | SGB 2007 Trust | HyTech Power |
| 9/19/2017 | $416.90 | SGB 2007 Trust | HyTech Power |

72.     Dean initially attempted to conceal from LVB that he has been diverting Trust funds to HyTech.  When this Court ordered the Trust to produce documents on May 31, 2017, Dean redacted from financial and accounting statements the transfers being made to HyTech. Only when LVB filed a renewed motion to compel on November 2, 2017, and the Court ordered Dean to produce unredacted statements on December 28, 2017, was it revealed that these redactions were transfers to HyTech directly from Trust accounts.

73.     Each of these transfers is documented in detail in Appendix A attached hereto.

74.     Other documents that were only produced on January 25, 2018 in response to the Court's order show further abuses of the Trust, which, as above, Dean operates as HyTech's personal piggy bank.

### 7.     Diverting Trust Funds to Pay Mr. Dean's Alimony and Other Personal Expenses

75.     Dean has also breached his fiduciary duty, and furthered Defendants' scheme to defraud creditors, by using the Trust for his own ends.  In September 2017, Dean made alimony payments to his ex-wife, Helen Dean, directly from Trust accounts.  The financial statements that the Court ordered unredacted and that have been produced this year likewise show that over $1.5 million was transferred from Trust accounts to Dean's accounts over just two and a half years:

| Date | Amount | From | To |
| --- | --- | --- | --- |
| 5/29/2014 | $1,000 | SGB 2007 Trust | Henry Dean |
| 6/19/2014 | $36,447 | SGB 2007 Trust | Henry Dean |
| 9/8/2014 | $10,000 | SGB 2007 Trust | Henry Dean |
| 11/14/2014 | $1,154 | SGB 2007 Trust | Henry Dean |
| 6/24/2015 | $5,000 | SGB 2007 Trust | Henry Dean |
| 7/1/2015 | $20,000 | SGB 2007 Trust | Henry Dean |
| 8/3/2015 | $25,000 | SGB 2007 Trust | Henry Dean |

FIRST AMENDED AND VERIFIED COMPLAINT – 23
No. 2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

| | | | |
|---|---|---|---|
| 8/5/2015 | $25,000 | SGB 2007 Trust | Henry Dean |
| 9/1/2015 | $25,000 | SGB 2007 Trust | Henry Dean |
| 10/1/2015 | $20,000 | SGB 2007 Trust | Henry Dean |
| 10/2/2015 | $5,000 | SGB 2007 Trust | Henry Dean |
| 11/2/2015 | $25,000 | SGB 2007 Trust | Henry Dean |
| 11/3/2015 | $536 | SGB 2007 Trust | Henry Dean |
| 11/23/2015 | $5,000 | SGB 2007 Trust | Henry Dean |
| 12/1/2015 | $20,000 | SGB 2007 Trust | Henry Dean |
| 12/2/2015 | $6,000 | SGB 2007 Trust | Henry Dean |
| 1/4/2016 | $6,000 | SGB 2007 Trust | Henry Dean |
| 1/4/2016 | $19,000 | SGB 2007 Trust | Henry Dean |
| 2/1/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 2/1/2016 | $1,000 | SGB 2007 Trust | Henry Dean |
| 2/12/2016 | $50,000 | SGB 2007 Trust | Henry Dean |
| 3/1/2016 | $19,000 | SGB 2007 Trust | Henry Dean |
| 3/1/2016 | $6,000 | SGB 2007 Trust | Henry Dean |
| 4/1/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 5/2/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 5/25/2016 | $17,920 | SGB 2007 Trust | Henry Dean |
| 6/1/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 6/8/2016 | $9,480 | SGB 2007 Trust | Henry Dean |
| 6/8/2016 | $26,000 | SGB 2007 Trust | Henry Dean |
| 6/20/2016 | $1,559 | SGB 2007 Trust | Henry Dean |
| 6/24/2016 | $34,274 | SGB 2007 Trust | Henry Dean |
| 7/1/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 7/6/2016 | $45,262 | SGB 2007 Trust | Henry Dean |
| 8/2/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 8/16/2016 | $40,020 | SGB 2007 Trust | Henry Dean |
| 9/1/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 9/14/2016 | $40,000 | SGB 2007 Trust | Henry Dean |
| 10/3/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 10/7/2016 | $7,520 | SGB 2007 Trust | Henry Dean |
| 10/26/2016 | $25,020 | SGB 2007 Trust | Henry Dean |
| 10/31/2016 | $35,020 | SGB 2007 Trust | Henry Dean |
| 11/2/2016 | $25,000 | SGB 2007 Trust | Henry Dean |
| 11/18/2016 | $5,000 | SGB 2007 Trust | Henry Dean |
| 11/23/2016 | $50,000 | SGB 2007 Trust | Henry Dean |
| 12/2/2016 | $20,000 | SGB 2007 Trust | Henry Dean |
| 12/2/2016 | $5,000 | SGB 2007 Trust | Henry Dean |
| 12/15/2016 | $25,025 | SGB 2007 Trust | Henry Dean |
| 12/15/2016 | $20,000 | SGB 2007 Trust | Henry Dean |
| 12/16/2016 | $7,500 | SGB 2007 Trust | Henry Dean |
| 1/3/2017 | $25,000 | SGB 2007 Trust | Henry Dean |
| 1/10/2017 | $20,000 | SGB 2007 Trust | Henry Dean |

FIRST AMENDED AND VERIFIED COMPLAINT – 24
No.  2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

| 1/17/2017 | $24,800 | SGB 2007 Trust | Henry Dean |
|---|---|---|---|
| 2/1/2017 | $4,800 | SGB 2007 Trust | Henry Dean |
| 2/2/2017 | $20,200 | SGB 2007 Trust | Henry Dean |
| 2/9/2017 | $4,000 | SGB 2007 Trust | Henry Dean |
| 2/13/2017 | $23,809 | SGB 2007 Trust | Henry Dean |
| 2/23/2017 | $24,000 | SGB 2007 Trust | Henry Dean |
| 3/1/2017 | $25,000 | SGB 2007 Trust | Henry Dean |
| 3/2/2017 | $4,800 | SGB 2007 Trust | Henry Dean |
| 3/9/2017 | $8,100 | SGB 2007 Trust | Henry Dean |
| 3/23/2017 | $21,000 | SGB 2007 Trust | Henry Dean |
| 3/28/2017 | $20,884 | SGB 2007 Trust | Henry Dean |
| 4/3/2017 | $21,900 | SGB 2007 Trust | Henry Dean |
| 4/18/2017 | $134,325 | SGB 2007 Trust | Henry Dean |
| 4/24/2017 | $300 | SGB 2007 Trust | Henry Dean |
| 5/2/2017 | $25,000 | SGB 2007 Trust | Henry Dean |
| 5/11/2017 | $300 | SGB 2007 Trust | Henry Dean |
| 5/23/2017 | $4,000 | SGB 2007 Trust | Henry Dean |
| 5/31/2017 | $2,500 | SGB 2007 Trust | Henry Dean |
| 6/1/2017 | $22,500 | SGB 2007 Trust | Henry Dean |
| 6/2/2017 | $4,800 | SGB 2007 Trust | Henry Dean |
| 6/15/2017 | $23,960 | SGB 2007 Trust | Henry Dean |
| 6/19/2017 | $300 | SGB 2007 Trust | Henry Dean |
| 6/28/2017 | $450 | SGB 2007 Trust | Henry Dean |
| 7/5/2017 | $20,750 | SGB 2007 Trust | Henry Dean |
| 7/5/2017 | $3,000 | SGB 2007 Trust | Henry Dean |
| 8/1/2017 | $20,200 | SGB 2007 Trust | Henry Dean |
| 8/2/2017 | $4,800 | SGB 2007 Trust | Henry Dean |
| 9/1/2017 | $25,000 | SGB 2007 Trust | Henry Dean |
| 10/3/2017 | $25,000 | SGB 2007 Trust | Henry Dean |
| 11/1/2017 | $25,000 | SGB 2007 Trust | Henry Dean |
| 11/10/2017 | $1,000 | SGB 2007 Trust | Henry Dean |
| 11/13/2017 | $4,935 | SGB 2007 Trust | Henry Dean |
| 11/17/2017 | $1,100 | SGB 2007 Trust | Henry Dean |
| 11/17/2017 | $750 | SGB 2007 Trust | Henry Dean |
| 11/23/2017 | $50,000 | SGB 2007 Trust | Henry Dean |
| 11/29/2017 | $500 | SGB 2007 Trust | Henry Dean |
| 12/1/2017 | $20,200 | SGB 2007 Trust | Henry Dean |
| 12/5/2017 | $1,575 | SGB 2007 Trust | Henry Dean |
| 12/7/2017 | $500 | SGB 2007 Trust | Henry Dean |

76.     Some payments were made by Elali to accounts controlled by Dean through a

shell company, Defendant BGH Holdings, LLC.  In connection with these transfers, Elali caused

FIRST AMENDED AND VERIFIED COMPLAINT – 25
No.  2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1  an accounting "clearinghouse" relationship to be set up with a bank whereby money could be

2  funneled to BGH from Trust accounts essentially on demand.

3        77.     Some of the payments above were made by Elali to BGH or to other entities with

4  the notation that they were for the benefit of Dean.

5        78.     These transfers directly contradicted the Binghams' counsel's representation to

6  the Court at the May 3, 2018 hearing that Mr. Dean drew only $45,000 each year over eight

7  years for his work as Trustee.  (*See* 5/3/2018 Tr. at 87:23-88:16 ("[T]hey complain about Mr.

8  Dean getting $360,000 for eight years as a Trustee. . . . And then to say that he isn't entitled to

9  compensation of $45,000 a year for doing this is really -- I just can't imagine that a court, who

10  deals in attorney fees all the time and fees to people of that kind, that that's an unreasonable

11  distribution.").)[6]

12        79.     Each of these transfers is documented in detail in Appendix A attached hereto.

13                    **8.     Seizable Assets Are Held in Accounts Once Used by Two Trusts Set**
                               **Up for Deceased Judgment Creditor Frances Graham.**
14

15        80.     Two additional trusts exist for which judgment creditor Frances Graham was

16  beneficiary during her lifetime: the O.D. Fisher Trust, and Nellie Hughes Fisher Trust.  The

17  remainderman for each trust is Defendant Sharon Graham Bingham.  When Frances passed away

18  on May 10, 2017, the trust res became property of Defendant Sharon Graham Bingham, who is a

19  judgment debtor.  Any property transferred to Sharon in light of this may therefore be seized by

20  LVB to satisfy the judgment.  LVB therefore seeks declaratory judgment to that effect as

21  detailed below.

22

23

24  _____

25  [6] Mr. Dean has claimed that some of this is his "compensation," but has not attached a written compensation
    agreement to any of his declarations submitted to the Court (if any exists), nor has Mr. Dean submitted to the
26  Court a log of the hundreds of thousands of dollars in payments made to Mr. Dean and the justification for them
    (if one exists).

**FIRST AMENDED AND VERIFIED COMPLAINT** – 26
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

81.     Indeed, the Trustee for each Trust has establishing automated "clearinghouse" papers to permit money to be paid from the accounts of these Trusts to Sharon Bingham.  ECF 5-69, 5-70.

**E.     Defendants Refuse to Honor LVB's Judgment While Continuing to Live Extravagant Lifestyles**

82.     Dean's fraudulent transfer scheme, carried out with the active participation of Cicilia Elali, has paid substantial dividends for the Binghams.  Defendants and Dean represented to LVB in a *verified document* that he provided to LVB (a full version of which is available at ECF 5-34) that as of May 2017, the Trust consisted of at least the following assets:

| Asset | Estimated Value (by Dean) | Estimated Net Value (by Dean) |
|---|---|---|
| Securities Account (Bank of the West) | $50,000 | $50,000 |
| Promissory Note (by Noble House) | $980,000 | $980,000 |
| Shares in Biolytical | $2,000,000 | $2,000,000 |
| Private Yacht (Bingo M/V) | $500,000 | $500,000 |
| Promissory Note (Prium) | $600,000 | $600,000 |
| Park Place Motors (42.5% stake) | $3,400,000 | $3,400,00 |
| Condominium in Hawaii #1 | $3,300,000 | $800,000 |
| Condominium in Hawaii #2 | $4,500,000 | $1,170,000 |
| Shares in Plasma Drive | $1,000,000 | $1,000,000 |
| Shares in HyTech Power | $1,288,612 | $1,288,612 |
| Single Family Residence in WA | $3,000,000 | $1,800,000 |
| **Total** | **$20,618,612** | **$13,588,612** |

83.     Notably, Dean prepared a dramatically different assessment of the Trust's assets only the year before on March 9, 2016.  The assets and values he reported on that date are below:

| Asset | Estimated Value (by Dean) | Estimated Net Value (by Dean) |
|---|---|---|
| Securities Account | $3,100,000 | $3,100,000 |
| Promissory Note (by Noble House) | $1,400,000 | $1,400,00 |
| Shares in Biolytical | $0 | $0 |
| Umpqua Judgment (partial) | $2,644,000 | $2,644,000 |
| Private Yacht (Bingo M/V) | $500,000 | $500,000 |

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

| Promissory Note (Prium) | $1,000,000 | $1,000,000 |
|---|---|---|
| Park Place Motors | $10,000,000 | $10,000,000 |
| Condominium in Hawaii #1 | $3,300,000 | $800,000 |
| Condominium in Hawaii #2 | $4,500,000 | $1,170,000 |
| Shares in Plasma Drive | $0 | $0 |
| Shares in HyTech Power | $1,288,612 | $1,288,612 |
| Single Family Residence in WA | $3,500,000 | $2,500,000 |
| **Total** | **$31,232,612** | **$24,402,612** |

84.     It is also noteworthy that representations made to the Court by counsel for the Binghams at the May 3, 2018 hearing and in sworn declarations from Mr. Dean confirm that the May 11, 2017 summary that Dean sent to LVB was false and misleading.  In particular, the document Dean prepared for LVB lists the Hawaii condominiums and M/V Bingo yacht as assets of the Trust—and yet counsel claimed at the hearing that the condos were never actually held by the Trust, and Dean has attested that the M/V Bingo was not held by the Trust. (5/3/2018 Tr. at 85:5-8 ("So let's go look at No. 5 where [plaintiffs] introduce, and they say there were transfers of the Maui condos.  As you know, title to those condos was never transferred."); *id.* at 85:12-15 (stating that "title to the condos have always been in the name of the Binghams"); *see* ECF 38 (3/5/18 Decl. of Henry Dean) at ¶ 24.a ("No Judgment Debtor transferred any title or security interest in the Hawaii Condos to the 2007 Trust."); ¶ 24.b ("Title to the M/V Bingo was not transferred to the 2007 Trust.").

85.     Despite the vast resources of the Trust, LVB has only recovered a small fraction of the judgment the Binghams owe (to date, approximately $16,000), and the Binghams have instead used millions of dollars unlawfully diverted from the Trust to support their extravagant lifestyles.

86.     For example, Defendant Christopher Bingham, who is the son of Sharon Graham Bingham, has not paid a cent toward the judgment.  He claims to have had no employment from 2008 to the present, and only earned income in the eight years prior to that when he briefly took a stab at becoming a professional race car driver.  Notably, Mr. Bingham testified that there is

FIRST AMENDED AND VERIFIED COMPLAINT – 28
No.  2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1    nothing preventing him or his wife from working, but he chooses not to work because he "is

2    gifted income from his mother." Indeed, he now claims that his "sole source of income consists

3    of gifts from family members." Yet he lives in a waterfront home in Hunts Point, Washington

4    valued at over $4 million dollars of November 2017 according to Redfin (ECF 5-47)—which he

5    recently spent over $1.2 million renovating—complete with a pool and a private dock that

6    houses two jet-skis and a wakeboarding boat. He estimates that he spends two full months of

7    each year at ski resorts, and until this year was a member of the Overlake Country Club. Every

8    spring break he vacations in Maui, along with additional trips. For example, in approximately

9    the past year, Chris Bingham and his family have taken trips to Cabo San Lucas, Disneyland

10   (which included transportation by limousine), and a ten-day trip to Maui, for which Chris

11   Bingham claims he paid $5,000 for, despite having no job.

12           87.     As discussed above, in an attempt to evade creditors, Chris Bingham pays for this

13   lifestyle with money funneled directly from the Sharon Graham Bingham Trust—of which he is

14   not a beneficiary—to bank accounts held by the shell CCRB Enterprises entity. He has testified

15   that he does not use a personal checking account. Instead, he pays his expenses out of the CCRB

16   Enterprises bank account. When he has expenses, he simply asks his mother, Defendant Sharon

17   Bingham to cause the Trust (through bookkeeper Cicilia Elali) to distribute money to CCRB

18   Enterprises in violation of the terms of the Trust Agreement. *See* ECF 5-20 at 191:5-12 ("Q. So

19   if you need money outside of the [monthly allowance of] $15,000, for example., . . . how do you

20   get that money from your mother? A. I go to my mom and ask her."), 199:24-200:12 ("I would

21   just call up [my mom] and say, I need this much for a draw to pay this bill for the construction,

22   and it would be deposited in my account."). As above, Dean has also been violating the Trust

23   Agreement each month by funneling monthly $15,000 support payments to Defendants Chris

24   and Cherish Bingham directly from Trust accounts to them.

25           88.     To be clear, the meager sum that LVB has recovered on its judgment was not paid

26   voluntarily by the Binghams; rather, LVB was forced to file over seven garnishment actions

---

**FIRST AMENDED AND VERIFIED COMPLAINT** – 29
No. 2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1   against the Binghams—in which LVB garnished a fraction of David Bingham's six-figure salary

2   and one of his bank accounts—just to obtain that small sum.  The Binghams (assisted by Henry

3   Dean and Cicilia Elali), knowing that all distributions from the Trust (even if it were a

4   spendthrift trust) may be garnished by creditors, have engaged in a practice of coordinating the

5   distributions from the Trust in a manner specifically designed to avoid garnishment.

6   Specifically, Elali transfers money from the Trust to an account accessible by one or more of the

7   debtors, and the money is then removed the same or next day from the account.  As David

8   Bingham testified earlier last year, when discussing how Elali pays all of his bills, "[s]he puts

9   some money in an account, then takes it out. Because we're always worried about that because

10  people garnish it. So if we put money in sometimes it goes out the next day."  Again, when

11  reviewing his own bank account statements, David Bingham testified, "[i]f you will notice there,

12  there's hardly ever any money in the checking account because we're always afraid someone is

13  going to garnish it."

14      89.    For example, on June 24, 2014, the Trust (account ending 8163) transferred

15  $100,000 to Sharon Bingham and David Bingham's joint bank account, to which Cicilia Elali

16  was also a signatory.  The same day, Sharon, David, and/or Cicilia Elali wrote three checks for a

17  total of $62,510.  The next day, Sharon, David, and/or Cicilia Elali transferred $33,000 back to

18  the Trust:

| | | | | | |
|---|---|---|---|---|---|
| 06/24 | Deposit | | | | |
| 06/24 | Online Transfer From Chk ...8163 Transaction#: 3996219215 | | 100,000.00 | 113,566.45 |
| 06/24 | 06/24 Online Payment 3934617822 To Assc of Apt Owners | | - 1,996.40 | 111,570.05 |
| 06/24 | 06/24 Online Payment 3934476990 To Assc of Apt Owners | | - 1,985.80 | 109,584.25 |
| 06/24 | Check | # 784 | - 21,355.30 | 88,228.95 |
| 06/24 | Check | # 785 | - 21,193.08 | 67,035.87 |
| 06/24 | Check | # 783 | - 19,962.52 | 47,073.35 |
| 06/25 | 06/25 Online Transfer To Chk ...8163 Transaction#: 3997098278 | | - 33,000.00 | 14,073.35 |

19

20

21

22

23

24

25

26

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

90.     As another example, on January 12, 2015, the Trust transferred $26,000 (from account ending in 8163) to Sharon and David's personal account, to which Cicilia Elali was a signatory.  The same day, Sharon, David, and/or Cicilia used the funds in the account to pay various expenses, including fees for the Overlake Golf and Country Club, the University Club, and the Bellevue Club, and two checks, resulting in the removal of $27,564 from the account:

| Date | Description | | Amount | Balance |
|---|---|---|---|---|
| | | | | 7,548.07 |
| 01/12 | Online Transfer From Chk ..8163 Transaction#: 4382965650 | | 26,000.00 | 33,548.07 |
| 01/12 | 01/12 Online Payment 4382896104 To Overlake Golf And Country Club | | - 762.46 | 33,083.61 |
| 01/12 | 01/12 Online Payment 4382896111 To Puget Sound Energy | | - 214.94 | 32,868.67 |
| 01/12 | 01/12 Online Payment 4382898093 To Bellevue Club | | - 16.50 | 32,853.17 |
| 01/12 | 01/12 Online Payment 4382896128 To The University Club | | - 361.40 | 32,491.77 |
| 01/12 | 01/12 Online Payment 4382896136 To VAN De | | - 150.00 | 32,341.77 |
| 01/12 | Check          # 1063 | | - 19,179.72 | 13,162.05 |
| 01/12 | Check          # 1064 | | - 6,880.44 | 6,281.61 |
| 01/13 | 01/13 Online Transfer To Chk ...1752 Transaction#: 4384070031 | | + 194.00 | 6,087.61 |
| 01/13 | Allstate Ins CO  Ins Prem  00000009205912797 Web ID: 13607:9665 | | - 109.47 | 5,978.14 |
| 01/14 | State Farm Re 27 Sfpp          PPD ID: 9000307001 | | - 783.25 | 5,194.89 |
| 01/22 | Interest Payment | | 0.04 | 5,194.93 |
| | Ending Balance | | | $5,194.93 |

91.     None of this unlawfully diverted money—likely totaling millions of dollars since the entry of LVB's judgment—that should have been used to satisfy LVB's judgment has been put to that purpose.  Instead, Chris Bingham recently has brazenly testified that "I don't think I owe the money to LVB-Ogden" because he believes they should have prevailed in the Northern District of Illinois because they were somehow "hoodwinked" by others.  But the Illinois court granted summary judgment for LVB, and, entered judgment—for which there was no appeal. Chris Bingham understands that the court entered a valid judgment against the Binghams, and agrees that LVB has not engaged in any wrongdoing.  Nonetheless, he thinks it is entirely appropriate to use more than a million dollars to, in his words, "update an asset . . . to make it more desirable" (*i.e.*, renovate his million-dollar house) instead of paying a portion of the judgment he owes to LVB.  Unless this Court intervenes it is clear that this fraud on LVB will continue, and LVB's valid judgment will remain unsatisfied.

   F.    **Defendants & Henry Dean Conspire To Mislead and Defraud Creditors—Including LVB—To Prevent Collection on Valid Judgments.**

92.     In October 2009, before LVB's judgment was entered against the debtors, counsel for debtors reached out to LVB in an attempt to thwart any attempt by LVB to collect on

FIRST AMENDED AND VERIFIED COMPLAINT – 31
No.  2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

the judgment.  Counsel provided financial statements that painted a misleading picture of the Binghams having a negative net worth, being insolvent, and contained at least the following inaccuracies:  Chris and Cherish Bingham failed to disclose their ownership interest in CCRB, Scott and Kelly Bingham failed to disclose their ownership interest in SKBB, Frances Graham failed to disclose that she was entitled to receive income from the O.D. Fisher Trust and Nellie Hughes Fisher Trusts, and David and Sharon Bingham failed to note that Sharon was entitled to receive income from the Sharon Graham Bingham 2007 Trust (and instead treated the Trust as creating a $3 million liability).  The letter warned LVB that even if it obtained judgment it would recover nothing.  ECF 5-50.

93.     Counsel also advised LVB that the Binghams' "representative" in any resolution would be Henry Dean, "a long-time family friend and business advisor."  Although Dean is a licensed attorney, counsel for debtors explained that Dean would not be participating in discussions as a lawyer.  ECF 5-50.

94.     Notably, the set of tax returns, appraisal reports and other documents received by LVB from counsel for the Binghams in November 2009 (ECF 35-1, Ex. E) likewise do not disclose CCRB or SKBB.

95.     In January 2010, Henry Dean contacted counsel for LVB regarding the Bingham's debt to LVB.  He described himself as a "very close" and "old friend of the Bingham family."  He explained that the Binghams asked him to help them through the "difficulties they [] encountered as a result of their investments in real estate."  Dean made the false and misleading claim to LVB that the Bingham family had "los[t] . . . virtually all of their wealth." According to Dean, a settlement was out of the question, as the Binghams would have "no way to fund" it (another false statement).  ECF 5-51.  Yet in the three weeks between October 14 and November 4, 2010, over $700,000 was deposited into just one of the Trust's bank accounts.  On November 8, 2010, the Trustee transferred $100,000 to David and Sharon's personal accounts. Between October 28, 2010 and December 1, 2010 he also transferred at least $140,000 to

FIRST AMENDED AND VERIFIED COMPLAINT – 32
No. 2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1    Defendant Bingo Investments, LLC.  This is also more than a year before David, Sharon, Chris

2    and Cherish Bingham pledged as collateral for "loans" from the Trust all of their possessions.

3        96.    On December 13, 2010, Dean made the false and misleading claim to LVB that

4    the Binghams had "no assets to be executed upon."  He insisted time and time again that "there

5    simply is nothing available" to pay on the Binghams' debt to LVB.   Dean also falsely

6    represented that the assets in the Trust were minimal, and could not be accessed by creditors.

7    ECF 5-52.  Yet between December 2010 and March 2011, the Trustee transferred over $250,000

8    to Defendant Bingo Investments, LLC, and $35,000 to "Chris Bingham/CCRB."  Again, this

9    was also more than a year before David, Sharon, Chris and Cherish Bingham pledged all of their

10   belongings as collateral for loans from the Trust.

11       97.    In April 2011, Dean emailed LVB "recent financial statements" of the Binghams,

12   copying on the email David and Chris Bingham, Cicilia Elali, and counsel Bruce Johnston.

13   These false and misleading financial statements reflected that the Binghams had immense

14   negative "net worth," were insolvent, and that most of, if not all, their assets were encumbered.

15   David and Sharon Bingham's statements falsely represented that "David and Shari now live on

16   Cash on Hand - [social security checks] apprx $2500/mo[nth]," and that their interests in Bingo

17   Investments LLC and Park Place Motors Ltd. were "owed to the Trust."  (ECF 5-53).  These

18   "recent financial statements" also failed to mention CCRB and SKBB, or disclose the payments

19   being made to the debtors through those entities.  The statement for Chris and Cherish Bingham

20   claimed that "Chris and Cherish sold personal items for cash to live on-CGB manages-*no addl*

21   *details.*" (emphasis added).  The statement for Scott and Kelly Bingham claimed that "Scott and

22   Kelly have been selling personal items for cash to live on."  At the time, David Bingham was

23   taking a salary from his own company Park Place (in addition to the sums being transferred from

24   the Trust), and in 2011, reported a salary of $78,800 on his tax returns.  Indeed—far from living

25   off "cash on hand" and social security—in the months leading up to Dean's April 2011

26   representation to LVB, Sharon and David Bingham received various substantial deposits into

FIRST AMENDED AND VERIFIED COMPLAINT – 33
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

their personal account, including: a $18,156 deposit on January 5, 2011, a $22,296 deposit on January 12, 2011, a $50,000 deposit on February 2, 2011, and a $60,000 deposit on March 17, 2011.  The Trustee also transferred to *himself* at least $88,000 between April 1, 2011 and May 2, 2011.  CCRB received at least $75,000 from Trust accounts in 2011, and SKBB over $35,000.  On February 1, 2012, the Trustee also transferred $70,000 to Defendant and judgment creditor Bingo Investments.  This was followed by two $65,000 transfers to Bingo Investments on June 1, 2012 and July 3, 2012.

98.     As alleged above, by this time, unbeknownst to LVB, Dean had been advising the Binghams how to hide their assets for at least two years.  For example, as noted above, in November 2010, Henry Dean emailed David Bingham, Chris Bingham, Sharon Bingham, Cicilia Park, Bruce Johnston, and others, regarding "keeping [the Bingham's] investment and profit . . . offshore away from creditors."  The family also appointed Dean as trustee for the Sharon Graham Bingham 2007 Trust to maintain complete access to the Trust.  Dean and the Binghams then embarked on the scheme described above to use the Trust to hide assets from creditors.

99.     On August 2, 2012, the Trust made a $100,000 "loan" to Henry Dean with a notation that it was to finance the purchase of a home.  On February 12, 2013, the Trustee transferred $250,000 to the personal bank accounts of Sharon and David Bingham.

100.     In 2014, LVB reached out again to Dean about obtaining payment on its judgment against the Binghams to see if anything had changed.  Dean continued to represent to LVB that the Binghams were penniless, falsely stating that "it is fruitless to waste money pursuing them," "[a]nything beyond ['a truly minor payment'] is just impossible."  He made the false and misleading claim that even to make a "minor payment," the Binghams "would have to call upon the Trustees of the Trusts to fund any settlement which is also a difficult task."  Dean made the false and misleading claim to LVB that the SGB 2007 Trust "is immune from creditors" and it contains "modest assets that provide in part for the living expenses of David and Sharon."  ECF 5-54, 5-55.

---

FIRST AMENDED AND VERIFIED COMPLAINT – 34
No.  2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

101.     Likewise, on July 17, 2014, Dean falsely represented to LVB that the Binghams did not have "$250,000 in the Trust or elsewhere". ECF 5-56. Meanwhile, recently produced documents show that just *one* of the Trust's bank accounts held over $640,000 in assets at that time, including $266,000 in cash equivalents. In the prior month alone, over $350,000 went in and out of another Trust account. And just in the span of July 14 through August 8, 2014, the Trust received another $166,879 in that same account, including a $55,000 deposit on July 17, 2014. In the month leading up to Dean's email, Sharon and David received in their personal bank account deposits amounting to at least $180,000, including a $37,701 deposit on July 17, 2014.

102.     Throughout 2014 and 2015, LVB continued to communicate with Dean about payment on LVB's judgment, but Dean continued to make false and misleading claims that the Binghams had virtually no assets. *E.g.*, ECF 5-57.

103.     A summary of some of Dean's misleading statements charted against some of the key transfers into and out of the Trust is depicted in Figure A below (in addition to the transfers noted above, including that David Bingham reported to the IRS a salary in 2011 of $78,800—far from living off social security checks):

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

<u>Figure A.</u>  **Timeline of Misleading Statements.**



104.     These communications with LVB reflect a pattern of deceit by Dean, the

Binghams, their counsel, and potentially others, of misrepresenting information to the

Binghams' creditors to stave off collection. For example, other creditors have reported that:

- "[T]he Bingham Parties collectively have claimed they have virtually no source of
  income whatsoever. . . . All of the[ir] assets are now allegedly encumbered by various
  liens and other notes."

- "Throughout the course of [] settlement negotiations, the Judgment Debtors have
  claimed they are without resources and otherwise unable to pay anything towards the
  judgment of value."

- "Throughout the course of these matters, the Judgment Debtors have produced
  various financial information which purportedly claims to support their contention
  that they are penniless."

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

105.   Notably, the Trustee also falsely represented to others investigating the Binghams in July 2014 that he had purchased LVB-Ogden's judgment in this case for $250,000 to create the impression that the Binghams' outstanding issues with creditors had been resolved:

> 5.   LVB – Ogden. The judgment in the sum of $76.7 million together with the inter-creditor agreement that controls the Transwestern judgment of $46.9 million was purchased for $250,000 by the Sharon Graham Bingham 2007 Trust with term payments.

106.   In November 2016, in an effort to learn where the debtors could be hiding assets, LVB served interrogatories and document requests on the Binghams and Bingo, as well as subpoenas on Park Place Motors and the Trust. Counsel for the debtors, Trust, and Park Place (at times, the debtors, the Trust and Park Place shared counsel) delayed LVB's discovery efforts for months and months by repeatedly promising LVB that they would produce discovery responses and documents and then failing to do so.

107.   By February 2017, LVB had only received a handful of documents sent by counsel for the Binghams—who claimed they were not representing the Trust or Park Place—on January 9, 2017 to substantiate claims made during a meet and confer discussion, and discovery responses from one debtor, Chris Bingham, in which he stated he had no income, only a few assets, which were encumbered, and less than $2,000 in cash. Chris Bingham made the further false and misleading claim that as of February 2017, the Christopher G. Bingham Family Trust "currently has no assets," and that "[n]either [him], his spouse or dependents are beneficiaries of the [SGB 2007 Trust]." But just weeks prior, on January 18, 2017, the home Chris Bingham lives in (which as discussed above was recently renovated and is worth $4 million) was quitclaimed to the Christopher G. Bingham Family Trust. Further, the Trust and Park Place had served joint objections to the subpoena, in which they claimed "the Trust and Park Place Motors, Ltd. hold no executable assets of Defendants." Still, none of the debtors, Park Place, or the Trust had served documents in response to LVB's requests; indeed the only "production" of documents was the handful of documents sent by counsel for the Binghams in an attempt to

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1  substantiate claims made during a meet and confer discussion.  LVB continued to engage with

2  counsel for the Defendants, hoping that they would comply with their discovery obligations.

3       108.    Eventually, LVB was forced to incur the time and expense of moving to compel

4  on its discovery requests.  LVB first brought a motion to compel compliance with the subpoenas

5  to the Trust and Park Place on March 22, 2017.  On May 31, 2017, the Court ordered the Trust

6  and Park Place Motors to produce documents in response to those subpoenas.

7       109.    It was not until July 2017 that the Binghams finally served interrogatory

8  responses, and made their first (meager) production of documents in response to the Court's

9  order.  The Trust and Park Place followed shortly thereafter—in July 2017, they made a small

10  production of documents.  Those productions were deficient in numerous respects (including in

11  that large portions of documents were redacted without reason), and LVB was again forced to

12  move to compel to obtain information from the Trust on November 2, 2017.  On the same day,

13  LVB also moved to compel information and documents from Bingo Investments. The Court

14  granted both motions on December 28, 2017.  The Trust began producing documents responsive

15  to that order on January 25, 2018—while also requesting an extension of time to comply from

16  the Court without first meeting and conferring with LVB.  In response, the Court granted an

17  extension to March 30, 2018 for the Trustee to comply.  The Trustee then moved, on March 1,

18  2018, for a stay of his obligation to produce the documents ordered.  The Trustee's deadline to

19  comply of March 30, 2018 elapsed without the Trustee producing any further documents.  On

20  April 9, 2018, the Court denied the Trustee's request for a stay.  The Trustee then finally

21  produced the outstanding documents.  Documents produced in 2018 revealed to LVB the depth

22  of the fraudulent nature with which the Defendants acted to hide the Binghams' assets.

23       110.    As alleged above, for years, Dean, Cicilia Elali, Park Place, CCRB, SKBB,

24  debtors, their counsel, and potentially others, stalled and diverted LVB's collection efforts by

25  feeding LVB false and misleading information about the Binghams (in the case of Mr. Dean),

26  and going to extreme lengths to establish sham security arrangements, shell corporations, and

FIRST AMENDED AND VERIFIED COMPLAINT – 38
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1  other unlawful or improper means to hide their assets (in the case of the others).  For example,

2  Park Place was complicit in the fraudulent transfer scheme; the company was used to hold assets

3  of the debtors in a form that could not be garnished, received millions of dollars from the Trust,

4  and allowed itself to be transferred into the Trust.  When LVB sought discovery, the Defendants

5  delayed even more by continuing to falsely claim that they were penniless, and repeatedly

6  promising that the highly relevant information they were withholding was forthcoming.  Only

7  when ordered by this Court to respond to discovery in May of 2017 did LVB receive some of the

8  information necessary to begin discovering these transactions and other means the Defendants

9  have undertaken to defraud LVB.  LVB's efforts to discover fraudulent transfers by the debtors

10  are continuing to this day.

11
       **G.      Many of the Transfers to the Trust Are Self-Settled, And Thus Never Were
12                Entitled To Creditor Protection.**

13       111.     Washington law recognizes that creditor protections do not apply to transfers that

14  are self-settled, *i.e.*, when the beneficiary of a trust places his or her own assets into a

15  "spendthrift" trust.  RCW 19.36.020 ("[A]ll transfers or assignments . . . made in trust for the use

16  of the person making the same, *shall be void as against the existing or subsequent creditors of*

17  *such person.*") (emphasis added).

18       112.     Therefore, to the extent the Trust has received property of Sharon Graham

19  Bingham, including any of her community property, those assets were never entitled to creditor

20  protection, and never will be.  This applies to transfers including those discussed in Paragraphs

21  39 to 41, 69, and 89 above, and any yet-to-be discovered transfers of Sharon Graham Bingham's

22  property or community property to the Trust.

23
       **H.      The Trust Has Lost Any Semblance of Spendthrift Character, Meaning Its
24                Assets Are No Longer Entitled to Creditor Protection.**

25       113.     A Washington trust is only a valid spendthrift trust if the beneficiary cannot, as

26  Sharon Bingham has done, effectively control the distributions from the trust.  "An intended

---

**FIRST AMENDED AND VERIFIED COMPLAINT** – 39
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1   spendthrift restraint is [] invalid [where] the beneficiary has the equivalent of ownership,

2   entitling the beneficiary to demand immediate distribution of the property."  Restatement (Third)

3   of Trusts § 58 (2003); *Britannia Holdings Ltd. v. Greer*, 127 Wn. App. 926, 935, 113 P.3d 1041

4   (2005) ("But if a beneficiary acquires the power to compel distribution of trust property, a

5   spendthrift restraint will no longer prevent creditors from executing on the trust.").  Where the

6   beneficiary of the trust has the means to direct the assets and income of the trust, the trust is not

7   entitled to spendthrift protections.

8       114.    But that is precisely how the Trust operates.  In the Trustee's own words, Sharon

9   "requests" that, for example, funds be distributed from Trust accounts to CCRB as "gifts" to

10  Chris Bingham.  (Case No 2:17-cv-00528, ECF 30 at p. 7.)  Moreover, from at least 2010 to

11  2017, Sharon Bingham was named as Trustee on Trust bank accounts, and therefore had actual

12  access to Trust assets (see excerpt below).  Chris also recently testified that whenever he needs

13  money in addition to his monthly $15,000 allowance, he just asks his mother, and it appears.

14  ECF 5-20 at 191:5-12 ("Q. So if you need money outside of the [monthly allowance of] $15,000,

15  for example, . . . how do you get that money from your mother? A. I go to my mom and ask

16  her."), 199:24-200:12 ("I would just call up [my mom] and say, I need this much for a draw to

17  pay this bill for the construction, and it would be deposited in my account.").  By virtue of the

18  actions described above, the Trust has lost any "spendthrift" character it may have once had, and

19  is not entitled to any creditor protection under Washington law.

20



21

22

23

24

25      115.    Again, as alleged in detail above, the scheme deployed by Dean and the

26  Defendants to abuse the Trust, use it to hide non-beneficiaries' assets from creditors, and funnel

1   money directly to non-beneficiaries and shell corporations to avoid detection makes

2   unmistakably clear that the Trust is being used by the Binghams simply as a vehicle to avoid

3   judgment collection.  The Court may therefore order Trust assets be used to satisfy LVB's

4   judgment on principles of alter ego as well.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### DECLARATORY RELIEF

8   116.   Paragraphs 1 through 115 above are incorporated herein as if each were

9   separately set forth below.

10   117.   A controversy exists between LVB and Defendants as to whether LVB is entitled

11   to seize the assets currently held by the Trust and CCRB, as well as assets currently held by

12   SKBB, whether LVB may seek recovery of its judgment through Henry Dean, in his individual

13   capacity, or Park Place Motors, Ltd., and whether certain transfers made by and among the

14   Defendants, and others, may be avoided.

15   118.   Therefore, LVB seeks a declaratory judgment as follows:

a.   That transfers of Sharon Bingham's own assets to the Sharon Graham Bingham 2007 Trust are self-settled transfers, and that LVB is therefore entitled to execution of those assets;

b.   That the Sharon Graham Bingham 2007 Trust has lost any spendthrift character that it had, and that LVB is therefore entitled to execution of the assets of the Trust to satisfy its judgment;

c.   That any transfer or obligation, including any granting of a security interest, between Cherish, Chris, Kelly, Sharon, or David Bingham, Dean as an individual, and the Trust is void as to LVB;

d.   That any transfer or obligation, including any granting of a security interest, between Cherish, Chris, Kelly, Sharon, David Bingham, or Henry Dean as trustee for the Trust, SKBB and CCRB is void as to LVB;

e.   That any transfer or obligation, including any granting of a security interest, between the Trust and Park Place Motors, Ltd. is void as to LVB;

---

**FIRST AMENDED AND VERIFIED COMPLAINT** – 41
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

f.   That any transfer or obligation, including any granting of a security interest, between the Trust and HyTech Power, Inc. is void as to LVB; and

g.   The assets of the O.D. Fisher Trust and Nellie Hughes Fisher Trust shall be transferred to LVB to satisfy the judgment, as they became property of judgment debtor Sharon G. Bingham upon the death of Frances G. Bingham.

119.   Further, LVB requests recovery of its reasonable attorneys' fees and costs incurred in connection with obtaining the declaratory relief sought.

**SECOND CAUSE OF ACTION**

**VIOLATION OF UNIFORM FRAUDULENT TRANSFER ACT (RCW 19.40 ET SEQ.)**

120.   Paragraphs 1 through 119 above are incorporated herein as if each were separately set forth below.

121.   CCRB Enterprises, LLC, SKBB Enterprises, LLC, Park Place Motors, Ltd., the Sharon Graham Bingham 2007 Trust, Henry Dean in his individual capacity, BGH Holdings, and HyTech Power, Inc. are hereinafter collectively referred to as the "Fraudulent Transferees."

122.   In 2009, the debtors became liable for the approximately $70 million judgment that LVB currently holds.  As alleged in detail above, around that time, unbeknownst to LVB, the debtors consulted their long-time family friend Henry Dean, and potentially others, for methods to hide their assets from creditors.  From 2009 through the present, the debtors, Henry Dean, Cicilia Elali, and the Fraudulent Transferees have woven a sophisticated web of fraudulent transfers and obligations, shuffling around the debtors' assets to keep them out of creditors' hands, meanwhile maintaining unfettered access to those assets to support their extravagant lifestyles.

123.   As Dean has conceded, and LVB does not dispute, LVB met with him in person, and requested documents from him on several occasions as follow up.  Yet, as alleged in detail in Paragraphs 92 to 110 above, Dean and counsel for the debtors repeatedly falsely and misleadingly represented to LVB for several years that the debtors were insolvent, barely had

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

means with which to live, and that the Trust was operating as a legitimate spendthrift trust.  As alleged above in Paragraphs 92 to 110, Defendants provided LVB with false and misleading financial statements and other false and misleading representations to thwart LVB's efforts to collect on the judgment.  LVB reasonably relied on those false and misleading representations, and thus Dean and Defendants were able to avoid and delay payment on LVB's judgment.  Meanwhile, debtors proceeded to transfer all or substantially all of their assets to the Trust, and disguised transfers of cash back to themselves by routing them through shell companies and functional companies, among other tactics.

124.     After unsuccessful attempts to negotiate a settlement, and Henry Dean's repeated false and misleading representations (see Paragraphs 92 to 110 above), in 2016, LVB observed the current status of the outstanding judgment, observed from court filings that, among other things, the Binghams had yet to file for bankruptcy protection, and served two detailed post-judgment subpoenas seeking information regarding the Trust and Park Place, including accounting records regarding transfers into and out of the Trust (Case No. 17-cv-528 ECF No 2-1 at pp. 1-23).  In response to the subpoenas, counsel for the debtors and the related entities (who at times shared counsel with debtors) delayed providing information for months and months by repeatedly promising LVB that the debtors would produce discovery responses and documents (and thereby precluding LVB from filing motions to compel).  Eventually, LVB was forced to move to compel on its subpoenas.  The Court ordered the Trust and Park Place to produce documents in response to those subpoenas on May 31, 2017.  The debtors, the Trust and Park Place made their first (meager) production of documents in response to that order on July 2017.  That production was deficient in numerous respects, and LVB was again forced to move to compel to obtain information from the Trust.  The court granted that motion on December 28, 2017.  The Trust began producing documents responsive to that order on January 25, 2018.  These documents have begun to reveal to LVB the depth of the fraudulent nature with which the Defendants acted to hide the Binghams' assets.  This included, for example, the evidence of

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1  massive transfers to Dean and his shell companies, to CCRB and SKBB, and to HyTech.  LVB's

2  efforts to discover fraudulent transfers by the debtors are continuing.  Without this post-

3  judgment discovery, LVB could not have reasonably discovered documents the Trustee was

4  withholding and did not fully produce until LVB moved to compel twice.  These withheld

5  documents include fully unredacted accounting records and e-mails demonstrating the fraudulent

6  nature of the scheme.

7       125.    Based on information produced in response to the Court's order, beginning in

8  2009, and continuing through the present, the debtors, with the active participation of the

9  Fraudulent Transferees, Cicilia Elali, and Henry Dean, among potentially others, transferred, or

10  caused to be transferred through the Fraudulent Transferees and other entities for the benefit of

11  debtors, amounts exceeding $4 million and other property, including jet skis, boats, cars, and

12  homes.  Indeed, between 2009 and the present, many of the debtors transferred all or

13  substantially all of their assets to the Trust, multiple times, in an effort to avoid seizure by

14  creditors.  Further, the money hidden in the Trust was transferred back to the debtors through

15  payments directed by Sharon Bingham to CCRB, SKBB, Park Place Motors, Ltd., HyTech

16  Power, Inc., and other entities for the benefit of the debtors.  Each of these transfers, including

17  transfers that LVB has yet to discover, was fraudulent as to LVB pursuant to the Uniform

18  Fraudulent Transfers Act, RCW § 19.40.041(1)(a) and each transfer was made with actual intent

19  to defraud the debtors' then existing and future creditors.

20       126.    Alternatively, the debtors have made transfers to the Fraudulent Transferees

21  without receiving reasonably equivalent value in exchange for the transfers and the debtors were

22  insolvent at the time of the transfers or became insolvent as a result of the transfers.  This

23  includes at least transfers to CCRB and SKBB, listed in Appendix A.  Pursuant to RCW §§

24  19.40.041(1)(b), 19.40.051(1), these transfers were fraudulent as to LVB.

25       127.    As further alternatives, CCRB, SKBB, the Trust, and Park Place are "insiders" of

26  the transferor debtor; the transfers were not made to the Fraudulent Transferees for an antecedent

FIRST AMENDED AND VERIFIED COMPLAINT – 44
No. 2:18-CV-00243-TSZ

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

debt or debts; the transferor debtor was insolvent at the time of the transfers; and the Fraudulent Transferees had reasonable cause to believe that the transferor debtor was insolvent or would become insolvent as a result of the transfers.

128.     The debtors use of the Fraudulent Transferees to hide their assets contain numerous "badges of fraud" including, but not limited to, the following:

- The transfer was to an insider;

- The debtors retained possession or control of the property transferred after the transfer;

- Before the transfer was made, the debtors had been sued and had incurred millions of dollars of liability owed to LVB and other creditors;

- Some transfers were of substantially all the debtor's assets;

- The debtors removed or concealed assets; and

- The debtors were insolvent or became insolvent shortly after the transfers were made.

129.     To the extent the transferred funds have been used to acquire real or personal property that the debtors or any subsequent transferee claims an interest in, LVB seeks to set aside such interests.

130.     LVB seeks all necessary and appropriate provisional remedies provided by RCW § 19.40.071, including but not limited to (1) avoidance of the transfers, including a judgment against the transferees for the amount transferred; (2) an attachment or execution of the assets transferred or its proceeds; (3) an injunction against further disposition by the debtor or the Fraudulent Transferees of the asset transferred or other property as appropriate; and/or (4) appointment of a receiver or independent trustee to take charge of the assets transferred. Further, LVB requests recovery of its reasonable attorneys' fees and costs incurred in connection with this lawsuit.

**FIRST AMENDED AND VERIFIED COMPLAINT** – 45
No. 2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays to the Court for judgment against Defendants, and to grant relief as follows:

1.  Declaratory judgment as set forth in Paragraph 118 above;

2.  Judgment setting aside all fraudulent transfers described above and those further identified through discovery, including a judgment voiding subsequent purchases made with the proceeds of the fraudulent transfers, or a judgment against the transferees for the amount transferred;

3.  All provisional remedies provided by RCW § 19.40.071 including but not limited to, attachment, levy, injunction, and appointment of a receiver, for transfers and obligations to, including but not limited to, the Trust, CCRB, SKBB, Park Place, and HyTech;

4.  Order for execution directing that property owned by the Trust and income thereof be delivered to LVB;

5.  Order for execution directing that the property owned by CCRB be delivered to LVB;

6.  Order for execution directing that the property owned by SKBB be delivered to LVB;

7.  Order for execution directing that property formerly owned by or associated with the Fisher Trusts and income thereof be delivered to LVB;

8.  LVB's recovery of attorneys' fees, costs of court, and all permissible pre- and post-judgment interest; and

9. Such other and further relief to which it may show itself entitled.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury as to all issues so triable.

DATED: May 15, 2018

> _s/ William R. Squires III_
> William R. Squires III, WSBA No. 4976
> CORR CRONIN MICHELSON
> BAUMGARDNER FOGG & MOORE LLP
> 1001 Fourth Avenue, Suite 3900
> Seattle, Washington 98154-1051
> Telephone: (206) 625-8600  Fax: (206) 625-0900
> E-mail:    rsquires@corrcronin.com

---

FIRST AMENDED AND VERIFIED COMPLAINT – 46
No.  2:18-CV-00243-TSZ

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Jeffrey L. Willian (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2257
Email:      jwillian@kirkland.com

Tammy A. Tsoumas (admitted *pro hac vice*)
Jonathan J. Faria (admitted *pro hac vice*)
Heather F. Canner (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8151
Email:      tammy.tsoumas@kirkland.com
            jonathan.faria@kirkland.com
            heather.canner@kirkland.com


*Attorneys for Plaintiff LVB-Ogden Marketing, LLC*

---

**FIRST AMENDED AND VERIFIED COMPLAINT** – 47
No.  2:18-CV-00243-TSZ

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051

1

**VERIFICATION**

2    I, James E. Raved, am counsel for the affiliate of Starwood Capital Group that serves as

3 the Managing Member of Northwest Investments, LLC.  I have read the foregoing First Amended

4 and Verified Complaint, know the contents thereof, and believe them to be true and correct to the

5 best of my knowledge.

6    DATED this 15th day of May, 2018 at Greenwich, Connecticut.

7

8    _____

9    James E. Raved

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

<u>CERTIFICATE OF SERVICE</u>

2

        I hereby certify that on May 15, 2018, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system.

4

                                        <u>s/ William R. Squires III</u>
                                        William R. Squires III, WSBA No. 4976

5

                                        CORR CRONIN MICHELSON
                                        BAUMGARDNER FOGG & MOORE LLP

6

                                        1001 Fourth Avenue, Suite 3900
                                        Seattle, Washington 98154-1051

7

                                        Telephone: (206) 625-8600
                                        Fax: (206) 625-0900

8

                                        e-mail: rsquires@corrcronin.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

# Appendix A

**Fraudulent Transfers Alleged In The First Amended and Verified Complaint ("FAC")[1]**

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| | **All Transfers Within Blue Section Below Are Undisputedly Within the Four Year Statute of Limitations** | | | |
| 12/7/2017 | SGB 2007 Trust | Henry Dean[2] | $500 | FAC ¶¶ 75-77 |
| 12/5/2017 | SGB 2007 Trust | Henry Dean | $1,575 | FAC ¶¶ 75-77 |
| 12/1/2017 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 12/1/2017 | SGB 2007 Trust | Henry Dean | $20,200 | FAC ¶¶ 75-77 |
| 11/29/2017 | SGB 2007 Trust | Henry Dean | $500 | FAC ¶¶ 75-77 |
| 11/23/2017 | SGB 2007 Trust | Henry Dean | $50,000 | FAC ¶¶ 75-77 |
| 11/17/2017 | SGB 2007 Trust | Henry Dean | $1,100 | FAC ¶¶ 75-77 |
| 11/17/2017 | SGB 2007 Trust | Henry Dean | $750 | FAC ¶¶ 75-77 |
| 11/13/2017 | SGB 2007 Trust | Henry Dean | $4,935 | FAC ¶¶ 75-77 |

---

[1]  This chart reflects only the fraudulent transfers LVB has identified to date. LVB reserves its right to challenge additional transfers as they are uncovered through discovery.

[2]  As noted in Paragraphs 76-77 of the First Amended and Verified Complaint, some transfers to Henry Dean were through his shell company, BGH Holdings, LLC, or other entities with the notation that they were for the benefit of Henry Dean.

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 11/10/2017 | SGB 2007 Trust | Henry Dean | $1,000 | FAC ¶¶ 75-77 |
| 11/1/2017 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 11/1/2017 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 10/3/2017 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 10/3/2017 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 9/19/2017 | SGB 2007 Trust | HyTech Power | $416.90 | FAC ¶ 71 |
| 9/2017 | SGB 2007 Trust | Helen Dean | Henry Dean's alimony payment | FAC ¶ 75 |
| 9/1/2017 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 9/1/2017 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 8/2/2017 | SGB 2007 Trust | Henry Dean | $4,800 | FAC ¶¶ 75-77 |
| 8/1/2017 | SGB 2007 Trust | CCRB | $12,000 | FAC ¶ 51 |
| 8/1/2017 | SGB 2007 Trust | Henry Dean | $20,200 | FAC ¶¶ 75-77 |
| 7/28/2017 | SGB 2007 Trust | CCRB | $3,000 | FAC ¶ 51 |
| 7/6/2017 | SGB 2007 Trust | CCRB | $16,650 | FAC ¶ 51 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 7/6/2017 | SGB 2007 Trust | CCRB | $2,000 | FAC ¶ 51 |
| 7/5/2017 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 7/5/2017 | SGB 2007 Trust | Henry Dean | $20,750 | FAC ¶¶ 75-77 |
| 7/5/2017 | SGB 2007 Trust | Henry Dean | $3,000 | FAC ¶¶ 75-77 |
| 6/28/2017 | SGB 2007 Trust | Henry Dean | $450 | FAC ¶¶ 75-77 |
| 6/19/2017 | SGB 2007 Trust | Henry Dean | $300 | FAC ¶¶ 75-77 |
| 6/15/2017 | SGB 2007 Trust | Henry Dean | $23,960 | FAC ¶¶ 75-77 |
| 6/2/2017 | SGB 2007 Trust | Henry Dean | $4,800 | FAC ¶¶ 75-77 |
| 6/1/2017 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 6/1/2017 | SGB 2007 Trust | Henry Dean | $22,500 | FAC ¶¶ 75-77 |
| 5/31/2017 | SGB 2007 Trust | Henry Dean | $2,500 | FAC ¶¶ 75-77 |
| 5/23/2017 | SGB 2007 Trust | Henry Dean | $4,000 | FAC ¶¶ 75-77 |
| 5/11/2017 | SGB 2007 Trust | Henry Dean | $300 | FAC ¶¶ 75-77 |
| 5/2/2017 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |

| Date | From | To | Subject of Transfer | Source |
|------|------|-----|--------------------|--------|
| 5/1/2017 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 4/24/2017 | SGB 2007 Trust | Henry Dean | $300 | FAC ¶¶ 75-77 |
| 4/18/2017 | SGB 2007 Trust | Henry Dean | $134,325 | FAC ¶¶ 75-77 |
| 4/3/2017 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 4/3/2017 | SGB 2007 Trust | Henry Dean | $21,900 | FAC ¶¶ 75-77 |
| 3/28/2017 | Henry Dean, as Trustee for the SGB 2007 Trust | Park Place Motors, Ltd. | $3,071,037.51 "loan" | FAC ¶ 65; ECF 5-33 |
| 3/28/2017 | SGB 2007 Trust | Henry Dean | $20,884 | FAC ¶¶ 75-77 |
| 3/23/2017 | SGB 2007 Trust | Henry Dean | $21,000 | FAC ¶¶ 75-77 |
| 3/9/2017 | SGB 2007 Trust | Henry Dean | $8,100 | FAC ¶¶ 75-77 |
| 3/8/2017 | SGB 2007 Trust | CCRB | $5,500 | FAC ¶ 51 |
| 3/2/2017 | SGB 2007 Trust | Henry Dean | $4,800 | FAC ¶¶ 75-77 |
| 3/1/2017 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 2/23/2017 | SGB 2007 Trust | Henry Dean | $24,000 | FAC ¶¶ 75-77 |
| 2/13/2017 | SGB 2007 Trust | Henry Dean | $23,809 | FAC ¶¶ 75-77 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 2/9/2017 | SGB 2007 Trust | Henry Dean | $4,000 | FAC ¶¶ 75-77 |
| 2/2/2017 | SGB 2007 Trust | Henry Dean | $20,200 | FAC ¶¶ 75-77 |
| 2/1/2017 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 2/1/2017 | SGB 2007 Trust | Henry Dean | $4,800 | FAC ¶¶ 75-77 |
| 1/18/2017 | SGB 2007 Trust | HyTech Power | $50,000 | FAC ¶ 71 |
| 1/17/2017 | SGB 2007 Trust | Henry Dean | $24,800 | FAC ¶¶ 75-77 |
| 1/10/2017 | SGB 2007 Trust | Henry Dean | $20,000 | FAC ¶¶ 75-77 |
| 1/3/2017 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 1/3/2017 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 12/16/2016 | SGB 2007 Trust | HyTech Power | $50,000 | FAC ¶ 71 |
| 12/16/2016 | SGB 2007 Trust | HyTech Power | $750.00 | FAC ¶ 71 |
| 12/16/2016 | SGB 2007 Trust | Henry Dean | $7,500 | FAC ¶¶ 75-77 |
| 12/15/2016 | SGB 2007 Trust | Henry Dean | $25,025 | FAC ¶¶ 75-77 |
| 12/15/2016 | SGB 2007 Trust | Henry Dean | $20,000 | FAC ¶¶ 75-77 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 12/2/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 12/2/2016 | SGB 2007 Trust | Henry Dean | $20,000 | FAC ¶¶ 75-77 |
| 12/2/2016 | SGB 2007 Trust | Henry Dean | $5,000 | FAC ¶¶ 75-77 |
| 11/30/2016 | Frances Graham | SGB 2007 Trust | Promissory Note for $1,274,176 (in exchange for "loan") to renovate house | FAC ¶¶ 61-62 |
| 11/25/2016 | SGB 2007 Trust | HyTech Power | $50,000 | FAC ¶ 71 |
| 11/23/2016 | SGB 2007 Trust | Henry Dean | $50,000 | FAC ¶¶ 75-77 |
| 11/18/2016 | SGB 2007 Trust | Henry Dean | $5,000 | FAC ¶¶ 75-77 |
| 11/2/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 11/1/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 10/31/2016 | SGB 2007 Trust | Henry Dean | $35,020 | FAC ¶¶ 75-77 |
| 10/26/2016 | SGB 2007 Trust | Henry Dean | $25,020 | FAC ¶¶ 75-77 |
| 10/7/2016 | SGB 2007 Trust | Henry Dean | $7,520 | FAC ¶¶ 75-77 |
| 10/5/2016 | SGB 2007 Trust | HyTech Power | $10,000 | FAC ¶ 71 |
| 10/4/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 10/3/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 9/14/2016 | SGB 2007 Trust | Henry Dean | $40,000 | FAC ¶¶ 75-77 |
| 9/1/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 9/1/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 8/16/2016 | SGB 2007 Trust | Henry Dean | $40,020 | FAC ¶¶ 75-77 |
| 8/2/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 8/2/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 7/6/2016 | SGB 2007 Trust | HyTech Power | $50,000 | FAC ¶ 71 |
| 7/6/2016 | SGB 2007 Trust | Henry Dean | $45,262 | FAC ¶¶ 75-77 |
| 7/1/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 7/1/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 6/24/2016 | SGB 2007 Trust | Henry Dean | $34,274 | FAC ¶¶ 75-77 |
| 6/23/2016 | SGB 2007 Trust | HyTech Power | $100,000 | FAC ¶ 71 |
| 6/20/2016 | SGB 2007 Trust | Henry Dean | $1,559 | FAC ¶¶ 75-77 |

| Date | From | To | Subject of Transfer | Source |
|------|------|-----|---------------------|--------|
| 6/15/2016 | SGB 2007 Trust | CCRB | $14,850.56 | FAC ¶ 50 |
| 6/8/2016 | SGB 2007 Trust | Henry Dean | $9,480 | FAC ¶¶ 75-77 |
| 6/8/2016 | SGB 2007 Trust | Henry Dean | $26,000 | FAC ¶¶ 75-77 |
| 6/3/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 6/2/2016 | SGB 2007 Trust | SKBB | $500 | FAC ¶ 60 |
| 6/1/2016 | SGB 2007 Trust | CCRB | $66,772.72 | FAC ¶ 50 |
| 6/1/2016 | SGB 2007 Trust | SKBB | $5,300 | FAC ¶ 60 |
| 6/1/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 5/25/2016 | SGB 2007 Trust | Henry Dean | $17,920 | FAC ¶¶ 75-77 |
| 5/24/2016 | SGB 2007 Trust | CCRB | $21,000.00 | FAC ¶ 50 |
| 5/24/2016 | SGB 2007 Trust | SKBB | $250 | FAC ¶ 60 |
| 5/23/2016 | SGB 2007 Trust | SKBB | $250 | FAC ¶ 60 |
| 5/13/2016 | SGB 2007 Trust | CCRB | $18,966.00 | FAC ¶ 50 |
| 5/3/2016 | SGB 2007 Trust | CCRB | $42,076.80 | FAC ¶ 50 |

| Date | From | To | Subject of Transfer | Source |
|------|------|-----|---------------------|--------|
| 5/3/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 5/2/2016 | SGB 2007 Trust | SKBB | $10,000 | FAC ¶ 60 |
| 5/2/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 4/26/2016 | SGB 2007 Trust | CCRB | $12,000.00 | FAC ¶ 50 |
| 4/15/2016 | SGB 2007 Trust | CCRB | $53,000.00 | FAC ¶ 50 |
| 4/5/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 4/1/2016 | SGB 2007 Trust | SKBB | $10,000 | FAC ¶ 60 |
| 4/1/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 3/31/2016 | SGB 2007 Trust | SKBB | $1,100 | FAC ¶ 60 |
| 3/28/2016 | SGB 2007 Trust | SKBB | $2,500 | FAC ¶ 60 |
| 3/14/2016 | SGB 2007 Trust | SKBB | $4,000 | FAC ¶ 60 |
| 3/7/2016 | SGB 2007 Trust | CCRB | $43,111.69 | FAC ¶ 50 |
| 3/7/2016 | SGB 2007 Trust | SKBB | $100 | FAC ¶ 60 |
| 3/1/2016 | SGB 2007 Trust | CCRB | $72,115.69 | FAC ¶ 50 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 3/1/2016 | SGB 2007 Trust | CCRB | $9,500 | FAC ¶ 51 |
| 3/1/2016 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 3/1/2016 | SGB 2007 Trust | Henry Dean | $19,000 | FAC ¶¶ 75-77 |
| 3/1/2016 | SGB 2007 Trust | Henry Dean | $6,000 | FAC ¶¶ 75-77 |
| 2/12/2016 | SGB 2007 Trust | CCRB | $146,200.00 | FAC ¶ 50 |
| 2/12/2016 | SGB 2007 Trust | Henry Dean | $50,000 | FAC ¶¶ 75-77 |
| 2/10/2016 | SGB 2007 Trust | CCRB | $1,500 | FAC ¶ 51 |
| 2/2/2016 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 2/1/2016 | SGB 2007 Trust | SKBB | $5,750 | FAC ¶ 60 |
| 2/1/2016 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 2/1/2016 | SGB 2007 Trust | Henry Dean | $1,000 | FAC ¶¶ 75-77 |
| 1/4/2016 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 1/4/2016 | SGB 2007 Trust | SKBB | $5,750 | FAC ¶ 60 |
| 1/4/2016 | SGB 2007 Trust | Henry Dean | $6,000 | FAC ¶¶ 75-77 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 1/4/2016 | SGB 2007 Trust | Henry Dean | $19,000 | FAC ¶¶ 75-77 |
| 2015/2016 | SGB 2007 Trust | CCRB | $500,000 for sale to Sound Transit | FAC ¶ 68 |
| 12/2/2015 | SGB 2007 Trust | SKBB | $1,166 | FAC ¶ 60 |
| 12/2/2015 | SGB 2007 Trust | Henry Dean | $6,000 | FAC ¶¶ 75-77 |
| 12/1/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 12/1/2015 | SGB 2007 Trust | Henry Dean | $20,000 | FAC ¶¶ 75-77 |
| 11/23/2015 | SGB 2007 Trust | SKBB | $500 | FAC ¶ 60 |
| 11/23/2015 | SGB 2007 Trust | Henry Dean | $5,000 | FAC ¶¶ 75-77 |
| 11/16/2015 | SGB 2007 Trust | SKBB | $500 | FAC ¶ 60 |
| 11/3/2015 | SGB 2007 Trust | Henry Dean | $536 | FAC ¶¶ 75-77 |
| 11/2/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 11/2/2015 | SGB 2007 Trust | SKBB | $4,000 | FAC ¶ 60 |
| 11/2/2015 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 10/29/2015 | SGB 2007 Trust | SKBB | $500 | FAC ¶ 60 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 10/28/2015 | SGB 2007 Trust | SKBB | $400 | FAC ¶ 60 |
| 10/4/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 10/2/2015 | SGB 2007 Trust | Henry Dean | $5,000 | FAC ¶¶ 75-77 |
| 10/1/2015 | SGB 2007 Trust | SKBB | $5,750 | FAC ¶ 60 |
| 10/1/2015 | SGB 2007 Trust | Henry Dean | $20,000 | FAC ¶¶ 75-77 |
| 9/22/2015 | SGB 2007 Trust | SKBB | $200 | FAC ¶ 60 |
| 9/21/2015 | SGB 2007 Trust | SKBB | $200 | FAC ¶ 60 |
| 9/3/2015 | SGB 2007 Trust | SKBB | $500 | FAC ¶ 60 |
| 9/1/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 9/1/2015 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 9/1/2015 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 8/5/2015 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 8/3/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 8/3/2015 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 8/3/2015 | SGB 2007 Trust | SKBB | $1,500 | FAC ¶ 60 |
| 8/3/2015 | SGB 2007 Trust | Henry Dean | $25,000 | FAC ¶¶ 75-77 |
| 7/1/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 7/1/2015 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 7/1/2015 | SGB 2007 Trust | Henry Dean | $20,000 | FAC ¶¶ 75-77 |
| 6/24/2015 | SGB 2007 Trust | Henry Dean | $5,000 | FAC ¶¶ 75-77 |
| 6/4/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 5/1/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 5/1/2015 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 4/6/2015 | SGB 2007 Trust | SKBB | $6,000 | FAC ¶ 60 |
| 4/4/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 3/5/2015 | SGB 2007 Trust | SKBB | $500 | FAC ¶ 60 |
| 3/2/2015 | SGB 2007 Trust | CCRB | $14,000 | FAC ¶ 51 |
| 3/2/2015 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 2/20/2015 | SGB 2007 Trust | CCRB | $1,000 | FAC ¶ 51 |
| 2/5/2015 | SGB 2007 Trust | SKBB | $1,000 | FAC ¶ 60 |
| 2/4/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 2/4/2015 | SGB 2007 Trust | SKBB | $250 | FAC ¶ 60 |
| 2/2/2015 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 1/12/2015 | SGB 2007 Trust | SKBB | $1,500 | FAC ¶ 60 |
| 1/6/2015 | SGB 2007 Trust | SKBB | $1,000 | FAC ¶ 60 |
| 1/4/2015 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 12/30/2014 | SGB 2007 Trust | SKBB | $500 | FAC ¶ 60 |
| 12/4/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 11/14/2014 | SGB 2007 Trust | Henry Dean | $1,154 | FAC ¶¶ 75-77 |
| 11/6/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 11/5/2014 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 10/4/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 10/1/2014 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 9/18/2014 | SGB 2007 Trust | CCRB | $3,000 | FAC ¶ 51 |
| 9/15/2014 | SGB 2007 Trust | CCRB | $6,650 | FAC ¶ 51 |
| 9/8/2014 | SGB 2007 Trust | Henry Dean | $10,000 | FAC ¶¶ 75-77 |
| 9/4/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 9/2/2014 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 8/19/2014 | SGB 2007 Trust | CCRB | $153 | FAC ¶ 51 |
| 8/1/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 7/21/2014 | SGB 2007 Trust | CCRB | $2,900 | FAC ¶ 51 |
| 7/9/2014 | SGB 2007 Trust | CCRB | $3,000 | FAC ¶ 51 |
| 7/1/2014 | SGB 2007 Trust | CCRB | $13,644 | FAC ¶ 51 |
| 7/1/2014 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 6/30/2014 | SGB 2007 Trust | CCRB | $4,213 | FAC ¶ 51 |
| 6/26/2014 | SGB 2007 Trust | CCRB | $1,100 | FAC ¶ 51 |

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| 6/25/2014 | SGB 2007 Trust | CCRB | $1,000 | FAC ¶ 51 |
| 6/24/2014 | SGB 2007 Trust | CCRB | $1,375 | FAC ¶ 51 |
| 6/19/2014 | SGB 2007 Trust | CCRB | $1,588 | FAC ¶ 51 |
| 6/19/2014 | SGB 2007 Trust | Henry Dean | $36,447 | FAC ¶¶ 75-77 |
| 6/16/2014 | SGB 2007 Trust | CCRB | $1,500 | FAC ¶ 51 |
| 6/9/2014 | SGB 2007 Trust | CCRB | $5,000 | FAC ¶ 51 |
| 6/2/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 6/2/2014 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |
| 5/30/2014 | SGB 2007 Trust | CCRB | $400 | FAC ¶ 51 |
| 5/29/2014 | SGB 2007 Trust | CCRB | $1,300 | FAC ¶ 51 |
| 5/29/2014 | SGB 2007 Trust | Henry Dean | $1,000 | FAC ¶¶ 75-77 |
| 5/14/2014 | SGB 2007 Trust | SKBB | $3,125 | FAC ¶ 60 |
| 5/4/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 5/2/2014 | SGB 2007 Trust | SKBB | $5,000 | FAC ¶ 60 |

| Date | From | To | Subject of Transfer | Source |
|------|------|-----|---------------------|--------|
| 4/4/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 4/1/2014 | SGB 2007 Trust | SKBB | $8,000 | FAC ¶ 60 |
| 3/4/2014 | SGB 2007 Trust | CCRB | $15,000 | FAC ¶ 51 |
| 3/4/2014 | SGB 2007 Trust | SKBB | $8,000 | FAC ¶ 60 |
| 2/28/2014 | Scott and Kelly Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Quitclaim deed for 721 250th Avenue NE, Sammamish, Washington | FAC ¶¶ 39, 41; ECF 5-30 |
| **All Transfers Above This Line Are Undisputedly Within the Four Year Statute of Limitations** | | | | |
| **All Transfers Below This Line Are Subject To the One Year Discovery Rule** | | | | |
| 2/5/2014 | Scott and Kelly Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Agreement to convey the following assets:<br>• A quitclaim deed to their home, 721 250th Avenue NE, Sammamish, Washington<br>• A bill of sale to all of their furniture, fixtures, equipment, and appliances<br>• Membership interest in Bingo Venture Capital, LLC<br>• Membership interest in Bingo Properties, LLC | FAC ¶¶ 37, 40; ECF 5-30 |
| 2/5/2014 | Scott and Kelly Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Promissory note for $1,090,934.61 | FAC ¶¶ 39, 41; ECF 5-30 |
| 2/5/2014 | Cherish and Chris Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Agreement to convey the following assets:<br>• A bill of sale to all of their furniture, fixtures, equipment, and appliances<br>• Membership interest in Bingo Venture Capital, LLC<br>• Membership interest in Bingo Properties, LLC | FAC ¶¶ 39, 41; ECF 5-31 |

17

| Date | From | To | Subject of Transfer | Source |
|---|---|---|---|---|
| | | | • All shares of stock in Plasma Drive, Inc. | |
| 2/5/2014 | Cherish and Chris Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Promissory Note for $1,163,832.64 | FAC ¶¶ 39, 41; ECF 5-31 |
| 3/15/2013 | Scott and Kelly Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Agreement granting priority security interest in:<br>• All receivables and notes due<br>• All investment property and stocks<br>• All deposit accounts<br>• Membership interest in Bingo Properties, LLC<br>• All proceeds of the foregoing | FAC ¶¶ 39, 41; ECF 5-29 |
| 3/15/2013 | Scott and Kelly Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Promissory note for $330,300 (in exchange for "loan") | FAC ¶¶ 39, 41; ECF 5-29 |
| 3/15/2013 | Chris and Cherish Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Agreement granting priority security interest in:<br>• All receivables and notes due<br>• All investment property and stocks<br>• All deposit accounts<br>• Membership interest in Bingo Properties, LLC, including shares in Plasma Drive, Inc.<br>• All proceeds of the foregoing<br>• "All personal property" of Chris and Cherish, and all "to be acquired personal property"<br>• All property located in or used in connection with certain real parcels of property | FAC ¶¶ 39, 41; ECF 5-28 |
| 3/15/2013 | Chris and Cherish Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Promissory Note for $955,832.64 (in exchange for "loan") | FAC ¶¶ 39, 41; ECF 5-28 |
| 12/31/2012 | David and Sharon Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Agreement to convey the following assets:<br>• 100% ownership share in Park Place Motors, Ltd.<br>• All investment property and stocks, including all membership interests in Bingo Properties; all shares of stock in Biolytical Laboratories; all membership interests in Bingo Venture Capital | FAC ¶¶ 39, 41, 64; ECF 5-26, 5-27 |

| Date | From | To | Subject of Transfer | Source |
|------|------|-----|---------------------|--------|
| | | | • A Bill of Sale for the M/V Bingo, a pleasure vessel<br>• A Bill of Sale to all of their furniture, fixtures, equipment and appliances | |
| 12/31/2011 | David and Sharon Bingham | Henry Dean, as Trustee for the SGB 2007 Trust | Agreement granting priority security interests in the below assets and "all other goods" of Sharon and David Bingham:<br>• 100% ownership share in Park Place Motors, Ltd.<br>• All deposit accounts<br>• All notes receivable or notes due them<br>• All investment property and stocks, including all membership interests in Bingo Properties; all shares of stock in Biolytical Laboratories; all membership interests in Bingo Venture Capital; all membership interests in Bingham Capital, LLC<br>• The pleasure vessel M/V Bingo<br>• 2 condos in Maui, Hawaii (second mortgage)<br>• House (second mortgage) and all furniture and fixtures therein, 9215 SE Shoreland Dr, Bellevue WA 98004<br>• Litigation and claims | FAC ¶¶ 39, 41; ECF 5-25 |
| 3/20/2009 | Scott and Kelly Bingham | SGB 2007 Trust | Deed of Trust to House, 721 250th Ave NE, Sammamish, WA 98074 | FAC ¶¶ 39, 41; ECF 5-23 |
| 3/20/2009 | Scott and Kelly Bingham | SGB 2007 Trust | Agreement granting priority security interest in "all of [Scott and Kelly Bingham's] personal property" | FAC ¶¶ 39, 41; ECF 5-23 |
| 3/1/2009 | Scott and Kelly Bingham | SGB 2007 Trust | Promissory Note for $500,000 (in exchange for "loan") | FAC ¶¶ 39, 41; ECF 5-23 |