UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LVB-OGDEN MARKETING, LLC,

Plaintiff,

v.

DAVID S. BINGHAM, et al.,

Defendants.

C18-243 TSZ

ORDER

THIS MATTER came before the Court on Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction, docket no. 4 (the "Motion"). Having reviewed all papers filed in support of, and in opposition to, the Motion, including all supplemental briefing, having heard the oral arguments of counsel on May 3, 2018, *see* docket no. 79,[1] and having DENIED the Motion on August 17, 2018, *see* docket no. 132, the Court enters the following order explaining the basis for its decision.

---

[1] At this hearing, the Court ordered supplemental briefing and renoted the Motion.

ORDER - 1

**Background**

I. **LVB Obtained a Judgment in 2010 and Seeks to Execute on Bingham Family Assets in 2018**

Plaintiff LVB-Ogden Marketing, LLC ("LVB") obtained a $70,944,423.10 judgment in the Northern District of Illinois, case no. C09-4518 (N.D. Ill.),[2] on September 29, 2010, against various members of the Bingham family and one of their related companies stemming from their failure to pay guarantees on a series of construction loans. *See* Faria Declaration,[3] Exhibit 1, Exhibit 2 (the "Judgment").[4] LVB maintains that the Bingham family and their counterparts have thwarted its attempts to collect on the Judgment by improperly funneling assets into and out of a group of family trusts and related companies.

Seven years later, LVB brought this lawsuit in an attempt to enforce the Judgment, and now asserts two claims against its Judgment Debtors and their related entities, CCRB Enterprises, LLC, SKBB Enterprises, LLC, Park Place Motors, Ltd., Hytech Power, Inc., and BGH Holdings, LLC, as well as Henry Dean, in his individual capacity and as

---

[2] LVB-Ogden Marketing Corporation initiated the lawsuit in the Northern District of Illinois, but later converted to a limited liability company as "LVB-Ogden Marketing, LLC." On October 29, 2009, the Northern District of Illinois granted LVB-Ogden Marketing Corporation's "Motion to Substitute Party Plaintiff LVB-Ogden Marketing, LLC in the place of LVB-Ogden Marketing Corporation . . . ." Docket no. 33 in C09-4518 (N.D. Ill.). The court ultimately entered the Judgment in favor of the LLC. The LLC, in turn, registered the Judgment with this Court on October 15, 2010. Declaration of Jonathan J. Faria in Support of Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction, docket no. 5 ("Faria Declaration"), Exhibit 3.

[3] Unless otherwise specified, references to docket numbers will be to the instant matter, case no. C18-243.

[4] The Judgment was against David S. Bingham, Sharon Bingham, Christopher Bingham, Cherish Bingham, Kelly Bingham, Bingo Investments, LLC (collectively, the "Judgment Debtors"). *Id.*

Trustee for the Sharon Graham Bingham 2007 Trust (collectively, the "Defendants").[5] *See* Amended Complaint, docket no. 82. The first claim in the Amended Complaint seeks a declaration voiding certain transfers between the Defendants and various family trusts and entitling LVB to execute on certain assets held by the Defendants and those trusts. *See* Amended Complaint at ¶¶ 116–19. The second claim alleges violations of Washington's Uniform Fraudulent Transfer Act, RCW 19.40 *et seq.* (UFTA). LVB alleges that it did not uncover Defendants' allegedly fraudulent scheme until obtaining discovery in a related case pending before this Court, *see* case no. C18-786 (W.D. Wash.), and asks the Court for emergency relief preventing Defendants from further transferring assets LVB believes should be used to satisfy the Judgment. *See* Motion at 1–2.

At the center of this dispute lies the Sharon Graham Bingham 2007 Trust, which holds interests in the assets LVB seeks to execute on. Faria Declaration, Exhibit 22 (the

---

[5] LVB originally filed this action on February 15, 2018, against the Judgment Debtors and their related companies, as well as Henry Dean and his assistant Cicilia S. Elali. *See* Complaint, docket no. 1. During oral argument on the Motion, the Court determined that no diversity jurisdiction existed and dismissed certain state law claims asserted by LVB in its original complaint, dismissed all claims against Ms. Elali, and ordered LVB to file an amended verified complaint narrowed to the issues over which the Court has ancillary jurisdiction to decide. *See* docket no. 79.

LVB has also initiated two related suits in this Court. On March 22, 2017, LVB-Ogden Marketing Corporation brought a miscellaneous action against Defendants Henry Dean and Park Place Motors, Ltd. seeking to compel compliance with a series of document subpoenas. *See* docket no. 1 in C17-528 (W.D. Wash.). The Court ordered production of a subset of documents requested in the subpoenas and that case remains pending. A year later, on March 30, 2018, LVB applied for a writ to garnish certain bank accounts of held by debtors to the Judgment. *See* case no. C18-786 (W.D. Wash.). The Court issued a writ, naming Sharon Graham Bingham as the defendant. Docket no. 2 in case no. C18-786. The garnishee bank answered the writ, but LVB disputes the completeness and accuracy of the bank's answer. *See* docket nos. 4–6 in case no. C18-786. The Court has ordered further briefing and that action also remains pending. *See* docket no. 22 in case no. C18-786.

"Trust"). Defendants maintain that the Trust is impenetrable from creditors like LVB because it is a "spendthrift" trust under Washington law. RCW 6.32.250(2) provides that creditors are not authorized to seize or otherwise interfere with "any money, thing in action or other property held in trust for a judgment debtor where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor[.]"

LVB argues it should be entitled to execute on assets held in the Trust (1) to the extent they are "self-settled" under RCW 19.36.020, which states that all transfers "made in trust for the use of the person making the same, shall be void as against the existing or subsequent creditors of such person[;]" or (2) because the Trust has lost its spendthrift character, as the Trust's "beneficiary acquire[ed] the power to compel distribution of trust property, [and thus the Trust's] spendthrift restraint will no longer prevent creditors from executing on the trust." *See* Motion at 14–16 (quoting *Britannica Holdings Ltd. v. Greer*, 127 Wash. App. 926, 935, 113 P.2d 1041 (2005)); *see also* Amended Complaint at ¶ 118.[6]

## II. History of the Trust

Frances P. Graham established the Trust on March 15, 2007, for the benefit of her daughter, Sharon Bingham—the Trust's sole beneficiary. *See* Trust at 1. The Trust authorizes the appointed trustee to

---

[6] Although LVB also asserted an "alter-ego" theory in its Motion, it largely abandoned this theory in the Amended Complaint.

ORDER - 4

> pay the Beneficiary so much of the principal as the Trustee determines from time to time for the Beneficiary's **health, support, and maintenance**. Further . . . the Trustee (other than the Beneficiary) shall have the additional authority to distribute to the Beneficiary so much or all of the principal as that Trustee other than the Beneficiary alone determines from time to time is advisable and in the best interests of the Beneficiary, considering other resources available to the Beneficiary.

*Id.* (emphasis added). The Trust contains a "Spendthrift Provision" stating that "[n]o interest of a present or future beneficiary of any trust created hereunder shall be subject in any way to the claims of the beneficiary's creditors." *Id.* at 5.

The Trust initially appointed Sharon Bingham to act as trustee. *Id.* at 13. On September 10, 2010, Sharon Bingham resigned and appointed the Bingham family's longtime friend, Henry W. Dean, to serve as trustee and help "untangle" the financial mess caused by real estate downturn. Faria Declaration, Exhibit 24, Exhibit 48. Mr. Dean has served as the Trust's trustee ever since. Declaration of Henry W. Dean, Trustee in Support of Response to Motion for Preliminary Injunction, docket no. 38 ("Dean Declaration"), at ¶ 5.

The Trust was originally capitalized by shares of the O.D. Fisher Company owned by Frances P. Graham. Dean Declaration at ¶ 2. These shares generated approximately $11.8 million in September 2008 after one of the company's principal holdings was acquired. Since Mr. Dean became trustee, the Trust has acquired various interests in Bingham family assets that LVB now seeks to execute upon pursuant to its Judgment. *See, e.g.*, Faria Declaration, Exhibits 23, 25, 26, 30. By transferring the Binghams' assets to the spendthrift Trust, Defendants argue that the assets are beyond the reach of any of the Binghams' personal creditors. To further shield these assets, Mr. Dean negotiated

assignments of various judgments to the Trust, many of which remain in the Trust. Defendants argue that because these judgments have priority over LVB's Judgment, LVB cannot recover any money even if it is successful in penetrating the Trust's spendthrift restraint.

### III. From 2010–2013, Other Creditors Attack the Spendthrift Character of the Trust

LVB's litigation in the Northern District of Illinois was one of several lawsuits between the Bingham family and its creditors stemming from the real estate downturn, during which creditors sought to attack assets held in the Trust. *See generally* Dean Declaration at ¶¶ 16–23. Similar to the instant action, the Trust argued it was immune from execution because of the Trust's spendthrift status—a position LVB knew about as early as 2010. *Id.* Mr. Dean, as trustee, was actively negotiating with the Judgment Debtors' creditors throughout this period, and was sharing information about the Judgment Debtors' financial status with their creditors (including LVB) in an effort to resolve the claims. Unlike the instant action, Mr. Dean, as trustee, obtained settlements with certain creditors who agreed to assign their judgments against the Judgment Debtors to the Trust—a fact that LVB also became aware of years before commencing this lawsuit.

#### A. Umpqua Settlement

On June 19, 2009, Umpqua Bank obtained a $23,290,953.14 judgment against Bingo Investments, LLC, Frances P. Graham, David S. Bingham, Sharon G. Bingham, Scott F. Bingham, Kelly Bingham, Christopher G. Bingham, and Bingo Development,

LLC. Dean Declaration, Exhibit H ("Umpqua Judgment"). That case was settled on June 30, 2010—four months before LVB obtained its Judgment. Under this settlement, the Trust paid $3,115,152.41 to Umpqua Bank in exchange for an assignment of the Umpqua Judgment. *See* Dean Declaration at ¶ 16.m, Exhibit L. Mr. Dean later advised LVB's representatives that "as Trustee of the SGB 2007 Trust I purchased the Umpqua judgment which serves a shield to protect any attempt by a creditor to execute on the family's personal assets." Faria Declaration, Exhibit 68 (July 1, 2015 email).

LVB learned about the Umpqua settlement and assignment of the Umpqua Judgment in April 2011 during a meeting between Mr. Dean and LVB's counsel. Dean Declaration at ¶ 16.k, m, Exhibit N; Transcript of May 3, 2018, Motion Hearing, docket no. 81 ("Hearing Tr."), at 59:10–60:14.[7] During this meeting, Mr. Dean informed LVB of the Trust's position that it was impenetrable by creditors under the spendthrift protection established by the terms of the Trust and RCW 6.32.250(2). Dean Declaration at ¶ 16.k, m, Exhibit N.

Publicly available court documents from the Umpqua litigation predating Mr. Dean's meeting with LVB's counsel confirm the Trust had taken the position that it was "exempt from execution pursuant to RCW 6.32.250(2) because [it is an] irrevocable trust[] with [a] spendthrift provision[]." Dean Declaration, Exhibit J (February 12, 2010

---

[7] Before learning about the Umpqua settlement, on November 30, 2009, LVB's counsel received 7MB worth of financial information and tax returns for the Bingham family and their related companies, including information about the assets that LVB now seeks to execute on. *See* Dean Declaration at ¶ 16.e.

Declaration of Stephen P. Vanderhoef in Support of Sharon Graham Bingham 2007 Trust's Motion to Reconsider and to Stay, ¶ 4).

Consistent with the record evidence detailing Mr. Dean's correspondence with LVB, Mr. Dean states that LVB's counsel knew by February 2010, "(1) that it was [his] position . . . that the 2007 Trust was an invulnerable spendthrift trust . . . , and (2) that other creditors of [LVB's] judgment debtors, and their lawyers, were actively challenging that position [by] early 2010." Dean Declaration at ¶ 16.k.

### B. Centrum Settlement

In an effort to settle LVB's claim against the Judgment Debtors, Mr. Dean emailed LVB's counsel on April 5, 2011, advising him of other pending litigation against the Judgment Debtors, including a dispute with Centrum Financial Services, Inc. ("Centrum")—another one of the Judgment Debtors' creditors. *See* Faria Declaration, Exhibit 53. Attached to this email were detailed financial statements for each family member identifying their assets, liabilities, and net worth. *Id.* LVB does not dispute that it received this email, but disputes the accuracy of the information contained in and attached to the email.

Like Umpqua, Centrum attacked the spendthrift character of the Trust in an attempt to collect on Bingham family assets. *See, e.g.*, Dean Declaration at ¶ 22, Exhibit T (page 2 of state court pleading filed on April 22, 2013, arguing that the "Trust is a spendthrift trust and is exempt from execution and interference. Centrum's continued attempts to improperly coerce money from the . . . Trust violates Washington law and [a

prior court order ruling] that an injunction against an alleged spendthrift trust is not available.").

On March 15, 2013, Centrum obtained a $57,617,482.96 judgment against Bingo Investments, LLC, David S. Bingham, Sharon G. Bingham, Scott F. Bingham, Kelley F. Bingham, Christopher G. Bingham, and Francis P. Graham. Dean Declaration, Exhibit R ("Centrum Judgment").[8] As part of a settlement, Centrum assigned the balance of the Centrum Judgment—along with its interest in the pledged collateral comprising the Bingham family's assets—to the Trust on May 1, 2015. *See* Declaration of R. Bruce Johnston in Opposition to Plaintiff's Motion for Preliminary Injunction, docket no. 35 ("Johnston Declaration"), Exhibit 1A. [9]

---

[8] Centrum also held mortgages and deeds of trust on the Bingham family's two Hawaii condominiums, which it assigned to the Trust as part of its settlement. Dean Declaration at ¶ 23. Titles to these condominiums have remained in the Binghams' names. *Id.* at ¶ 24.a. "At the time of the Centrum Settlement Agreement, any equity in the Hawaii Condos was subject to Centrum's mortgages or deeds of trust, as well as the Umpqua Judgment and the Centrum Judgment both of which had been properly filed and registered in Hawaii." *Id.* Notwithstanding LVB's prior knowledge of the Hawaii condominiums, LVB had not registered its Judgment in Hawaii. *Id.*

[9] The Judgment Debtors have also been involved in other litigation. On June 19, 2009, KeyBank N.A. filed an action in the Western District of Washington against members of the Bingham family and related entities, "seeking relief for monies due and the judicial arrest of the vessel BINGO"—the Binghams' yacht. *See* docket no. 1 in C09-849 (W.D. Wash.); Dean Declaration at ¶ 16.f. On April 12, 2011, Mr. Dean sent LVB's counsel the case file for the KeyBank litigation, *see* Dean Declaration at ¶ 25. KeyBank's complaint in that case identified significant liabilities incurred by the Binghams, alleged that the Binghams had defaulted on those liabilities, and listed KeyBank's security interests in many assets that LVB now seeks to execute on. *See generally* docket no. 1 in C09-849 (W.D. Wash.). The KeyBank litigation settled on or before April 3, 2012. Docket no. 220 in C09-849 (W.D. Wash.).

On June 15, 2010, Washington Trust Bank obtained a $1,792,707.83 judgment against Bingo Investments, LLC, David S. Bingham, Christopher G. Bingham, Scott F. Bingham, Sharon G. Bingham, and Frances P. Graham. Dean Declaration, Exhibit P ("Washington Trust Judgment"). That case was settled on January 25, 2011 with a "Covenant not to Execute Upon Judgment"—as opposed to the assignment secured in the Umpqua Bank litigation. Dean Declaration at ¶ 18, Exhibit Q. This information was also a public record and was discussed with LVB's counsel in 2011. *Id.* at ¶ 18.

## IV. LVB's Request for a Preliminary Injunction

Notwithstanding its success in obtaining a Judgment in 2010, LVB waited until February 15, 2018, to file the instant action. It now asks the Court to enter an injunction freezing the Trust and Bingham family's assets in an effort to maintain the *status quo* prior to a trial on the merits. To the extent these assets are held in the Trust, LVB argues it should be entitled to seize those assets because they are self-settled or, alternatively, because the Trust has lost its spendthrift protection. Both theories posit that Sharon Bingham, as the sole beneficiary of the Trust, possessed or has used her power to compel the transfer of assets into and out of the Trust for her own benefit or the benefit of other family members. By attacking the spendthrift protections of the Trust, LVB belatedly takes an identical position to those taken by the Binghams' other creditors beginning in 2010.

## Discussion

### I. Preliminary Injunction Standard

To succeed on a motion for preliminary injunctive relief, plaintiff bears the burden of "establish[ing] that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, these elements are balanced so that "a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

1131 (9th Cir. 2011) (alteration in original) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). "[I]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

II. **Analysis**

    A. **Likelihood of Success on the Merits**

The essence of LVB's claims in this case is a request to execute on Bingham family assets held, either in whole or in part, by the Trust. *See, e.g.*, Motion at 13. LVB argues that it is likely to succeed on the merits of its claims because the transactions transferring these assets into the Trust were "self-settled"—in that the beneficiary herself directed the transfer of these assets into the Trust for her own use—or, alternatively, that the Trust has lost any spendthrift protection because the beneficiary has the power to demand that the Trust distribute property. *See* Motion at 14 –17. The Motion asks the Court for an order freezing all assets that might be subject to execution under these theories. *See* Proposed Preliminary Injunction Order, docket no. 98.

A request for a preliminary injunction freezing the transfer of assets is futile if those assets are encumbered by other debts. *See, e.g.*, *Finova Capital Corp. v. Richard A. Arledge, Inc.*, No. CIV 02-1277-PHX RCB, 2006 U.S. Dist. LEXIS 710, at *5–7 (D. Ariz. Jan. 6, 2006) (denying motion for preliminary injunction enjoining party from liquidating assets as futile where the party had no unencumbered assets). The assets that LVB seeks to freeze and execute upon are encumbered by prior liens taken by other

creditors, including the 2009 Umpqua Judgment for $23,290,953.14 and the 2010 Washington Trust Bank Judgment for $1,792,707.83—both of which were entered before LVB obtained its Judgment. *See Seattle Mortg. Co. v. Unknown Heirs of Gray*, 133 Wn. App. 479, 495 (2006) (RCW 60.04.061 governs the priority of liens in Washington). Similarly, the Centrum Judgment, although entered later than LVB's Judgment, may hold a superior interest in certain Bingham family assets because it was filed and registered ahead of LVB's judgment. *See* Dean Declaration at ¶ 24.a.

While LVB has spent much time arguing why the Court should disregard the spendthrift status of the Trust, it has not explained how it would actually execute on Trust assets in light of these priority interests encumbering Trust assets. LVB has not otherwise made a clear showing that a preliminary injunction freezing those assets would not be futile. *Finova Capital Corp.*, 2006 U.S. Dist. LEXIS 710, at *5–7. Instead, the evidence suggests that if the Court were to enter any order on the merits granting LVB access to Trust assets—either by setting aside any fraudulent or self-settled transfers or declaring the Trust's spendthrift status void—LVB would still not succeed on its attempt to collect on the Judgment because it would still be behind these priority liens.

LVB suggests that the assignment of the Umpqua Judgment to the Trust was fraudulent. But it has not presented any cognizable legal theory in support of this position, *see* Hearing Tr. at 57:11–62:19, or explained why the Umpqua Judgment (or any other priority judgment still outstanding against the Binghams) would be invalidated if the assignment to the trust was disregarded. *See id.* at 56:5–8 (THE COURT: Let's assume that they hadn't reached a settlement. That judgment would be sitting out there

for $57 million ahead of you, wouldn't it? MS. TSOUMAS: It may have been, Your Honor.").[10] Beyond the conclusory assertion that these transfers were improper, LVB has never explained why the assignments should be set aside and why the judgments should then be invalidated once the assignments were voided.

While the Court is troubled with the cash transfers between the Trust and various members of the Bingham family, either via closely held shell companies or through "loans" from the Trust that went unpaid, *see* Motion at 4–8, it remains unclear how voiding these transfers would assist LVB in succeeding in its attempt to collect on the Judgment. The Trust is *not* a debtor to the Judgment and cash held in the Trust would not be subject to execution absent an order voiding the Trust's spendthrift status. It is not otherwise clear what portions of Trust assets would be subject to creditor execution if the Court ruled in LVB's favor on the Trust's spendthrift status. Given the complexity of these transactions, and that many of these transfers are intermingled with assets that are subject to priority liens, the Court concludes that LVB has not made a showing that it will likely succeed on the merits.[11] LVB has not met its burden of persuasion to demonstrate that it will actually be able to collect on the Judgment because it has not clearly

---

[10] LVB also argues that it is entitled to seize the assets of two other trusts: the O.D. Fisher Trust and the Nellie Hughes Fisher Trust. To support this position and argue that LVB is likely to succeed on the merits of this theory, LVB states in passing that because Sharon Bingham is the sole remainderman of these trusts, LVB is entitled to the assets and income held in those trusts. *See* Motion at 19. LVB provides no authority for this conclusion. The Court therefore concludes that LVB has not shown that it is likely to succeed on the merits of this theory.

[11] Although LVB makes a strong argument that the spendthrift nature of the Trust may be subject to challenge because these assets may be self-settled, this issue has not been adequately briefed and the Court is unable to fully determine which assets, if any, should be subject to execution—either by LVB or any other creditor. The Court has ordered additional briefing on this issue, *see* docket no. 132.

delineated *which* assets would be subject to creditor reach and whether LVB would have a priority interest in those assets sufficient to actually recover any money.

### B. <u>Irreparable Injury</u>

"Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (citing *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213–14 (9th Cir. 1984); *GTE Corp. v. Williams*, 731 F.2d 676, 678–79 (10th Cir. 1984)). LVB obtained its Judgment on September 29, 2010, but waited seven years to bring this lawsuit. The only rationale LVB provides in explaining this delay is that it could not have discovered Defendants' fraudulent scheme "until this past year when the Defendants (after several court orders) finally produced documents revealing not only the existence of most of these transfers, *but also Defendants' fraudulent intent*." Plaintiff's Reply in Support of Motion for Preliminary Injunction, docket no. 53, at 9.

The evidence before the Court conflicts with LVB's argument. As to LVB's statement that it was unaware that these transfers had taken place, Mr. Dean's communications with LVB's counsel beginning in 2010 and continuing through 2013 show that the Trust was holding Bingham family assets and took an assignment of the Umpqua Judgment. *See, e.g.*, Dean Declaration at ¶ 16.k, m, Exhibit N; Hearing Tr. at 59:10–60:14. While this may only be one aspect of the alleged "scheme" that LVB outlines in the Amended Complaint, LVB does not sufficiently explain why the information it obtained between 2010 and 2013 was inadequate for purposes of initiating

its investigation into these transactions, assessing a potential lawsuit sooner, and challenging the spendthrift nature of the Trust years ago.

As to LVB's position that it was unaware of Defendants' fraudulent intent, the only recently-discovered evidence of fraudulent intent LVB cites to is the email from Mr. Dean explaining that he "purchased the Umpqua judgment which serves as a shield to protect any attempt by a creditor to execute on the family's personal assets." Faria Declaration, Exhibit 68; Hearing Tr. at 56:9–57:23. But LVB was aware of the Binghams' litigation with other creditors back in 2010 and 2011—and was informed that the Umpqua Judgment had been assigned to the Trust, that Mr. Dean believed the Trust was impenetrable by creditors because of its spendthrift nature, and that other creditors had been challenging Mr. Dean's position. *See, e.g.*, Dean Declaration at ¶ 16.k. Again in 2013, LVB learned that Mr. Dean was defending the spendthrift nature of the Trust against an attack from Centrum. *See, e.g.*, *id.* at 20, ¶ 22, Exhibit T. On its face, the recently discovered email does not provide any information that is new or different than what LVB's counsel knew about back in 2010–2013. LVB has not otherwise submitted any new information of fraudulent intent sufficient to warrant the emergency relief it now seeks.

Moreover, LVB did not serve the subpoenas to which Mr. Dean's email was responsive to until November 8, 2016, *see* docket nos. 2-1, 2-2 in case no. 17-528 (W.D. Wash.)—over six years after obtaining the Judgment and nearly five years after being placed on notice that the Binghams and the Trust had been negotiating with other creditors who held valid liens against the Binghams' assets. LVB has not explained why

it waited so long to issue these subpoenas or what justified its apparent lack of diligence in bringing these supplemental proceedings.

"Where no new harm is imminent, and where no compelling reason is apparent, the district court [i]s not required to issue a preliminary injunction against a practice which has continued unchallenged for several years." *Oakland Tribune, Inc.*, 762 F.2d at 1377. LVB has not adequately justified why it failed to initiate these proceedings until years after being notified, at least in part, that the Binghams had begun transferring assets into the Trust in an effort to avoid claims from other creditors who held priority liens on those assets. LVB's long delay implies a lack of urgency and suggests that it will not suffer irreparable injury in the absence of a preliminary injunction. LVB's failure to demonstrate a likelihood of success on the merits or any irreparable harm outweighs any potential hardships that might result. *Alliance for the Wild Rockies*, 632 F.3d at 1131.

**Conclusion**

For the foregoing reasons, the Court has DENIED Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction, docket no. 4.

IT IS SO ORDERED.

Dated this 30th day of August, 2018.

_____
Thomas S. Zilly
United States District Judge

ORDER - 16