THE HONORABLE THOMAS S. ZILLY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| LVB-OGDEN MARKETING, LLC, | No. 2:18-CV-00243-TSZ |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL BRIEF** |
| v. | |
| DAVID S. BINGHAM, SHARON BINGHAM, CHRISTOPHER BINGHAM, CHERISH BINGHAM, KELLY BINGHAM, BINGO INVESTMENTS, LLC, CCRB ENTERPRISES, LLC, SKBB ENTERPRISES, LLC, PARK PLACE MOTORS, LTD., HYTECH POWER, INC., HENRY DEAN, in his individual capacity and as Trustee for the SHARON GRAHAM BINGHAM 2007 TRUST, and BGH HOLDINGS, LLC, | |
| Defendants. | |

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Pursuant to the Court's August 17, 2018 Order, Plaintiff LVB-Ogden Marketing, LLC ("LVB") submits the following supplemental brief:

A.  **Issue #1:  The Prior Judgments Are Not A Bar to LVB's Recovery For Many Reasons In Law & Equity.**

Issue #1 directs the parties to address two other judgments (the "Umpqua Judgment" and "Centrum Judgment") referenced in parts of the record before the Court.  ECF 132 at 2. Defendants' suggestion that somehow these judgments render LVB's efforts futile should be rejected outright.  In stark contrast to that position, these judgments are not a defense to LVB's claims and recovery for several, independent reasons: (i) a judgment lien only attaches to *real property*, so nearly all of the assets LVB seeks (including any cash that the Trust holds) are unaffected by the prior judgments; (ii) judgments are property that can be seized, like other assets, to satisfy another judgment, and thus a finding that the Trust lacks a spendthrift defense would permit LVB to seize the Umpqua and Centrum judgments, just as it could any other asset of the debtors; (iii) LVB has priority over the Centrum judgment; and (iv) any liens imposed by these judgments on the Trust's or Sharon Bingham's real property are invalid, as a party cannot hold a lien on his own property, especially where, as here, this is done in an effort to defraud creditors. Each of these points, discussed in detail below, is sufficient to destroy Defendants' false assertion that these judgments are a defense to LVB's claims.

Critically, the Court need not even rule on these "priority" issues to enter judgment on all of LVB's claims.  Under Washington law, other creditors' claims are irrelevant unless and until LVB institutes execution proceedings and levies on the debtors' assets that are subject to competing liens—it is only then that parties claiming interests in those assets are required to intervene and challenge LVB's priority, as discussed below.  But even if the Court could somehow issue an advisory opinion on these "priority" issues before they are presented, "priority" would fail as a defense for all of the reasons noted above and below.

**MOTION FOR SUMMARY JUDGMENT** – 1
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

### 1.     The Debtors' Personal Property Is Unaffected By The Other Judgments, Which At Most, Only Attach To Real Property.

2

3    While throughout this litigation, the Defendants have implied that somehow *all assets* are

4    encumbered by the judgments held by the Trust,[1] that is plainly belied by Washington law.  RCW

5    4.56.190, which governs judgment liens, makes clear that judgments attach *only* to real property,

6    and not personal property.  RCW 4.56.190 (stating that a "judgment shall be a lien" on non-exempt

7    "real estate of any judgment debtor," explicitly excluding the debtor's "personal property"); *see*

8    *Woodworth v. Edwards*, 3 Wash. 2d 579, 586 (1940) (citing *Phoenix Mining & Milling Co. v.*

9    *Scott*, 20 Wash. 48 (1898)) (explaining that a judgment lien only attaches to real estate, and not

10   personal property).  Indeed, Defendants have admitted that "[i]n Washington, entering or

11   registering a judgment may create a lien on real property, but it does not create a lien on personal

12   property."  (ECF 39 at 7-8.)

13        Thus, even if the Trustee's judgments did impose valid liens (as discussed *infra*, they do

14   not), they could only attach to the debtors' real property.  The debtors' personal property, which

15   constitutes ***nearly all*** of the property LVB seeks to seize, is not encumbered by the Trustee's

16   claimed judgments at all.  *See* RCW 4.56.190.  This includes such personal property as: stock in

17   companies, wedding rings and other jewelry, bank accounts, cash, jet skis and boats, furniture, art,

18   sports equipment, sports cars, financial instruments, electronics, and ownership interests in

19   entities.  Indeed, the debtors have only disclosed three real property assets in Washington: a house

20   in Bellevue, a house in Hunts Point, and a house in Sammamish.  *See, e.g.*, ECF 83; Ex. B (7-29-

21   16 Ltr. to IRS) ("Sammamish residence in which Mr. Dean resides" and noting Ginger Atherton is

22   his "life partner").  All other property at issue is personal property.  Once this Court declares that

23   LVB is entitled to assets nominally held by the Trust and/or issues an order voiding the fraudulent

24

25

26   [1] *E.g.*, Hr. Tr. (May 3, 2018) at 94:9-12 ("There is nothing that's been discussed today that wasn't exempt and wasn't encumbered."); *see* ECF 134 (Order) at 6 ("Defendants argue that because these judgments have priority over LVB's Judgment, LVB cannot recover *any money* even if it is successful in penetrating the Trust's spendthrift restraint.") (emphasis added); ECF 36 at 17.

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1    transfers at issue, LVB will be free to immediately execute all of those assets, and neither the

2    Umpqua Judgment nor the Centrum Judgment would prevent it.

3              **2.      Even If The Umpqua And Centrum Judgments Imposed Valid
                       Priority Liens, LVB Can Seize Those Judgments And Become
4                      Lienholder.**

5              Even for real property, and even if the Trustee's judgments attach, LVB can seize those

6    judgments and become the lienholder.  Under Washington law, creditors are entitled to execute

7    "all property" of a judgment debtor, absent an explicit exception.  RCW 6.17.090 ("All property,

8    real and personal, of the judgment debtor that is not exempted by law is liable to execution.").

9    Judgments themselves fall within this broad category of executable property.  *Johnson v.*

10   *Dahlquist*, 130 Wash. 29, 31-33 (1924) (holding that a judgment is executable); *see also* RCW

11   6.17.160 (providing procedures for executing on "a claim on which suit has been commenced");

12   *Ikuno v. Yip*, 912 F.2d 306, 314 (9th Cir. 1990) ("Choses in action are not legislatively exempt

13   from execution [under Washington law].").  Thus, LVB can execute on another judgment held by

14   a debtor.  *Johnson*, 130 Wash. at 31-33.

15             As LVB has demonstrated (and will present a trial), the Sharon Graham Bingham 2007

16   Trust is not a valid, protectable spendthrift trust, and thus LVB can seize the assets held by the

17   Trust as property of beneficiary and debtor Sharon Bingham.  ECF 4 at 15-17; ECF 82 ¶¶ 23-91;

18   *see* ECF 137.  Once the Court holds accordingly, LVB will be entitled to seize the Trust assets,

19   including the Umpqua and Centrum Judgments.  With possession of those judgments, LVB will

20   automatically become lienholder as to any real property to which those judgments attach, and will

21   have the same priority as the original creditors and the Trustee.  *See* RCW 6.17.090; *Johnson*, 130

22   Wash. at 31-33.  These judgments, even if valid, are therefore wholly irrelevant to LVB's claims

23   and ability to seize the debtors' assets.

24

25

26

**MOTION FOR SUMMARY JUDGMENT** – 3
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

### 3.    LVB's Judgment Has Priority Over The Centrum Judgment.

2  Even if LVB could not seize the Trustee's judgments and become lienholder (it can), it

3 undisputedly has priority over the Centrum Judgment with respect to non-homestead property.[2]  A

4 federal judgment filed in the county where the debtor's property is located, like LVB's judgment

5 here, imposes a lien superior to later judgments entered in that county.  RCW 4.56.200(1) ( "[For]

6 [j]udgments of the district court of the United States rendered or filed in the county in which the

7 real estate of the judgment debtor is situated," the judgment lien on real property "shall commence

8 . . . from the time of entry or filing thereof").  LVB's judgment was issued on September 29, 2010

9 by the U.S. District Court for the Northern District of Illinois.  ECF 82 ¶ 27, Ex. C.  Two weeks

10 later, on October 15, 2010, LVB registered its judgment in the District Court for the Western

11 District of Washington, which is located in the same county where three houses owned by the

12 debtors' are located.  (*Id.* ¶ 29, Ex. D.)  Again, Defendants have admitted that "Plaintiff acted

13 prudently in 2010 when it registered its $70 million judgment entered by the U.S. District Court

14 for the Northern District of Illinois [] in the Western District of Washington. As a result of that

15 registration, Plaintiff's Judgment became a lien on all the Judgment debtors' property in the

16 Western District." ECF 39 at 4.  They have also admitted that "[t]he Centrum Judgment was

17 entered years after Plaintiff's Judgment."  ECF 39 at 6.

18  Thus, LVB's judgment takes priority over the Centrum Judgment with respect to non-

19 homestead property.  RCW 4.56.190; (*see* ECF 39 at 4-5 (Defendants conceding, "[LVB's] lien

20 rights . . . attach and follow all transfers of the Judgment debtors' non-homestead real property

21 through all transfers to the 2007 Trust or other third parties.")).  The debtors' non-homestead real

22 property includes, at the very least, the property located at 721 250th Lane NE, Sammamish, WA,

23 98074, which is not occupied by its owner (as explained above, because the Trust is not a valid

24

25
26

[2]  As for the Umpqua Judgment, the Trustee has not established that it actually holds a $23,290,953 judgment.  At most, documents in the record reflect that Umpqua Bank assigned $2,664,018.81 of the Judgment to the Trust at the time of settlement, and released the Binghams from the remaining amount.  *See* ECF 132 (Order) at 2 (citing a partial assignment of the Umpqua judgment); ECF 38-1 at 84-86 (partial assignment of $2,664,018.81 to the Trust); Ex. A (Umpqua Settlement Agreement), attached hereto.

1    spendthrift trust, its property belongs to beneficiary Sharon Bingham); rather, Henry Dean

2    apparently uses it as his residence for free.  ECF 83; *see* ECF 16 (proof of service) (2-15-18

3    service accepted by Ginger Atherton at 721-250th Lane Northeast); RCW 6.13.010.  This 5-

4    bedroom, 5.5 bathroom, 6,950 square foot house on 5 acres of property is currently valued at over

5    $4 million dollars.[3]

6          **4.     The Trustee and Debtors Cannot Hold Liens on Their Own
                     Property, Especially Where Used As A Mechanism To Defraud
7                    Creditors.**

8          Even if LVB could not seize the judgments, the Trustee's claims independently fail

9    because the liens on the Trust's and Sharon Bingham's real property, to the extent they exist, are

10   invalid.  It is well established that "[o]ne cannot have a lien on their own property, except where

11   equity interposes[.]"  *Gould v. Day*, 94 U.S. 405, 413 (1876); *In re Marriage of Edwards*, 139

12   Wash. App. 1039, at *5 (2007) ("[A] person cannot lien their own property.").  This rule is

13   premised on the fundamental principle that a lien exists to secure an underlying debt, *Sullins v.*

14   *Sullins*, 65 Wash. 2d 283, 285 (1964) ("[A] lien is an encumbrance upon the property as security

15   for the payment of a debt."); one cannot owe himself a debt, and therefore there is no debt to form

16   the basis of a lien on one's own property.  *Fed. Land Bank of Omaha v. Boese*, 373 N.W.2d 118,

17   121 (Iowa 1985) ("[A]n essential element in establishing a lien is showing a debt or an obligation

18   of the landowner. This element cannot be satisfied when a property owner claims a lien on his own

19   real estate because an owner cannot owe himself a debt.").

20         Thus, generally, where a party purchases a judgment or indebtedness against himself that

21   imposes a lien on his property, the underlying "debt and the rights based upon it are extinguished."

22   *See Home Indemn. Co. v. McClellan Motors, Inc.*, 77 Wash. 2d 1, 5 (1969) ("An assignment of a

23   claim from a creditor to the debtor is, in legal effect, a satisfaction and payment of that claim. To

24   the extent that claim is thus assigned, the debt and the rights based upon it are extinguished.");

25   *accord Gould*, 94 U.S. at 413.  While some courts recognize a narrow exception to this rule for

26

---

[3] *See* https://www.redfin.com/WA/Redmond/721-250th-Ln-NE-98074/home/8186089

certain assignments where the owner does not intend for a lien to be extinguished, such an

exception does not apply where equity prevents it.  *Summy v. Ramsey*, 53 Wash. 93, 99 (1909)

("Whether a merger [of the lien and property interest] will be recognized in equity depends upon

the interests of the parties and the surrounding circumstances."); *In re Roussos*, No. CV 17-552-

JFW, 2017 WL 2259674, at *7 n.12 (C.D. Cal. May 23, 2017) ("[I]t is a fundamental principle that

'the doctrine of merger is to be applied in a manner calculated to prevent injustice, injury and

prejudice to the rights of innocent third persons[.]'") (citation omitted).  And "[e]quity will never

allow . . . a mortgage or other security to be kept alive, when this result would aid in carrying a

fraud or other unconscious wrong into effect, under the color of legal forms." *Summy v. Ramsey*,

53 Wash. 93, 99 (1909) (citation omitted).

Here, the Trustee purports to hold liens on the Trust's own property.  ECF 83.  Under the

above authority, such liens are invalid.  The same will be true once the Trust is held to be an

invalid spendthrift trust: Sharon Bingham will hold liens on her own property (e.g., "Bellevue

Residence").  *Id.*  Nor does equity allow (in either case) the debtors to use the millions of dollars

they hid from LVB to extinguish their debt owed to other creditors, and then claim those debts still

exist to further impede LVB's collection efforts.  *Summy*, 53 Wash. at 99; *Gould*, 94 U.S. at 413.

## 5.   Issues of Lien Priority Are Not Yet Properly Before the Court.

Importantly, the priority of LVB's claim to the debtors' assets need not be resolved until

LVB actually executes upon the assets.  In this action, LVB seeks (1) declarations as to its right to

invade the Trust, deeming fraudulent transfers void, and directing payment of income to LVB; and

(2) an order under the UFTA setting aside fraudulent transfers as void.  ECF 82 ¶¶ 118, 121-30.

Once these orders are issued, LVB may initiate execution proceedings to levy certain of the

debtors' assets.  Under the Washington execution statute, once asserts that could implicate a

judgment lien are levied, creditors that claim rights to the levied property bear the burden of

asserting and establishing the validity of their rights.  *E.g.*, RCW 6.29.030(1) ("An adverse

claimant to property levied on may demand and receive the property from the sheriff who made

**MOTION FOR SUMMARY JUDGMENT** – 6
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1   the levy, upon making and delivering to the sheriff an affidavit [and meeting other

2   requirements]"); RCW 6.19.030(2) (setting forth procedures for litigating the "probable validity"

3   of a third party's claim to levied property); *Hauf v. Johnston*, 105 Wash. App. 807 (2001) ("[T]he

4   law places the burden on persons claiming an interest in the property that is adverse to the debtor

5   to prove what their interest is.").  The Court overseeing the execution proceedings will then

6   evaluate third party claims as to the property at issue. *See* RCW 6.19.030.

7          Thus, LVB's claims can and should be decided, and judgment entered on its claims,

8   without regard to these "priority" issues.  The Trustee's claimed priority to any of the debtors'

9   assets will be litigated if and when LVB executes upon assets that implicate priority.  In any event,

10  should the Court decide to take up this issue now, it can quickly dispose of the Trustee's claim of

11  priority for the many reasons discussed above.

12          **B.     Issue #2:  LVB Needs an Order From the Court to Execute Upon the Assets of CCRB and SKBB.**

13

14          Issue #2 directs the parties to address "[w]hether Plaintiff needs an order from this Court

15  before it can execute on the assets of Defendant CCRB Enterprises, LLC, SKBB Enterprises, LLC,

16  or any other assets outside of the Trust."  ECF No. 132 at 2.  The answer is unquestionably yes.

17  Until the Court orders otherwise, LVB is only entitled to execute upon the assets of those

18  defendants named on the judgment: the Binghams and Bingo Investments.  This is precisely why

19  the Defendants have used fraudulent shell entities like CCRB Enterprises and SKBB Enterprises

20  (as well as Henry Dean's companies and accounts):  to hold assets in ways that nominally avoid

21  judgment execution and defraud creditors.  Am. Compl. ¶¶ 44-60.  The Court has already observed

22  that CCRB is "a fraudulent shell created to avoid creditors."  5/3/2018 Hearing Tr. at 82:24-25.

23  And that is the only conclusion that can logically be reached.

24          Indeed, Defendant Chris Bingham has admitted that CCRB has never been operated as a

25  business, and has always functioned as his personal bank account.  ECF 5-20 (Dep. Excerpts).  He

26  admitted that CCRB has no offices, no employees, and conducts no business.  *Id.*  He could not

    recall CCRB holding any meetings, taking any minutes, taking any votes among the members, and

---

**MOTION FOR SUMMARY JUDGMENT** – 7
No. 2:18-CV-00243-TSZ

was not even certain who "managed" the company—despite the fact that CCRB has represented to the State of Washington that Chris Bingham is the manager.  *Id.*  The Trust—whose distributions are supposed to be made exclusively to Sharon Bingham—wrote checks to CCRB amounting to $495,093 between February and July 2016 alone for the stated purpose of funding the installation of a pool at Chris and Cherish's home in Hunt's Point, Washington.  Am. Compl. ¶¶ 44-54.  The Trust also makes a monthly cash transfer of $15,000 directly to "Chris Bingham/CCRB." *E.g.*, Exs. 35-36. According to Mr. Bingham, he draws directly from CCRB's bank accounts to pay his own personal expenses (and has always done that instead of using his personal checking account). ECF 5-20.  This includes two recently-purchased Seadoo jet skis and a 2011 wakeboarding boat used exclusively by Chris's children.  *Id.*

SKBB, in the Trust accountant's own words, "was set up at the same time [as CCRB] for the same purpose."  Am. Compl. ¶56.  It was established around the same time, by the same individuals, and has been used for the same basic purpose: to funnel money to Scott and Kelly Bingham from Sharon's Trust accounts in a way that cannot currently be garnished by creditors. *Id.*  For example, on December 29, 2011, Scott Bingham emailed Cicilia Elali, the Trust accountant, informing her that he had been going through his bills and needed "$17,000 and then there is my house payment on top of that," and "I would like to have about $3000 on top of that for food and Christmas stuff this month" and money for his wife to get him a birthday gift.  He asked in total for $26,000.  That day, Elali responded that she would transfer the $26,000 "today to SKBB."  *Id.* ¶ 58.  The Binghams and their accountant brazenly joke in e-mails about the fraudulent nature of this scheme—direct evidence of actual intent to defraud.  *Id.* ¶ 59 ("I just transferred the $4500 for your bills into your SKBB account from your mom's Trust as agreed. FYI these are being recorded as loans for now.  Someday when you're rich again, you can pay it back ☺.").

Unless and until the Court orders otherwise, the Trustee will be able to continue perpetuating these frauds and illegally draining funds from the Trust accounts to these entities—or

**MOTION FOR SUMMARY JUDGMENT** – 8
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1    to other shell entities controlled by the Bingham children that Defendants may establish to avoid

2    the Court's earlier fraud observation.  LVB is willing to submit whatever further briefing or

3    evidence the Court wishes to support: (i) its entitled to judgment against CCRB and SKBB; and

4    (ii) an order preventing the Trustee from transferring money to entities that hold money, or transfer

5    money, for the benefit of any of the Binghams or the Trustee himself, rather than the beneficiary

6    Sharon Bingham.

7         C.    <u>Issue #3</u>:  **Any Trial In This Matter Should Be Bifurcated**

8         Finally, Issue #3 asks the parties to address "[w]hether the Court should bifurcate the trial

9    into two or more stages."  ECF 132 at 2.  Pursuant to Rule 42(b) of the Federal Rules of Civil

10   Procedure, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may

11   order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-

12   party claims."  Fed. R. Civ. P. 42(b).  The rule "confers broad discretion upon the district court to

13   bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings."  *Travelers Prop.*

14   *Cas. Co. of Am. v. Nw. Pipe Co.*, 2017 WL 4168501, at *2 (W.D. Wash. Sept. 20, 2017).  Rule 57

15   likewise permits the Court to "order a speedy hearing of a declaratory-judgment action."  Fed. R.

16   Civ. P. 57; *Tri-State Generation & Transmission Ass'n, Inc. v. BNSF Ry. Co.*, 2008 WL 2465407,

17   at *7 (D. Ariz. June 17, 2008).

18        LVB has previously proposed a phased approach given the efficiencies involved, and as a

19   way to expedite resolution of this case.  ECF 97, 127. A similar phased approach can be

20   accommodated under the Court's current schedule with some minor adjustments.  A revised

21   proposal is discussed below, and a Proposed Case Scheduling Order has been submitted

22   concurrently with this brief.

23        **Phase 1:  Trust's Purported Spendthrift Defense (Bench Trial).**  LVB's Cause of

24   Action No. 1 for Declaratory Judgment has seven components. Am. Compl. ¶ 118.a-g.  With the

25   Court's permission, LVB has already filed an early summary judgment motion on two of those

26   components: (i) self-settled assets; and (ii) payments made to Sharon Bingham from the Fisher

**MOTION FOR SUMMARY JUDGMENT** – 9
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1    Trust accounts.  ECF 137; Am. Compl. ¶ 118.a, g.  Four components are related to LVB's Cause

2    of Action No. 2 for fraudulent transfers, which can be addressed with that cause of action as

3    described below.  Am. Compl. ¶ 118.c-f.  This leaves the significant outstanding issue of whether

4    the Trust is entitled to a spendthrift defense for any of the remaining assets that are not self-settled.

5    Am. Compl. ¶ 118.b.

6           At the time the Trust was established, Sharon was both the sole beneficiary and sole

7    trustee.  Am. Compl. ¶ 30.  Moreover, as the Court has already noted (see ECF 126 at 3 n.2),

8    spendthrift protections can be forfeited by conduct (as they have been here).[4]  LVB has already

9    documented evidence that Sharon controls how funds are distributed from the Trust, including

10   deposition testimony from Defendant Chris Bingham, which destroys its spendthrift character.

11   FAC ¶¶ 39, 41, 87, 113-15; ECF 4 at 15-17; ECF 5-20.  LVB will also take further discovery to

12   support that claim.  There is no statute of limitations to seek a declaratory ruling that the Trust has

13   lost spendthrift character, and thus none of the Trustee's unrelated arguments (which concern only

14   the statute of limitations under the UFTA) would be relevant.

15          A ruling that the Trust's spendthrift defense is meritless could obviate the need for LVB to

16   proceed with its fraudulent transfer claim *at all*, or dramatically pare it down.  Since the fraudulent

17   transfer claims (which are pleaded in the alternative as to the Trust) are the most fact-intensive and

18   time-consuming to present to the Court and adjudicate, the potential to resolve the case without

19   burdening the Court presents real efficiency savings.  LVB could proceed to garnishment of the

20   non-self-settled assets and quickly expedite resolution of the entire case.  It would also eliminate

21   the need for many additional days, if not weeks of testimony, on issues that are only relevant to

22   LVB's fraudulent transfer claim.

23   _____

24   [4] *Accord* Restatement (Third) of Trusts § 58 (2003); *Matter of Marriage of Galando*, 200 Wash, App. 1030, at *16
     n.14 (2017) ("An intended spendthrift restraint is also invalid with respect to a nonsettlor's interests in trust
25   property over which the beneficiary has the equivalent of ownership, entitling the beneficiary to demand
     immediate distribution of the property") (citation omitted); *Britannia Holdings Ltd. v. Greer*, 127 Wash. App. 926,
     935, 113 P.2d 1041 (2005) ("[I]f a beneficiary acquires the power to compel distribution of trust property, a
26   spendthrift restraint will no longer prevent creditors from executing on the trust."); *In re White*, 61 B.R. 388, 393
     (Bankr. W.D. Wash. 1986) ("The beneficiary must not have such control over the funds so as to render them more
     in the nature of present savings than future income.").

**MOTION FOR SUMMARY JUDGMENT** – 10
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1    Moreover, unlike LVB's fraudulent transfer claim, its declaratory judgment claim as to the

2  Trust's spendthrift defense does not require a jury trial.  *Dexia Credit Local v. Rogan*, 2009 WL

3  528902, at *3 (N.D. Ill. Mar. 2, 2009) (judgment creditor's right to property is an equitable remedy

4  not subject to jury trial); *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1103

5  (N.D. Cal. 2007) ("Whether a declaratory judgment action entitles a party to a jury trial depends

6  on the nature of the claim from which it arises.").  A phased approach would therefore avoid the

7  additional time and burden on the Court and potential jurors of a jury trial.[5]

8    **Phase 2:  Fraudulent Transfer Claim (Jury Trial).**  As documented in detail in the

9  Amended Complaint, LVB has already identified hundreds of separate fraudulent transfers.  Am.

10  Compl. App'x A.  More are likely to come to light in discovery.  If Phase 2 is necessary, LVB

11  would have a right and obligation to present the evidence it has for each of these transfers, which

12  would require a substantial investment of time and resources for the parties and the Court.  In

13  addition to the additional time and resources required for a jury trial, the fact-intensive fraudulent

14  transfer claims would involve many additional fact and expert witnesses, hundreds if not

15  thousands of additional potential exhibits, hundreds of pages of additional trial-related briefing,

16  and would require many additional weeks to present to a jury for verdict.  And all of it could

17  potentially be avoided by a threshold ruling at the Phase 1 bench trial that may very well expedite

18  resolution of the case.

19    LVB proposes that all of the existing discovery and dispositive motion deadlines remain

20  in place except for the expert discovery deadline, which is subject to an *unopposed* request for that

21  deadline to coincide with the close of fact discovery.  ECF 138.  For the trial dates currently set,

22  including the deadlines for motions *in limine*, the pretrial order, trial briefs, and pretrial

23  conference, LVB would propose that those dates be limited to the Phase 1 bench trial proposed

24  above.  Once that Phase is complete, or at some time closer to that date, the parties and the Court

25

26  [5] Should the Court not fully grant LVB's motion for summary judgment on the self-settled and Fisher Trust components of LVB's declaratory judgment claim, those issues could easily be included in this trial phase as well for the same reasons.

**MOTION FOR SUMMARY JUDGMENT** – 11
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1   can establish Phase 2 deadlines for these pretrial tasks and a Phase 2 trial if and only if Phase 2 is

2   necessary at that time.  A Proposed Case Scheduling Order to that effect has been submitted

3   concurrently with this brief.

4   DATED: September 21, 2018

5
                                      *s/ William R. Squires III*
                                      William R. Squires III, WSBA No. 4976

6                                  CORR CRONIN MICHELSON
                                  BAUMGARDNER FOGG & MOORE LLP

7                                  1001 Fourth Avenue, Suite 3900
                                  Seattle, Washington 98154-1051

8                                  Telephone: (206) 625-8600 Fax: (206) 625-0900
                                  E-mail:    rsquires@corrcronin.com

9                                  Jeffrey L. Willian (admitted *pro hac vice*)

10                                KIRKLAND & ELLIS LLP
                                300 North LaSalle

11                                Chicago, IL 60654
                                Telephone: (312) 862-2257

12                                Email:    jwillian@kirkland.com

13                                Tammy A. Tsoumas (admitted *pro hac vice*)
                                Jonathan J. Faria (admitted *pro hac vice*)

14                                Heather F. Canner (admitted *pro hac vice*)
                                KIRKLAND & ELLIS LLP

15                                333 S. Hope Street
                                Los Angeles, CA 90071

16                                Telephone: (213) 680-8151
                                Email:    tammy.tsoumas@kirkland.com

17                                                jonathan.faria@kirkland.com
                                                heather.canner@kirkland.com

18                                *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

**MOTION FOR SUMMARY JUDGMENT** – 12
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

CERTIFICATE OF SERVICE

2            I hereby certify that on September 21, 2018, I electronically filed the foregoing with the

3    Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4    following:

5    Emanuel Jacobowitz
     R. Bruce Johnston
6    Nathan J. Arnold
     JOHNSTON JACOBOWITZ & ARNOLD, PC
7    2701 First Avenue, Suite 200
     Seattle, WA 98121
8    Telephone:  (206) 866-3230
     Email: manny@jjalaw.com
9            bruce@rbrucejohnston.com
             Nathan@jjalaw.com
10   *Attorneys for Defendants David S. Bingham, Sharon Bingham, Christopher Bingham, Cherish
     Bingham, Kelly Bingham, Bingo Investments, LLC, and CCRB Enterprises, LLC*
11
     Scott B. Henrie
12   Manish Borde
     WILLIAMS KASTNER & GIBBS PLLC
13   601 Union Street, Suite 4100
     Seattle, Washington 98101-2380
14   Telephone:  (206) 628-6600
     Email:  shenrie@williamskastner.com
15           mborde@williamskastner.com
     *Attorneys for Defendant Park Place Motors, Ltd. and Henry Dean as Trustee for the Sharon
16   Graham Bingham 2007 Trust*

17   Dennis J. McGlothin
     Robert J. Cadranell, II
18   WESTERN WASHINGTON LAW GROUP PLLC
     7500 212th St. S.W., Suite 270
19   Edmonds, WA  98026
     Phone: 425-428-7296
20   Email: dennis@westwalaw.com
             robert@westwalaw.com
21   *Attorneys for Defendants Henry Dean in his individual capacity, Cicilia Elali, and BGH
     Holdings, LLC*
22

23

24

25

26

CERTIFICATE OF SERVICE
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

*s/ William R. Squires III*
William R. Squires III, WSBA No. 4976
Attorney for Plaintiff
CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Telephone: (206) 625-8600
Fax: (206) 625-0900
e-mail: rsquires@corrcronin.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
No. 2:18-CV-00243-TSZ

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600