UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LVB-OGDEN MARKETING, LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>DAVID S. BINGHAM, SHARON BINGHAM, CHRISTOPHER BINGHAM, CHERISH BINGHAM, KELLY BINGHAM, BINGO INVESTMENTS, LLC, CCRB ENTERPRISES, LLC, SKBB ENTERPRISES, LLC, PARK PLACE MOTORS, LTD., HYTECH POWER, INC., HENRY DEAN, in his individual capacity and as Trustee for the SHARON GRAHAM BINGHAM 2007 TRUST, and BGH HOLDINGS, LLC,<br><br>        Defendants. | C18-243 TSZ<br><br>ORDER |

    THIS MATTER comes before the Court on Plaintiff's Motion, docket no. 137, for Summary Judgment seeking a Declaratory Judgment regarding (1) LVB's right to seize self-settled assets held by the Sharon Graham Bingham 2007 Trust (the "SGB Trust"); and (2) LVB's right to seize distributions received by or accrued for the benefit of Sharon Bingham from the O.D. Fisher Trust and Nellie Hughes Fisher Trust (the "Fisher

ORDER - 1

Trusts"). The Court has reviewed all papers filed in support of, and in opposition to, the motion and enters the following order.

**Background**

### I. The History of the SGB Trust and the Judgments Against the Binghams

In 2007, the SGB Trust was created and funded by Frances Graham with shares of stock from the O.D. Fisher Investment Company. The SGB Trust was established as an irrevocable trust for the benefit of her daughter, Sharon Graham Bingham. Declaration of Henry W. Dean, docket no. 42 ("Dean Decl."), ¶ 2. At all times material after September 10, 2010, Henry W. Dean has been the Trustee of the SGB Trust. Dean Decl., docket no. 42, ¶ 5 (hereinafter "Trustee"). The SGB Trust documents grant the Trustee broad authority to "acquire and retain so long as the Trustee deems advisable, any kind of real and personal property . . . all without need for diversification as to kind or amount and whether or not income producing . . . ." Declaration of Trust, Sharon Graham Bingham 2007 Trust, docket no. 5-22, at 7. The Trustee is also permitted to make loans to anyone on terms the Trustee "deems advisable." *Id.* at 8. It is undisputed that the SGB Trust is a spendthrift trust created by a mother to support her daughter. Plaintiff's Motion for Temporary Restraining Order, docket no. 4, at 3-4.

After the creation of the SGB Trust, Sharon Bingham and her husband David Bingham (hereinafter, "the Binghams") began experiencing financial difficulties arising out of the 2008 mortgage crisis. By 2009 the Binghams had defaulted on tens of millions of dollars in loans and personal guarantees. Opposition to Plaintiff's motion, docket no. 147 at 4. Beginning in at least 2009, various creditors sued the Binghams on these

ORDER - 2

personal guarantees. For example, Umpqua Bank obtained a judgment against the Binghams and other defendants in June 2009 for $23 million. Dean Decl., docket no. 42, Ex. H. As part of the Umpqua litigation, the bank had taken the position it could recover its judgment from the SGB Trust assets. The Trustee of the SGB Trust, Dean, contended the Trust was not subject to execution because of its spendthrift nature. Later Dean, as Trustee, entered into the Umpqua Forbearance and Settlement Agreement (hereinafter the "Umpqua Settlement"), and paid $3,115,152.81 from the SGB Trust to Umpqua Bank in order to settle the Umpqua Judgment. *Id.*, Ex. L. The Umpqua Settlement included an assignment of Umpqua Bank's judgment to the SGB Trust. *Id.*, Ex. L, ¶ 11.

Similarly, Washington Trust Bank obtained a judgment against the Binghams and Bingo Investments LLC in June 2010 in the amount of $1,792,707.83 plus interest and costs. *Id.*, ¶¶ 17-18. Once again, Dean, as Trustee of the SGB Trust, negotiated a settlement with Washington Trust allowing the debtors, including Sharon Bingham, to pay one million dollars over time. *Id.*, Ex. Q. On behalf of Sharon Bingham, the SGB Trust paid $200,000 on or about February 4, 2001, and later an additional payment of $830,000 to the Bank. *Id.*

Like Umpqua Bank and Washington Trust, Centrum Financial Services was a creditor that threatened litigation against the SGB Trust. Centrum held a judgment for $57,617,482.96 against the Binghams. *Id.*, Ex. R. The SGB Trust defended supplemental proceedings against it contending it was a spendthrift trust. *Id.* at 19-20. Because the Binghams had no liquid assets to fund a settlement, the SGB Trust ultimately

agreed to make payments of $3,750,000 to Centrum and the unsatisfied balance of the Centrum Judgment was assigned to the SGB Trust. *Id.* at 21.

The Binghams purchased the M/V Bingo, a large pleasure boat, and received financing in part from Key Bank. Key Bank later sued, in rem, and the vessel was arrested. Key Bank held a $1.5 million Preferred Ships Mortgage. Declaration of R. Bruce Johnston, docket no. 35, ¶ 17. Ultimately the SGB Trust posted a $550,000 bond for the release of the Bingo to the Binghams. In connection with the release of the Bingo from arrest, the SGB Trust also secured the release of a $1.5 million mortgage held by Key Bank in exchange for a $600,000 letter of credit. Opposition, docket no. 147, at 5. As the Trustee explained, "[i]n short, the 2007 Trust put up a $600,000 letter of credit and thereby successfully caused the M/V Bingo to be released from arrest, and to be released from Key Bank's $1.5 million marine mortgage." Dean Decl., docket no. 42, at 23.

Plaintiff, another of the Bingham's creditors, obtained a judgment against the Binghams and others on September 29, 2010, for $70 million plus post-judgment interest. The Judgment is registered in this District, docket no. 82-4. This Judgment forms the basis for Plaintiff's attack on the spendthrift nature of the SGB Trust.

**II.     The Disputed Assets in the SGB Trust**

In the midst of the Bingham's financial difficulties, the Trustee also made a series of loans to the Binghams *from SGB Trust assets*, secured by property the Binghams possessed *outside* the SGB Trust. In December 2011, the Trustee loaned the Binghams $740,805.34, and the Binghams executed a promissory note in favor of the SGB Trust for

the loan. Declaration of Cicilia Elali, docket no. 148, ¶ 3. The December note included a provision for future advances from the SGB Trust. *Id.*, Ex. A at 1-2. The note was also accompanied by a security agreement executed by the Binghams and the Trustee granting the Trustee a security interest in the following assets outside the SGB Trust: (1) shares of stock in Park Place Motors, Ltd.;[1] (2) 1,263,333 shares of stock in Biolytical Laboratories, Inc.; (3) a preferred ship's mortgage on the M/V Bingo; (4) the Binghams' furniture, fixtures, equipment, and appliances; and (5) Sharon Bingham's wedding ring.[2] *Id.*, Ex. A at 4, 24 (hereinafter the "Disputed Assets").

Over the course of 2012, the Trustee made additional transfers of SGB Trust assets to the Binghams, as contemplated by the December 2011 promissory note, ultimately totaling $1,926,940.60. *Id.* ¶ 4, Ex. B. Defendants concede that "these sums were advanced by the Trust as loans necessary and a result of the beneficiary's obvious and very public financial troubles." Opposition to Summary Judgment, docket no. 147, at 4. Unable to repay these loans, the Binghams agreed to transfer the Disputed Assets to the Trustee to satisfy the promissory note. On December 31, 2012, the Binghams and the Trustee entered a "Settlement Agreement" that deemed the outstanding balance of $1,926,940.60 satisfied upon assignment or conveyance of the Disputed Assets to the

---

[1] The Binghams originally transferred 100% of the stock of Park Place Motors, Ltd. to the SGB Trust. Dean Decl., docket no. 42, ¶ 24.f. In 2014 the Trustee distributed 57.5% of the stock of Park Place and there now remains 42.5% of the stock in the SGB Trust. *Id.*

[2] The security agreement also granted the Trustee an interest in other assets not listed here. Plaintiff has failed to adequately address other assets, including without limitations membership interest in Bingo Properties, LLC and membership interest in Bingo Venture Capital, LLC, *see* Motion for Summary Judgment, docket no. 137 at 8, and the Court denies the motion for summary judgment, without prejudice as to any assets not defined by this Order as Disputed Assets.

ORDER - 5

SGB Trust pursuant to the Settlement Agreement. Faria Decl., docket no. 137-5. On the same day, the Binghams transferred the Disputed Assets to the SGB Trust. Dean Decl., docket no. 42, ¶ 24.f (discussing transfer of Park Place Motors, Ltd. stock), ¶ 24.g (transfer of 1,263,333 shares of Biolytical Laboratories, Inc. stock); ¶ 24.l (describing SGB Trust payment of $150,000 to Centrum Financial Services to extinguish Centrum's claims to the matrimonial rings); ¶ 24.m (describing creation of security interests in favor of SGB Trust in the Binghams' personal property). It is undisputed that the Disputed Assets were transferred to the SGB Trust by the Binghams pursuant to the Settlement Agreement. The only dispute is whether that transfer is void or otherwise unprotected by the SGB Trust's spendthrift provisions. Plaintiff seeks an order that it is entitled to seize the Disputed Assets as "self-settled" because they are no longer protected by the spendthrift nature of the SGB Trust.

**Discussion**

    **I.    The Disputed Assets Are Self-Settled**

RCW 6.32.250 is clear: the property of a debtor is subject to creditor seizure, unless it is "any money, thing in action or other property held in trust for a judgment debtor where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor." The property that Plaintiff is attempting to seize was placed in the trust by the Binghams—it did not proceed from a person other than the judgment debtors and it is subject to seizure. The Trustee had the legal right to loan money to the Binghams from the SGB Trust. No one disputes this right. The Trustee loaned the Binghams nearly $2 million from the SGB Trust. Once that money left the Trust, it no longer had spendthrift trust protection under Washington law. Before

ORDER - 6

the Binghams transferred the Disputed Assets to the Trustee as part of the 2012 Settlement Agreement, the Disputed Assets were subject to creditor seizure. Nothing changed with the transfer of the Disputed Assets into the Trust. They are subject to seizure. RCW 6.32.250.

There is a second independent basis for the Court to conclude the Disputed Assets are subject to seizure. Any transfer "made in Trust" for the use of the person making the transfer is void as to creditors pursuant to RCW 19.36.020. The statute voids so-called self-settled transfers, which the statute defines as "all deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same . . . ."

In *In re Jordan*, Jordan entered into a structured settlement with Burlington Northern Railroad (hereinafter "BN") which provided that payments to be made pursuant to an annuity contract would not be subject to attachment by any creditor. Jordan later filed for bankruptcy and sought to claim spendthrift trust protection for these annuity payments under Washington law. The Chapter 7 trustee sought to recover the funds. The Ninth Circuit concluded that the fund created by the settlement was not entitled to spendthrift trust protection under Washington law. The Ninth Circuit reasoned that "[b]ecause the money placed in the fund is directly traceable to Ronald Jordan's property interest in his cause of action against BN, he was the settlor of the Trust." 914 F.2d 197, 199 (9th Cir. 1990). The Binghams have reaped the benefits of the SGB Trust assets—by receiving them from the Trust in the form of loans—and they have used the money to pay off creditors or otherwise enjoy the money outside the Trust. The Washington statutory

prohibitions on self-settling are designed to ensure any assets so-transferred remain available for seizure by creditors. Any attempts to return assets to the Trust are void as to creditors.

There is no exception in the statute for transfers into trusts where consideration is exchanged. The Trustee urges such an exception nonetheless, asking this Court to read "made in trust" to mean made without consideration. Dean's Opp., docket no. 147, at 6-7. Defendants cite a number of cases purportedly supporting their reading that "made in trust" means "made without consideration." The Court is unconvinced. The cases only stand for the basic premise that a creditor may favor one creditor over another as long as the transfer is not fraudulent. *See Samuel v. Kittenger*, 6 Wash. 261, 268-69, 33 P. 509 (1893) (holding that transfers from a debtor to various other creditors for repayment of preexisting debts, "where there is no such trust agreed upon or understood between the parties" were valid even though the "effect may be to preclude the creditors from subjecting the property to the payment of their claims against the common debtor"); *Tomlinson v. Burgess*, 185 Wash. 33, 52 P.2d 1259 (1935) (holding that transfers from a debtor to creditors who were not trustees of a trust for the which the debtor was a beneficiary were valid and not fraudulent); *Van Stewart v. Townsend*, 176 Wash. 311, 28 P.2d 999 (1934) (holding that transfer from parents to a trust for the children was not void when it was "created in good faith when the grantors were fully solvent"). None of these cases cited by Defendants endorse the novel position advanced by Defendants—that a debtor can protect its assets from seizure by taking out loans from a spendthrift trust and then transferring other assets back into the trust. Once the assets leave the

shelter of the spendthrift trust, the creditors may claim them under Washington law. Likewise, any assets transferred into a spendthrift trust by the beneficiary are subject to seizure.

Defendants contend that finding these transfers to be self-settled would read "made in trust" out of RCW 19.36.020. On the contrary, this result applies the statute's plain meaning, which provides that transfers made into a trust for a beneficiary are void if the beneficiary is the one performing the transfer *into the trust*. *See also* RCW 6.32.250 (authorizing seizure of self-settled assets without any reference to whether those transfers were "made in trust"). [3]

Contrary to Defendants' contention, the multi-factor analysis of potential fraud applied in other cases is inapplicable to the question of whether the assets are self-settled. The badges of fraud analysis does not create a dispute of material fact precluding summary judgment in this case because Plaintiff is not moving for summary judgment on its fraudulent transfer claim. Rather, Plaintiff presents an issue of law, which the Court concludes can be resolved on summary judgment. The Disputed Assets are self-settled

---

[3] Defendants' efforts to ascribe a different meaning—i.e. that "made in trust" implies made without consideration—has no merit. Defendants argue that "transfers made in consideration of securing or in satisfaction of debt are not the same as transfers made in trust for no consideration," but Defendants apparently believe that "made in trust" means something other than no consideration because otherwise Defendants would not need to add the qualification "for no consideration" after "made in trust." Dean's Opp., docket no. 147, at 7. The Court's interpretation does not "render RCW 11.98.070 meaningless and void." *Id.* at 16. The statute authorizes trustees to make loans to any person, including beneficiaries. The statute says nothing about whether loaned funds are subject to seizure by a beneficiary's creditors, and Defendants point to no authority indicating the funds remain protected after being loaned out of a spendthrift trust. Nothing in this Order would prevent a trustee from making a loan, secured or unsecured, to a beneficiary. However, once spendthrift assets are removed from the protection of a spendthrift trust, they are subject to seizure and cannot be returned to the trust in a different form and not be "self-settled."

ORDER - 9

and are entitled to seizure by creditors. The Court need not reach the question of whether these transfers were fraudulent.[4] *See* Restatement (Third) of Trusts § 58 ("The rule of this subsection [regarding self-settled assets] does not depend on the settlor having made a transfer in fraud of creditors . . . ."); s*ee also In re Huber*, 493 B.R. 798, 809-11 (W.D. Wash. Bankr. 2013) (holding that transfer was self-settled and also, independently, could be set aside as fraudulent); *In re White*, 61 B.R. 388, 393 (W.D. Wash. Bankr. 1986) ("The fact that [debtor] acted without intent to defraud his creditors is not relevant.").

There is no material factual dispute here—the Disputed Assets were transferred to the SGB Trust by the Defendants, including Sharon Bingham, the sole beneficiary of the SGB Trust. Those assets, now held in trust for Sharon Bingham in the SGB Trust, are subject to seizure by judgment creditors. RCW 6.32.250. The transfers are also void as to those creditors because they were made in trust for the use of the person making the transfer. RCW 19.36.020. The fact that consideration was exchanged is immaterial to the question of whether the Disputed Assets are self-settled.

**II.     Plaintiff is Entitled to Seize Fisher Trust Disbursements**

Plaintiff's motion also seeks summary judgment relating to the Fisher Trusts. There appears to be no dispute that Plaintiff is entitled to seize money already distributed from the Fisher Trusts. Combined Opp. to Pltf.'s Motion for a Temporary Restraining Order, docket no. 36, at 7 ("LVB is not precluded from executing on those assets no longer in the trust . . . ."); *see also In re Pettit*, 61 B.R. 341, 346 (W.D. Wash. Bankr.

---

[4] Nothing in this Order addresses Plaintiff's independent claim alleging fraudulent conveyances. That matter is reserved for trial.

1986) ("Where a valid spendthrift trust exists, [] the portion of the trust which has accrued and is ready for distribution to the beneficiary is subject to seizure."). The parties dispute whether the assets of the Fisher Trusts, now accrued or available for distribution, are protected. The Court concludes, as a matter of law that Plaintiff is entitled to seize any distributions made or hereafter distributed to Sharon Bingham and/or the SGB Trust from the Fisher Trusts.[5] The issue of whether Sharon Bingham, as the beneficiary of the Fisher Trusts, is "incapable of managing to . . . her own best interest and advantage the property to be distributed" is currently the subject of a separate proceeding. *See* LVB-Ogden Marketing, LLC v. Bingham, Case No. 18-786-TSZ, Order, docket no. 40, at 6. Nothing in this Order is intended to address that issue.

**Conclusion**

For the foregoing reasons, the Court grants Plaintiff's Motion, docket no. 137, in part as follows:

(1) Plaintiff is entitled to seize the following self-settled assets of Defendant Sharon Bingham in the SGB Trust:

    (a) 42.5% of the stock of Park Place Motors, Ltd;

    (b) 1,263,333 shares of stock in Biolytical Laboratories, Inc.;

    (c) the Note and Preferred Mortgage secured by the M/V Bingo in favor of the SGB Trust;

---

[5] The Court notes that Sharon Bingham may have authorized the deposit of distributions from the Fisher Trust into the SGB Trust. Those transfers, if any occurred, are also self-settled and subject to seizure by creditors. *Compare* Declaration of William R. Squires III Controverting Garnishee Bank of the West's Answer, Exhibit 7, docket no. 5-7 in Case No. 18-cv-786, at 2, 4 (ACH forms authorizing deposits from the Fisher Trusts payable to Sharon Graham Bingham in an account ending 6949) *with* Declaration of Elyse Kowalewski, docket no. 31 in Case No. 18-cv-786, ¶ 6 (identifying accounts associated with the SGB Trust, including one ending 6949).

ORDER - 11

    (d) Sharon and David Bingham's furniture, fixtures, equipment, and appliances transferred pursuant to the Settlement Agreement, (Ex. 4) Dean Decl., docket no. 42, ¶ 24.m; and

    (e) Sharon Bingham's wedding ring.

  (2) Plaintiff is entitled to seize any distributions made or hereafter distributed to Sharon Bingham and/or the SGB Trust from the Fisher Trusts.

  (3) The Plaintiff's remaining claims for declaratory relief (FAC, docket no. 82, ¶ 118(b)-(g)) and for violation of the Uniform Fraudulent Transfer Act (second cause of action) remain set for trial on April 29, 2019.

  (4) Except as provided in this Order, Plaintiff's motion for summary judgment is otherwise DENIED.

  IT IS SO ORDERED.

  Dated this 7th day of December, 2018.

              _/s/ Thomas S. Zilly_
              Thomas S. Zilly
              United States District Judge