1

2

3

4

5

6
          THE HONORABLE THOMAS S. ZILLY

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

LVB-OGDEN MARKETING, LLC,

          Plaintiff,

   v.

DAVID S. BINGHAM, SHARON BINGHAM, CHRISTOPHER BINGHAM, CHERISH BINGHAM, KELLY BINGHAM, BINGO INVESTMENTS, LLC, CCRB ENTERPRISES, LLC, SKBB ENTERPRISES, LLC, PARK PLACE MOTORS, LTD., HYTECH POWER, INC., HENRY DEAN, in his individual capacity and as Trustee for the SHARON GRAHAM BINGHAM 2007 TRUST, and BGH HOLDINGS, LLC,

          Defendants.

No. 2:18-CV-00243-TSZ

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING:**

**(1) LACK OF SPENDTHRIFT PROTECTION FOR 2007 TRUST;**

**(2) SELF-SETTLED STATUS OF RECENT TRANSFERS USING UMPQUA JUDGMENT;**

**(3) INABILITY TO VALIDLY ASSERT JUDGMENT LIENS AGAINST ONE'S OWN PROPERTY**

**NOTE ON MOTION CALENDAR:**
**March 29, 2019**

**ORAL ARGUMENT REQUESTED**

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

## **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 2

    A.    The Sharon Graham Bingham 2007 Trust ..................................................... 2

    B.    The Court's December 7, 2018 Summary Judgment Ruling ........................... 4

    C.    The Trustee's Attempt to Re-Take Self-Settled Assets Into The Trust ................. 4

III.  ARGUMENT ............................................................................................................. 5

    A.    Sharon Bingham's Role as Sole Trustee and Sole Beneficiary Invalidated the
          Sharon Graham Bingham 2007 Trust. ........................................................... 6

          1.    A Washington Trust Is Not Validly Created At the Outset When The Sole
                Trustee and Sole Beneficiary Are The Same Person. ..................................... 6

          2.    Even If The 2007 Trust Had Been Validly Created, Sharon's Control As
                Trustee Eliminated Any Spendthrift Protection. ............................................ 8

    B.    The Trustee's Latest Attempt to Seize Three Self-Settled Assets Using The
          Umpqua Judgment Is Again Self-Settled For The Reasons The Court Has
          Already Ruled On Summary Judgment. ........................................................ 10

    C.    The Trustee's Holding of Other Judgments Is Also of No Moment Because He
          Cannot Properly Hold a Lien Against His Own Property. .................................. 15

IV.   CONCLUSION ......................................................................................................... 17

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – i
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Arkansas Dep't of Health and Human Serv. v. Ahlborn*,
   547 U.S. 268 (2006) ............................................................................................ 16

*Britannia Holdings Ltd. v. Greer*,
   127 Wash. App. 926, 113 P.2d 1041 (2005) ............................................... 8, 9

*Carroll v. Carroll*,
   18 Wn. 2d 171 (1943) ...................................................................................... 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .......................................................................................... 5

*Fed. Land Bank of Omaha v. Boese*,
   373 N.W.2d 118 (Iowa 1985) ......................................................................... 16

*Home Indemn. Co. v. McClellan Motors, Inc.*,
   77 Wash. 2d 1 (1969) ...................................................................................... 17

*IDS Prop. Cas. Ins. Co. v. Crawford*,
   16 F. Supp. 3d 1236 (W.D. Wash. 2014) ........................................................ 5

*Ikuno v. Yip*,
   912 F.2d 306 (9th Cir. 1990) ............................................................................ 7

*In re Bottom*,
   176 B.R. 950 (Bankr. N.D. Fla. 1994) ............................................................. 6

*In re Clyne's Will*,
   205 N.Y.S.2d 675 (Sur. 1960) .......................................................................... 6

*In re Francis-Valentine Co.*,
   95 F. 793 (9th Cir. 1989) ................................................................................ 14

*In re Huber*,
   493 B.R. 798 (Bankr. W.D. Wash. 2013) .................................................. 11, 12

*In re Jordan*,
   914 F.2d 197 (9th Cir. 1990) ...................................................................... 11, 12

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – ii
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

*In re Kaplan*,
   97 B.R. 572 (9th Cir. 1989) ...................................................................................... 6

*In re Marriage of Edwards*,
   139 Wash. App. 1039 (2007) ................................................................................... 16

*In re Pettit*,
   61 B.R. 341 (Bankr. W.D. Wash. 1986) ................................................................. 11

*In re White*,
   61 B.R. 388 (Bankr. W.D. Wash. 1986) ........................................................ 8, 9, 12

*Johnson v. Dahlquist*,
   130 Wash. 29 (1924) ................................................................................................. 7

*Julian v. Nw. Tr. Co.*,
   192 Minn. 136, 255 N.W. 622 (1934) ...................................................................... 6

*Le Tastevin, Inc. v. Seattle First Nat. Bank*,
   95 Wash. App. 224 (1999) ...................................................................................... 14

*Matter of Marriage of Galando*,
   200 Wash, App. 1030 (2017) ................................................................................ 8, 9

*Phoenix Mining & Milling Co. v. Scott*,
   20 Wash. 48 (1898) ................................................................................................. 16

*State Farm Fire & Cas. Co. v. El-Moslimany*,
   178 F. Supp. 3d 1048 (W.D. Wash. 2016) ............................................................... 5

*Sullins v. Sullins*,
   65 Wash. 2d 283 (1964) .......................................................................................... 16

*Triton Energy Corp. v. Square D Co.*,
   68 F.3d 1216 (9th Cir. 1995) .................................................................................... 5

*Wells Fargo Bank, N.A. v. Hoag*,
   No. 1 ........................................................................................................................ 11

*Woodworth v. Edwards*,
   3 Wash. 2d 579 (1940) ............................................................................................ 16

*Wunsch v. McGraw*,
   4 Wash. 72 (1892) ................................................................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – iii
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Statutes**

RCW 4.56.190 ................................................................................................... 16

RCW 6.17.090 ..................................................................................................... 7

RCW 6.17.120 ................................................................................................... 14

RCW 6.17.160 ..................................................................................................... 7

RCW 6.32.250 ............................................................................................. *passim*

RCW 11.98.011 ................................................................................................... 6

RCW 19.36.020 ................................................................................. 2, 4, 10, 11

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................... 5

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ........................................................... 14

Restatement (First) of Contracts § 150, cmt. .................................................... 17

Restatement (Third) of Trusts § 58 ................................................... 8, 9, 11, 12

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – iv

No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1    **I.    INTRODUCTION**

2           Pursuant to the Court's Order (ECF 295), Plaintiff LVB-Ogden Marketing LLC ("LVB")

3    submits this motion for summary judgment addressing three issues: (i) that Sharon Bingham's dual

4    role as sole trustee and sole beneficiary of the Sharon Graham Bingham 2007 Trust (the "2007

5    Trust" or "Trust") means a protectable trust was never validly established from the outset; (ii) that

6    the Trustee's attempt to use the Umpqua Judgment to seize three of the self-settled assets after the

7    Court's summary judgment ruling in December was *again* self-settled for the reasons the Court has

8    already addressed; and (iii) that the Trustee's attempt to assert judgment liens against its own real

9    property is invalid, and certainly no bar to summary judgment here.

10          None of the underlying facts are in dispute, the Court can rule as a matter of law that the

11   2007 Trust is not entitled to spendthrift protection, and thus find that LVB is entitled to seize all of

12   the purported trust res.  LVB has submitted a proposed writ to that effect, which would remove

13   what has been the primary impediment to final resolution of these proceedings.

14          **Sharon's Dual Role as Trustee and Beneficiary.**  The Court can enter summary judgment

15   that the 2007 Trust is not entitled to spendthrift protection as a matter of law on at least two bases:

16   (i) a Washington trust is not validly created where, as here, the sole beneficiary is also the sole

17   trustee; and/or (ii) even if the 2007 Trust were validly created (it was not), Sharon Bingham's

18   exercise of control as trustee and beneficiary at the outset destroyed any entitlement to spendthrift

19   protection.  Accordingly, LVB is entitled to seize all personal property held by the 2007 Trust,

20   including the judgments it holds.  The parties need not even proceed to trial on the aspect of LVB's

21   claim concerning what Mr. Dean subsequently did as Trustee that vitiates spendthrift protection.

22          **The Recent Self-Settled Transfers.**  That the 2007 Trust res is presently seizable also

23   means that the three self-settled assets that the Trustee attempted to "re-take" back into the 2007

24   Trust in December using the Umpqua Judgment are also seizable.  But even if that were not the

25   case, these assets would also be seizable because this latest attempt to take the Binghams' personal

26   assets back into the 2007 Trust is *again* self-settled for the reasons the Court has already addressed

---

and ruled upon.  These three assets—the Binghams' personal property—has *again* been transferred into a trust for which Sharon Bingham is the beneficiary.  The property therefore remains self-settled and seizable by LVB under RCW 19.36.020 and RCW 6.32.250 for the reasons articulated in the Court's December 7, 2018 order granting summary judgment.

**Asserting Judgment Liens Against One's Own Property.**  Finally, the fact that the Trustee contends that the 2007 Trust holds judgment liens against certain real property is of no moment because (i) it does not change any of the results discussed above; and (ii) as a matter of law the Trustee cannot attempt to create a judgment lien against his own property.

For these reasons, addressed in detail below, LVB respectfully requests that the Court enter summary judgment on its Declaratory Judgment claim (Am. Compl. ¶¶ 118.a, 118.b) that LVB is entitled to seize all of the res of the 2007 Trust, including the self-settled assets that the Trustee was attempting to sell.  A proposed order and proposed writ have been filed concurrently with this motion.

## II.    STATEMENT OF FACTS

LVB and the Court have previously summarized the basic factual background for LVB's claims.  ECF 4 (Mot.) at 2-10; ECF 59 (Resp.) at 4-9; ECF 182 (Order) at 2-6.  LVB recites here only those facts relevant to the issues presented. Notably, the material facts that are relevant for summary judgment on these issues are limited and undisputed, as set forth below.

### A.    The Sharon Graham Bingham 2007 Trust

On March 15, 2007, Frances P. Graham and Sharon Graham Bingham executed an agreement that purported to establish the Sharon Graham Bingham 2007 Trust.  *See* Ex. A (Trust Agreement) at 1.  Sharon Bingham was designated both the sole trustee and the sole beneficiary. *Id.* at 1.  This permitted her to, among other things, distribute income to herself, and distribute principal to herself for her own maintenance.  *Id.* at 1.[1]  Sharon Bingham served in this dual role of

---

[1] SECOND (A): "During the Beneficiary [Sharon Bingham]'s lifetime, the Trustee [Sharon Bingham] shall pay the Beneficiary [herself] all of the income of the trust at least annually, and also may pay the Beneficiary [herself]

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1   sole trustee and beneficiary for three and a half years—from the inception of the purported trust on

2   March 15, 2007 until September 10, 2010 when she resigned as trustee and appointed Henry Dean

3   as her successor.  Ex. B (Appointment of Successor Trustee).[2]  During that time, she was authorized

4   to withdraw funds from the 2007 Trust bank accounts and sign checks to herself.  *See, e.g.*, Ex. F

5   (9/21/2017 E-mail) ("[W]e would like to set up a checking account 'Sharon Graham Bingham 2007

6   Trust' . . . Shari, David and I as authorized agents - Sharon should be only check signer"); Ex. G

7   (10/1/2009 E-mail) ("All available $ for David and Shari Bingham is in Shari's Trust Account,

8   which will require Shari's signature on a Letter of Authorization Form"); Ex. C (S. Bingham Dep.

9   Tr.) at 37:5-8,[3] 45:23-46:6.[4]  To date, Sharon remains the sole beneficiary of the 2007 Trust.

10      Before appointing Henry Dean as Trustee, Sharon Bingham, in her position as trustee,

11   acquired for the 2007 Trust a substantial portion of the Umpqua Bank Judgment on June 30, 2010.

12   ECF 182 (Order) at 3.  Sharon Bingham agreed to this settlement agreement in three roles: (1) as

13   an individual debtor/defendant in Umpqua Bank's judgment enforcement action; and (2 and 3) as

14   trustee *and* beneficiary of the 2007 Trust consenting to the purchase of the partial assignment of

15   the Umpqua Judgment to the Trust.  *Id.*; ECF 42 at 123 (Ex. L to Dean Decl. at 12).  Similarly, on

16   May 1, 2015, Henry Dean, in his capacity as Trustee ("the Trustee"), acquired for the 2007 Trust

17   another judgment held against the Binghams, this one held by Centrum Financial Services.  ECF

18   182 (Order) at 3-4.  Both of these transactions ultimately resulted in the Trustee claiming that the

19   2007 Trust holds judgment liens against certain real property in which the Binghams reside.  *See*

---

so much of the principal *as the Trustee [she] determines* from time to time for the Beneficiary's [her] health, support, and maintenance." (emphasis added).

[2] *See also* Ex. C (S. Bingham Dep. Tr.) at 34:3-6 (confirming she was both trustee and beneficiary for a period of time); Ex. D (D. Bingham Dep. Tr.) at 39:3-41:2 (testifying that Ms. Bingham was the trustee of her own trust from 2007 until Henry Dean became trustee); ECF No. 276 at 3 (noting there was a time when Sharon Bingham was both trustee and beneficiary).

[3] "Q. Can you think of anyone who could sign the checks besides you when you were the trustee? . . . THE WITNESS: I don't think so."

[4] "Q. Do you recall signing the Letter of Authorization that's referred to in that sentence?  A. No.  Q. Any reason to dispute that that was required at this time? . . . THE WITNESS: No."

---

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 3
No. 2:18-CV-00243-TSZ

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1   ECF 83 at 7-9.  The Trustee submitted a verified listing of the 2007 Trust res to this Court on May

2   15, 2018.  *Id.* at 1.

3        **B.**       **The Court's December 7, 2018 Summary Judgment Ruling**

4        On September 6, 2018, LVB moved for summary judgment on the issue of whether the

5   personal property of the Binghams transferred to the Trust pursuant to sham Security Agreements

6   was seizable by LVB on the ground that they were admittedly self-settled.  ECF 137.  The Court

7   granted that motion in full on December 7, 2018.  ECF 182 (Order).  The disputed assets were items

8   that the Trustee purported to seize by having the Binghams sign a Security Agreement collateralized

9   by those assets, having them default, and then "seizing" those assets into the 2007 Trust—while

10  still permitting the Binghams unfettered access.  *Id.* at 5-10.  The assets included (a) 42.5% of the

11  stock of Park Place Motors, Ltd.; (b) 1,263,333 shares of stock in Biolytical Laboratories, Inc.; (c)

12  the Note and Preferred Mortgage secured by the M/V Bingo in favor of the 2007 Trust; (d) Sharon

13  and David Bingham's furniture, fixtures, equipment, and appliances transferred pursuant to the

14  Settlement Agreement; and (e) Sharon Bingham's wedding ring.  *Id.* at 11-12.

15       The Court correctly held that these assets are self-settled on two independent grounds.  *Id.*

16  at 6-10.  First, the Court correctly observed that "[t]he property that Plaintiff is attempting to seize

17  was placed in the trust by the Binghams—it did not proceed from a person other than the judgment

18  debtors and it is subject to seizure."  *Id.* at 6.  Accordingly, the assets are seizable under RCW

19  6.32.250.  *Id.*  The Court also correctly held that the assets are also seizable RCW 19.36.020 because

20  the assets are self-settled.  *Id.* at 7-10.  The Court therefore granted LVB's motion and held that

21  "Plaintiff is entitled to seize the following self-settled assets of Defendant Sharon Bingham in the

22  SGB Trust: [listing the five assets above]."  *Id.* at 11-12.

23       **C.**       **The Trustee's Attempt to Re-Take Self-Settled Assets Into The Trust**

24       In an effort to circumvent the Court's order, and prevent resolution of this action, the

25  Trustee contends that he went to state court and used the Umpqua Judgment to obtain a writ of

26  execution on three of the self-settled assets: (i) the interest in Park Place Motors; (ii) the mortgage

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – 4
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1    on the M/V Bingo; and (iii) Sharon Bingham's ring.  ECF 241 at 1 ("In the morning of Monday,

2    December 10, 2018, the 2007 Trust submitted an application for a Writ of Execution, which was

3    issued . . . During the week of December 10, 2018 the King County Sheriff took possession of the

4    assets covered by the Writ of Execution . . . The date set for sheriff sale of the assets by the King

5    County capture is January 31, 2019."); ECF 245 (Sheriff's Notice of Sale) at 16 (listing the three

6    assets subject to the sale).

7         Having "seized" those assets back into the 2007 Trust, he contends that he transferred

8    possession to the King County Sheriff's office so that they could be sold at auction.  *Id.*  Those

9    assets would have been dissipated—requiring the Court to address still more fraudulent transfer

10   claims—had LVB and the Court not intervened in January.  ECF 224 (Mot.); ECF 230 (Order

11   Granting Mot.).

12   **III.   ARGUMENT**

13        "Summary judgment is appropriate when there is no genuine issue of material fact and the

14   moving party is entitled to judgment as a matter of law."  *State Farm Fire & Cas. Co. v. El-*

15   *Moslimany*, 178 F. Supp. 3d 1048, 1054 (W.D. Wash. 2016) (citing Fed. R. Civ. P. 56(a)).  "Once

16   the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving

17   party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file,

18   'specific facts showing that there is a genuine issue for trial.'"  *IDS Prop. Cas. Ins. Co. v. Crawford*,

19   16 F. Supp. 3d 1236, 1238 (W.D. Wash. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

20   324 (1986)).  "The nonmoving party . . . must present significant and probative evidence to support

21   his or her claims."  *State Farm*, 178 F. Supp. 3d at 1054 (citations omitted).  "[S]ummary judgment

22   should be granted where the non-moving party fails to offer evidence from which a reasonable jury

23   could return a verdict in its favor."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th

24   Cir. 1995).

25        For the reasons discussed below, LVB is entitled to summary judgment on its claim for

26   Declaratory Judgment that the 2007 Trust is not entitled to spendthrift protection and that the

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – 5
No. 2:18-CV-00243-TSZ

**CORR CRONIN** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1  Trustee's recent attempt to use the Umpqua Judgment to re-take self-settled assets into the Trust is
2  also a self-settled transaction.  Am. Compl. ¶¶ 118.a, 118.b.

3       **A.      Sharon Bingham's Role as Sole Trustee and Sole Beneficiary Invalidated
4                 the Sharon Graham Bingham 2007 Trust.**

5       There are at least two independent bases upon which Ms. Bingham's dual status as trustee
6  and beneficiary destroys any spendthrift protection for the 2007 Trust: (i) under Washington law,
7  a trust cannot be validly created where the same person is the sole trustee and sole beneficiary; and
8  (ii) under Washington law already cited by this Court, spendthrift character is lost when the
9  beneficiary has the ability to direct distributions from her own trust.  From its inception, the 2007
10 Trust never had creditor protection as a matter of law for at least these two reasons.

11      **1.      A Washington Trust Is Not Validly Created At the Outset When
12                The Sole Trustee and Sole Beneficiary Are The Same Person.**

13      The basic requirements to create any valid Washington trust of any kind are set forth in
14 RCW 11.98.011 under the heading "Trust creation—Requirements."  The statute is clear that "[a]
15 trust is created *only if . . . the same person is not the sole trustee and sole beneficiary.*"  RCW
16 11.98.011(1)(e) (emphasis added).  This codified Washington common law on the point.  Wash.
17 Final Bill Report, 2011 Reg. Sess. H.B. 1051 ("Several other areas of the common law on trusts
18 and estates are codified and clarified, *including the methods and requirements for creating a*
19 *trust[.]*") (emphasis added).  As RCW 11.98.011 recognizes, a Washington trust cannot be created
20 where the sole beneficiary is also the sole trustee.  Other courts have reached the same conclusion.
21 *See, e.g.*, *In re Kaplan*, 97 B.R. 572, 577 (9th Cir. 1989) (a "spendthrift trust will not exist if the
22 sole beneficiary is also the sole trustee") (applying Arizona law).[5]

23 _____

24 [5] *In re Clyne's Will*, 205 N.Y.S.2d 675, 676–77 (Sur. 1960) ("It appears from the reading . . . the will that the
   widow is named both as sole trustee and as sole income beneficiary of the intended trust. Every valid trust must
25 have a trustee who is not the sole beneficiary . . . The intended trust is therefore rendered invalid[.]"); *In re*
   *Bottom*, 176 B.R. 950, 952 (Bankr. N.D. Fla. 1994) ("Because Wayne Bottom is named as the sole Trustee of his
26 own trust, the only one that can guard Bottom from his own improvidence is Bottom himself.  It is for this reason
   that the trustee and the sole beneficiary cannot be one in the same under Florida law."); *Julian v. Nw. Tr. Co.*, 192

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  – 6
No. 2:18-CV-00243-TSZ

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

Here, Sharon Bingham was both the sole trustee and sole beneficiary from the outset. Ex. A (Trust Agreement) at 1. Defendants concede this fact. ECF No. 276 at 4 (conceding that "Sharon Graham Bingham was both the trustee and the beneficiary at an earlier point in time.").[6] Indeed, by the express terms of the Trust Agreement, Sharon Bingham is the sole beneficiary. *Id.* She is also the sole trustee. *Id.* This gave her the sole decision-making ability to, among other things, make distributions to herself or pay income and principal to herself if she determined she needed it. *Id.*[7] Because Sharon Bingham was both the sole beneficiary and sole trustee, as a matter of law the Sharon Graham Bingham 2007 Trust was never validly created. Accordingly, *all* of the purported res of that Trust (ECF 83 at 1) is the property of Sharon Bingham, and can be seized by LVB as her judgment creditor. RCW 6.17.090 ("All property, real and personal, of the judgment debtor that is not exempted by law is liable to execution."). This includes, for example:

- Cash (ECF 83 at 1, Item #1)

- The Umpqua Judgment and Centrum Judgment (ECF 83 at 1, Items # 6-7)[8]

- HyTech Power Shares and Plasma Drive Shares (ECF 83 at 1, Item # 10)

- Prium Note and money received pursuant to that Note (ECF 83 at 1, Item # 12)

- Promissory Note owed by Park Place Motors (ECF 83 at 1, Item # 13)

- Miscellaneous Promissory Notes (ECF 83 at 1, Item # 14)

- Security Interests in certain Real Property (ECF 83 at 1, Items # 3-5)

---

Minn. 136, 138, 255 N.W. 622, 623 (1934) ("[T]here can be no trust, for the sole beneficiary of a trust cannot be its sole trustee.").

[6] *Accord* Ex. E (C. Elali Dep. Tr.) at 50:21-23 ("Q. At the time the trust was established, Sharon was the trustee; is that right? A. Yes."); Ex. C (S. Bingham Dep. Tr.) at 34:3-6 ("Q. [D]o you recall, Ms. Bingham, that at the time the trust was created, at some point you were the trustee as well as the beneficiary? A. I was a trustee at some point.").

[7] SECOND (A): "During the Beneficiary [Sharon Bingham]'s lifetime, the Trustee [Sharon Bingham] shall pay the Beneficiary [herself] all of the income of the trust at least annually, and also may pay the Beneficiary [herself] so much of the principal *as the Trustee [she] determines* from time to time for the Beneficiary's [her] health, support, and maintenance." (emphasis added).

[8] Judgments fall within this broad category of executable property. *Johnson v. Dahlquist*, 130 Wash. 29, 31-33 (1924) (holding that a judgment is executable); *see also* RCW 6.17.160 (providing procedures for executing on "a claim on which suit has been commenced"); *Ikuno v. Yip*, 912 F.2d 306, 314 (9th Cir. 1990) ("Choses in action are not legislatively exempt from execution [under Washington law].").

1    LVB would also be able to assert judgment liens against the real property held by the 2007

2    Trust, in addition to holding any liens asserted pursuant to the Umpqua Judgment and Centrum

3    Judgment.   ECF 83 at 1, Item #1.   This is in addition to the self-settled assets that have been

4    previously addressed in the Court's prior summary judgment ruling (ECF 182), and are addressed

5    again in Section III.B below.

6        That Sharon was the trustee and beneficiary of her own trust destroys the spendthrift

7    character of the 2007 Trust.   The Court should enter summary judgment for LVB on this basis

8    alone.

9        **2.      Even If The 2007 Trust Had Been Validly Created, Sharon's
            Control As Trustee Eliminated Any Spendthrift Protection.**
10

11       Nevertheless, even if the 2007 Trust *had* been validly created (it was not), Sharon's

12   conduct in her dual role as trustee and beneficiary would *still* render the Trust invalid under a well-

13   established line of cases finding that the power to compel distributions vitiates a spendthrift trust.

14   Restatement (Third) of Trusts § 58; *Matter of Marriage of Galando*, 200 Wash, App. 1030, at *16

15   n.14 (2017) ("An intended spendthrift restraint is also invalid with respect to a non-settlor's

16   interests in trust property over which the beneficiary has the equivalent of ownership, entitling the

17   beneficiary to demand immediate distribution of the property") (citation omitted); *Britannia*

18   *Holdings Ltd. v. Greer*, 127 Wash. App. 926, 935, 113 P.2d 1041 (2005) ("[I]f a beneficiary

19   acquires the power to compel distribution of trust property, a spendthrift restraint will no longer

20   prevent creditors from executing on the trust."); *In re White*, 61 B.R. 388, 393 (Bankr. W.D. Wash.

21   1986) ("The beneficiary must not have such control over the funds so as to render them more in the

22   nature of present savings than future income.").

23       Here, discovery has confirmed that, from the outset, Sharon Bingham was the only person

24   who could sign checks for the 2007 Trust, and was an authorized agent on the Trust accounts.   *See,*

25   *e.g.*, Ex. F (9/21/2017 E-mail) ("[W]e would like to set up a checking account 'Sharon Graham

26   Bingham 2007 Trust' . . . Shari, David and I as authorized agents - Sharon should be only check

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – 8
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

signer"); Ex. G (10/1/2009 E-mail) ("All available $ for David and Shari Bingham is in Shari's Trust Account, which will require Shari's signature on a Letter of Authorization Form"); Ex. C (S. Bingham Dep. Tr.) at 37:5-8,[9] 45:23-46:6.[10]  Sharon Bingham literally had the *sole* power to compel immediate distributions from the 2007 Trust, which falls squarely within *Britannia* and the cases noted above.

Indeed, even if Sharon were *not* the sole trustee, the Trust Agreement expressly provides that its terms do not limit her "right to withdraw, appoint, or disclaim trust property":

**FOURTH:   Spendthrift Provision.**

Without limiting any beneficiary's right to withdraw, appoint, or disclaim trust property, no present or future beneficiary of any trust created hereunder may transfer or encumber his or her interest in the trust.  No interest of a present or future beneficiary of any trust created hereunder shall be subject in any way to the claims of the beneficiary's creditors.

Ex. A at 5.  The absence of a limitation on Sharon's ability to withdraw trust property on demand is another independent basis that destroys any spendthrift character the Trust purports to have.  Restatement (Third) of Trusts § 58; *Britannia*, 127 Wash. App. at 935; *Marriage of Galando*, 200 Wash, App. 1030, at *16 n.14; *White*, 61 B.R. at 393.

Accordingly, there are many independent bases upon which the Trust Agreement, as a matter of law, did not create a valid, protectable spendthrift trust, and thus all of the purported res of the 2007 Trust is presently executable by LVB.[11]  As discussed at the February 27th hearing, this finding eliminates the need for a trial on LVB's Declaratory Judgment claim concerning whether Defendants' conduct when Henry Dean was trustee likewise was inconsistent with

---

[9] "Q. Can you think of anyone who could sign the checks besides you when you were the trustee? . . . THE WITNESS: I don't think so."

[10] "Q. Do you recall signing the Letter of Authorization that's referred to in that sentence?  A. No.  Q. Any reason to dispute that that was required at this time? . . . THE WITNESS: No."

[11] There is another independent basis for loss of spendthrift protection given that, even after Mr. Dean became Trustee, the Binghams retained the ability to receive distributions on demand.  Am. Compl. ¶¶ 114-115.  That independent basis would be the subject of the forthcoming trial should summary judgment not resolve the 2007 Trust issues.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  – 9
No. 2:18-CV-00243-TSZ

**CORR CRONIN** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1   spendthrift protection, and could also eliminate, as a practical matter, the need for a trial on LVB's

2   alternative fraudulent transfer claims as well.

3         **B.**      **The Trustee's Latest Attempt to Seize Three Self-Settled Assets Using The**
4         **Umpqua Judgment Is Again Self-Settled For The Reasons The Court Has**
          **Already Ruled On Summary Judgment.**

5         That the 2007 Trust is not entitled to spendthrift protection is sufficient, in and of itself,

6   for the Court to find that LVB is entitled to seize all of the Trust res, including the self-settled

7   assets. This includes the three assets that the Trustee purported to seize from the Binghams to

8   circumvent the Court's December 7, 2018 summary judgment ruling. *Supra* at II.C. The Court

9   need not even reach the the self-settled question for this reason alone. However, there is an

10  independent basis: the Trustee's latest attempt to take the Binghams' personal assets back into the

11  2007 Trust is *again* self-settled for the reasons the Court has already addressed and ruled upon.

12        The Court and LVB have already identified the law applicable to self-settled transfers.

13  ECF 182 (Order) at 6-10. In its prior summary judgment Order, the Court correctly identified two

14  independent bases upon which the Self-Settled assets were seizable by LVB: (i) that transfers of

15  the beneficiaries own property to her trust is void as to creditors under RCW 19.36.020; and (ii)

16  that property placed in the trust by the Binghams is property that did not proceed from a person

17  other than the judgment debtors, and thus is subject to seize under RCW 6.32.250. ECF 182 (Order)

18  at 6-9. Both bases apply equally to the transfer of title to the Binghams' own property to the 2007

19  Trust by virtue of the Umpqua Judgment it purports to hold.

20        **RCW 19.36.020.** The Court correctly held that, on its face, RCW 19.36.020 voids any

21  self-settled transfers, which the statute broadly defines as "all deeds of gift, all conveyances, and

22  ***all transfers or assignments***, verbal or written, of goods, chattels, or things in action, made in trust

23  for the use of the person making the same[.]" ECF 182 (Order) at 7 (quoting RCW 19.36.020)

24  (emphasis added). The Court's Order followed long-standing precedent. *In re Huber*, 493 B.R.

25  798, 809 (Bankr. W.D. Wash. 2013) ("[P]ursuant to RCW 19.36.020, transfers made to self-settled

26

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – 10
No. 2:18-CV-00243-TSZ

**CORR CRONIN** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1   trusts are void as against existing or future creditors. . . . This statute has been in existence for well

2   over a century[.]") (citing *Carroll v. Carroll,* 18 Wn. 2d 171, 175 (1943)).[12]

3          The Court also correctly rejected Defendants' attempt to manufacture an exception to the

4   broad language of that statute where none exists.  ECF 182 at 8-9 ("There is no exception in the

5   statute for transfers into trusts where consideration is exchanged . . . None of these cases cited by

6   Defendants endorse the novel position advanced by Defendants—that a debtor can protect its assets

7   from seizure by taking out loans from a spendthrift trust and then transferring other assets back into

8   the trust.").  There is likewise no exception recognized for transfers of title to a trust pursuant to

9   judgment collection.  And that is precisely what the Trustee contends happened after the Court's

10  December 7, 2018 summary judgment ruling, and would happen again if the Trust purchased the

11  assets at any Sheriff's sale.  As noted above, the Trustee contends that, once he received this Court's

12  summary judgment order, he served writs on the Binghams, seized three of the self-settled assets

13  back into the Trust, and then attempted to sell them by Sheriff's sale.  *Supra* at II.  That transfer of

14  the Binghams' own property back into the 2007 Trust is again self-settled under RCW 19.36.020

15  and the case law the Court has already identified—and therefore was void as to creditors.  And it

16  would be again should the Trustee attempt to again purchase the Binghams' personal property from

17  himself and bring it back into the 2007 Trust—so that they can continue to have unfettered access

18  to it without ever satisfying the judgments against them.  Defendants once again have not, and

19  cannot, avoid this long-standing point of Washington law, and the scheme simply brings the parties

20  back to where they were on December 7, 2018:  LVB is entitled to execute upon all of the Self-

21  _____

22  [12] *In re Jordan*, 914 F.2d 197, 200 (9th Cir. 1990) ("Because the trust was funded from the consideration received
    by [the beneficiary] in exchange for the settlement of his personal injury claim, it was self-settled under

23  Washington law and was not excludable from the bankruptcy estate."); *In re Pettit*, 61 B.R. 341, 346 (Bankr.
    W.D. Wash. 1986) ("This plan would not be an enforceable spendthrift trust under Washington law because it is

24  funded mainly by the debtor/beneficiary and may be invaded as to most of the funds at any time and for any
    reason."); *Wells Fargo Bank, N.A. v. Hoag*, No. 1 CA-CV 15-0559, 2016 WL 6436830, at *2-3 (Ariz. Ct. App.

25  Nov. 1, 2016) ("Hoag created the [trusts] with his own funds, and made himself one of the trust beneficiaries.
    Therefore, the spendthrift provisions of the [trusts] are invalid . . . pursuant to RCW 6.32.250."); Restatement

26  (Third) of Trusts § 58(2) ("A restraint on the voluntary and involuntary alienation of a beneficial interest retained
    by the settlor of a trust is invalid.").

Settled Assets, including the three that the Trustee took back into the 2007 Trust.  The Court should enter summary judgment to that effect.

**RCW 6.32.250.**  The Court also correctly held that the self-settled assets are seizable under RCW 6.32.250 because "[t]he property that Plaintiff is attempting to seize was placed in the trust by the Binghams—it did not proceed from a person other than the judgment debtors and it is subject to seizure."  ECF 182 (Order) at 6.  That conclusion also followed long-standing Washington precedent.  *In re White*, 61 B.R. 388, 392 (Bankr. W.D. Wash. 1986) ("[One of the] two basic requirements for a valid spendthrift trust in Washington State [is that] [t]he trust must be funded by, or proceed from, a settlor other than the beneficiary."); *see In re Huber*, 493 B.R. at 809 ("[T]he Debtor's transfers of [his own] assets into the Trust are void, and the Trustee is entitled to summary judgment as a matter of law[.]").[13]  And that is also true here, which is another independent basis to hold that the three assets the Trustee seized remain self-settled.  Once again, the three self-settled assets at issue "were transferred to the SGB Trust by the Defendants, including Sharon Bingham, the sole beneficiary of the SGB Trust.  Those assets, now held in trust for Sharon Bingham in the SGB Trust, are subject to seizure by judgment creditors."  ECF 182 (Order) at 10 (citing RCW 6.32.250).  Once again, there is no recognized exception to the rule for transfers made pursuant to judgment collection, or to satisfy a judgment—just as there was no exception for transfers made to satisfy the Binghams' debt under the promissory note and security agreement.

Indeed, this can be illustrated simply in the steps outlined in Figures 1-3 below.  Per the Court's December 7, 2018 summary judgment order, the three self-settled assets at issue were not held by the 2007 Trust, but instead the seizable property of the Binghams.  ECF 182 (Order) at 7

---

[13] Restatement (Third) of Trusts § 58, cmt. *f* (stating that "if instead [of contributing to a trust at inception], B [the beneficiary] had made her $250,000 contribution to the trust at a later time, when the trust estate had appreciated by 50 percent to $750,000, she would become settlor of a one-quarter share of the then $1 million trust fund").  Nor must an asset be transferred directly from the beneficiary to the Trust to be deemed self-settled.  *E.g.*, *In re Jordan*, 914 F.2d at 199 (recognizing self-settled trust where money held by third party due to beneficiary was placed in trust); *In re White*, 61 B.R. at 393 (recognizing self-settled trust where beneficiary placed assets in trust through use of corporation); Restatement (Third) of Trusts § 58. *cmt. f* ("The rule of Subsection (2) [regarding self-settled assets] is not limited to the cases in which the beneficiary actually conveyed the property to the trust or executed the trust instrument[.]").

---

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

("Nothing changed with the transfer of the Disputed Assets into the Trust. They are subject to seizure. RCW 6.32.250."):

**Figure 1.** December 7, 2018 — Title with the Binghams

**Step 1:** Court issues December 7, 2018 Order

**Effect:** Title is with Binghams

> 14   (1)    Plaintiff is entitled to seize the following self-settled assets of Defendant
> 15   Sharon Bingham in the SGB Trust:
> 16        (a)    42.5% of the stock of Park Place Motors, Ltd;
> 17        (b)    1,263,333 shares of stock in Biolytical Laboratories, Inc.;
> 18        (c)    the Note and Preferred Mortgage secured by the M/V Bingo in favor
>                  of the SGB Trust;
> 1         (d)    Sharon and David Bingham's furniture, fixtures, equipment, and
> 2                appliances transferred pursuant to the Settlement Agreement, (Ex. 4)
>                  Dean Decl., docket no. 42, ¶ 24.m; and
> 3         (e)    Sharon Bingham's wedding ring.

The Trustee then purports to have re-taken title to the assets by serving writs on the Binghams using the Umpqua Judgment. *Supra* at II.  But, as discussed above, that transfer of title from the Binghams back to the Trustee is again self-settled and thus void as to creditors such as LVB.  It is no different than the purported transfer of title to the Trust pursuant after the "defaults" on the Security Agreements, which the Court addressed in its December 7, 2018 ruling on summary judgment:

**Figure 2:** Post-Execution — Title Remains With the Binghams

**Step 1:** Court issues December 7, 2018 Order

**Step 2:** Trustee applies for writ of garnishment, uses writ to obtain **title**



**Effect:** Title remains with Binghams

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  – 13
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1    The Trustee then transferred *possession* to the Sheriff in an attempt to sell those assets.

2    *Supra* at II.C.  Indeed, as has been addressed in supplemental briefing, *title* does not transfer to the

3    Sheriff in a Sheriff's sale, only *possession*.  ECF 275 at 2-4.[14]  The Binghams' counsel expressly

4    admitted and represented this to the Court.  ECF 241 (Resp.) at 1 ("During the week of December

5    10, 2018, the King County Sheriff **took possession of** assets covered by the Writ of Execution[.]")

6    (emphasis added).  As above, title remains with the Binghams because the transfer to the 2007 Trust

7    was self-settled, and thus the three self-settled assets remain executable regardless of who now

8    possesses them:

9    <u>**Figure 3**</u>.  **Post-Execution — Possession Transferred to Sheriff**

10   **Step 1:**  Court issues December 7, 2018 Order

11   **Step 2:** ~~Trustee applies for writ of garnishment, uses~~ **VOID AS TO LVB**
     ~~writ to obtain title to 3 assets~~

12   **Step 3:**  Trustee transfers **possession** of 3 assets to
     Sheriff in attempt to sell them

13

14   **Effect:**  Title remains with Binghams

15   For these reasons, the Trustee's attempt to use the Umpqua Judgment to re-take the three

16   self-settled assets at issue is of no moment.  As it did before in response to LVB's prior summary

17   judgment motion, the Court should enter summary judgment that the Trustee's latest attempt to

18   retake the three self-settled assets is again self-settled, and issue the proposed writ for all of the

19   2007 Trust res, which would include these three assets, and the U.S. Marshals can arrange a single

20   seizure pursuant to that writ.

21

22

23

24   _____

     [14] Citing *In re Francis-Valentine Co.*, 95 F. 793, 794 (9th Cir. 1989); *Le Tastevin, Inc. v. Seattle First Nat. Bank*,
     95 Wash. App. 224, 227 (1999)).  Put differently, the Sheriff is simply a bailee—i.e. "someone who receives

25   personal property from another, and has possession of but not title to the property." Black's Law Dictionary (10th
     ed. 2014). The Sheriff cannot dispose of the property as he sees fit; rather, his control of the property is entirely

26   proscribed by law. *See* RCW 6.17.120; 6.17.130; 6.17.140; 6.17.160.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – 14
No. 2:18-CV-00243-TSZ

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**C.     The Trustee's Holding of Other Judgments Is Also of No Moment Because He Cannot Properly Hold a Lien Against His Own Property.**

The Court has also asked LVB to brief whether any of the judgments held by the 2007 Trust have merged with Trust property or property held by other Defendants.  ECF 295.  As discussed in detail above, because the 2007 Trust is not entitled to spendthrift protection, LVB is entitled to seize the Umpqua and Centrum judgments held in that Trust.  *See supra* at III.A.  That is sufficient, in and of itself, to render them irrelevant to LVB's ability to execute upon assets to satisfy its judgment.

But even if this were not the case, the Umpqua Judgment is not a bar to summary judgment here because any judgment liens, to the extent they exist, are invalid.  The 2007 Trust purports to hold liens on its own property.  *See e.g.*  ECF 83 at 9 (As with Mrs. Graham's [Hunts Point] residence . . . the 2007 Trust acquired a lien in second position upon this house when it acquired the Umpqua Bank Judgment by assignment in 2010.").  As a threshold matter, judgment liens can only be asserted against real property.  RCW 4.56.190 (stating that a "judgment shall be a lien" on non-exempt "real estate of any judgment debtor," explicitly excluding the debtor's "personal property"); *Woodworth v. Edwards*, 3 Wash. 2d 579, 586 (1940) (citing *Phoenix Mining & Milling Co. v. Scott*, 20 Wash. 48 (1898)) (explaining that a judgment lien only attaches to real estate, and not personal property).  Indeed, Defendants have admitted that "[i]n Washington, entering or registering a judgment may create a lien on real property, but it does not create a lien on personal property."  ECF 39 at 7-8.

But it is also axiomatic that "a person cannot lien their own property."  *In re Marriage of Edwards*, 139 Wash. App. 1039, at *5 (2007); *see also Arkansas Dep't of Health and Human Serv. v. Ahlborn*, 547 U.S. 268, 286 (2006) (treating a lien on one's own property as an impossibility and maintaining "Why, after all, would [the plaintiff] need a lien on its own property?  A lien typically is imposed on the property of *another* for payment of a debt owed by that other." (emphasis in original)).  This rule is premised on the fundamental principle that a lien

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 15
No. 2:18-CV-00243-TSZ

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1  exists to secure an underlying debt, *Sullins v. Sullins*, 65 Wash. 2d 283, 285 (1964) ("[A] lien is

2  an encumbrance upon the property as security for the payment of a debt."); one cannot owe

3  himself a debt, and therefore there is no debt to form the basis of a lien on one's own property.

4  *Fed. Land Bank of Omaha v. Boese*, 373 N.W.2d 118, 121 (Iowa 1985) ("[A]n essential element

5  in establishing a lien is showing a debt or an obligation of the landowner. This element cannot be

6  satisfied when a property owner claims a lien on his own real estate because an owner cannot owe

7  himself a debt.").

8          The same rule is manifest at the execution stage of judgment collection.  When the writ

9  of execution would leave property in the hands of the indebted persons, courts "universally" hold

10  a "mere colorable levy of this kind" to be "fraudulent and void."  *Wunsch v. McGraw*, 4 Wash.

11  72, 74 (1892).  Thus, the Trustee's execution on the Umpqua Judgment is of no moment—the

12  levy itself is void.  Nor could it be otherwise.  Where a party purchases a judgment or

13  indebtedness against himself that imposes a lien on his property, the underlying "debt and the

14  rights based upon it are extinguished."  *See Home Indemn. Co. v. McClellan Motors, Inc.*, 77

15  Wash. 2d 1, 5 (1969) ("An assignment of a claim from a creditor to the debtor is, in legal effect, a

16  satisfaction and payment of that claim. To the extent that claim is thus assigned, the debt and the

17  rights based upon it are extinguished."); *see also* Restatement (First) of Contracts § 150, cmt. b

18  (1932) ("[A]n effective assignment by a creditor to his debtor of the indebtedness owed by the

19  debtor is impossible.").

20          Here, the 2007 Trust purports to hold liens on its own real property.  ECF 83 at 8-10.

21  Under the above authority, such liens are invalid, and execution on such liens is impossible.

22  Those liens are invalid, enforceable and certainly no impediment to summary judgment here.

23  And the same will be true after a finding that the Trust lacks spendthrift protection: Sharon

24  Bingham will hold a judgment lien on her own property.

25

26

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  – 16
No. 2:18-CV-00243-TSZ

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

IV.    CONCLUSION

2

     For the foregoing reasons, LVB respectfully requests that the Court enter summary

3

judgment that the 2007 Trust does not have spendthrift protection, including any self-settled assets

4

it purported to obtain by writ using the Umpqua Judgment.  A proposed order and proposed writ

5

have been filed concurrently with this Motion.

6

DATED: March 15, 2019

7

    *s/ William R. Squires III*
    William R. Squires III, WSBA No. 4976

8

    CORR CRONIN LLP
    1001 Fourth Avenue, Suite 3900

9

    Seattle, Washington 98154-1051
    Telephone: (206) 625-8600 Fax: (206) 625-0900
    E-mail:   rsquires@corrcronin.com

10

11

    Jeffrey L. Willian (admitted *pro hac vice*)
    KIRKLAND & ELLIS LLP

12

    300 North LaSalle
    Chicago, IL 60654
    Telephone: (312) 862-2257

13

    Email:   jwillian@kirkland.com

14

    Tammy A. Tsoumas (admitted *pro hac vice*)

15

    Jonathan J. Faria (admitted *pro hac vice*)
    Leonora Cohen (admitted *pro hac vice*)

16

    KIRKLAND & ELLIS LLP
    333 S. Hope Street

17

    Los Angeles, CA 90071
    Telephone: (213) 680-8400

18

    Email:   tammy.tsoumas@kirkland.com
         jonathan.faria@kirkland.com

19

         lena.cohen@kirkland.com

20

    *Attorneys for Plaintiff*

21

22

23

24

25

26

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** – 17
No. 2:18-CV-00243-TSZ

**CORR CRONIN** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on March 15, 2019, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4

following:

5

Emanuel Jacobowitz
R. Bruce Johnston

6

Nathan J. Arnold
JOHNSTON JACOBOWITZ & ARNOLD, PC

7

2701 First Avenue, Suite 200
Seattle, WA 98121

8

Telephone: (206) 866-3230
Email: manny@jjalaw.com

9

      bruce@rbrucejohnston.com
      nathan@jjalaw.com

10

*Attorneys for Defendants David S. Bingham, Sharon Bingham, Christopher Bingham, Cherish Bingham, Kelly Bingham, Bingo Investments, LLC, and CCRB Enterprises, LLC*

11

12

Scott B. Henrie
WILLIAMS KASTNER & GIBBS PLLC

13

601 Union Street, Suite 4100
Seattle, Washington 98101-2380

14

Telephone: (206) 628-6600
Email: shenrie@williamskastner.com

15

*Attorneys for Defendant Park Place Motors, Ltd. and Henry Dean as Trustee for the Sharon Graham Bingham 2007 Trust*

16

Manish Borde
BORDE LAW PLLC

17

600 Stewart Street, Suite 400
Seattle, WA 98101

18

Telephone: (206) 905-6129
Email: mborde@bordelaw.com

19

*Attorneys for Defendants Henry Dean, as Trustee of the Sharon Graham Bingham 2007 Trust, HyTech Power, Inc., and Park Place Motors, Ltd.*

20

21

Dennis J. McGlothin
Robert J. Cadranell, II

22

WESTERN WASHINGTON LAW GROUP PLLC
7500 212th St. S.W., Suite 270

23

Edmonds, WA 98026
Phone: 425-428-7296

24

Email: dennis@westwalaw.com
      robert@westwalaw.com

25

*Attorneys for Defendants Henry Dean in his individual capacity, Cicilia Elali, and BGH Holdings, LLC*

26

---

**CERTIFICATE OF SERVICE**
No. 2:18-CV-00243-TSZ

<span style="text-align:right">CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600</span>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*s/ William R. Squires III*
William R. Squires III, WSBA No. 4976
Attorney for Plaintiff
CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Telephone: (206) 625-8600
Fax: (206) 625-0900
e-mail: rsquires@corrcronin.com

CERTIFICATE OF SERVICE
No. 2:18-CV-00243-TSZ

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600